UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

SILVON S. SIMMONS,

                    Plaintiff,                           CA: No. _____

         vs.
                                                         **COMPLAINT  AND
                                                         JURY DEMAND**

JOSEPH M. FERRIGNO, II,
SAMUEL GIANCURSIO,
MICHAEL L. CIMINELLI; and
CITY OF ROCHESTER,

                    Defendants.

———————————————————————

        Plaintiff SILVON S. SIMMONS (hereinafter "Plaintiff"), by and through his

attorneys, Burkwit Law Firm, PLLC, as and for his complaint against Defendants

JOSEPH M. FERRIGNO, II, SAMUEL GIANCURSIO, MICHAEL L. CIMINELLI and

CITY OF ROCHESTER (hereinafter "Defendants"), alleges as follows:

### INTRODUCTION

        1.  This is an action for declaratory judgment, injunctive relief and monetary

damages for violations of Plaintiff Silvon S. Simmons' constitutional rights pursuant to

42 U.S.C. 1983, 1988 and related New York State law claims. Plaintiff alleges that the

Defendants, while acting in their official capacities and under color of State law illegally

searched and seized, falsely arrested, imprisoned and used excessive force against

Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States

Constitution. Plaintiff also brings claims against Defendants under New York State Law

for battery, assault, and negligence, including negligent training, supervision and retention. Plaintiff further alleges that Defendants City of Rochester and Michael L. Ciminelli have demonstrated a custom and policy of deliberate indifference to the constitutional rights of its citizens.

## JURISDICTION

2.   This action arises in part under 42 U.S.C. Section 1983 and accordingly, this Court has original subject matter jurisdiction under 28 U.S.C. Section 1331. For all remaining claims which do not present a federal question under 28 U.S.C. Section 1331, this Court has supplemental jurisdiction under 28 U.S.C. Section 1367.

3.   The causes of action alleged herein arise from the factual allegations which occurred in this judicial district. All parties are domiciled within the Western District of New York and therefore, this Court has personal jurisdiction over the Defendants.

## VENUE

4.   Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C. Section 1391 because the events or omissions giving rise to the claim occurred within this District and at all times relevant herein, all parties resided within this District.

## PARTIES

5.   At all times relevant herein, Plaintiff was and still is a resident of the City of Rochester, County of Monroe and State of New York.

6.   Defendant Michael L. Ciminelli (hereinafter "Defendant Ciminelli") is and at all times relevant herein was a citizen of New York State residing in Monroe County

2

and was employed as a police officer with the City of Rochester Police Department.

7. At all times relevant to this Complaint, Defendant Ciminelli was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

8. At all times relevant to this Complaint, as Chief of Police for the City of Rochester Police Department, Defendant Ciminelli was responsible for the supervision, training and retention of Defendants Joseph M. Ferrigno, II and Samuel Giancursio and for making and implementing policies, customs and practices used by law enforcement officers employed by Defendant City of Rochester regarding arrests and the use of force in performance of the acts herein alleged.

9. Defendant Joseph F. Ferrigno, II (hereinafter "Defendant Ferrigno") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

10. At all times relevant to this Complaint, Defendant Ferrigno was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

11. Defendant Samuel Giancursio (hereinafter "Defendant Giancursio") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

12. At all times relevant to this Complaint, Defendant Giancursio was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

13. At all times material to the allegations in this Complaint, Defendants Ciminelli, Ferrigno and Giancursio were acting under color of State law as police officers employed by Defendant City of Rochester.

14. Defendant City of Rochester is and at all times relevant herein, was and still is a municipal corporation duly organized and existing under the laws of the State of

New York with its principal place of business in the County of Monroe, State of New York.

15. Defendant City of Rochester is a political subdivision of the State of New York for which at all times relevant to this Complaint, Defendants Ciminelli, Ferrigno and Giancursio were employed by and served as police officers.

16. Defendant City of Rochester is responsible for the hiring, training, supervision and retention of Defendants Ciminelli, Ferrigno and Giancursio.

17. At all times relevant herein, Defendant City of Rochester has established and/or delegated to Defendant Ciminelli the responsibility for establishing and implementing policies, practices, procedures and customs used by law enforcement officers employed by the City of Rochester regarding arrests and the use of force on persons.

18. At all times herein relevant, Defendant City of Rochester was responsible for the policies, practices and supervision of its police officers, the enforcement of the rules of the Rochester Police Department and ensuring that its officers act in accordance with the law.

19. On or about June 23, 2016, Defendant City of Rochester was served with a Verified Notice of Claim detailing its culpability and Plaintiff's damages.

20. Defendant City of Rochester has failed and refused to make payment to Plaintiff in accordance with said Verified Notice of Claim.

21. At least thirty (30) days have elapsed since the service of the Verified Notice of Claim upon Defendant City of Rochester and adjustment of payment thereof has been neglected or refused by Defendant City of Rochester.

## FACTS

22. On April 1, 2016 at approximately 8:55 p.m., Plaintiff left his home located at

4

5 Immel Street Rochester, New York 14606 and got into his next door neighbor's vehicle at 9 Immel Street, Rochester, New York 14606 to go to a nearby store.

23. At all times herein, Plaintiff was a passenger in the vehicle which was operated by his next door neighbor as they proceeded to and from the store.

24. At approximately 9:08 p.m., Plaintiff and his next door neighbor returned to his next door neighbor's driveway located at 9 Immel Street, Rochester, New York 14606.

25. When the Plaintiff and his next door neighbor returned to the driveway at 9 Immel Street, Plaintiff's next door neighbor backed the vehicle into said driveway and turned the vehicle off.

26. After the vehicle was backed into the driveway at 9 Immel Street, Defendant Ferrigno drove up and suddenly stopped a Rochester Police Department vehicle (hereinafter "police vehicle") along the curb at the end of the driveway at 9 Immel Street.

27. After Defendant Ferrigno pulled the police vehicle over, he got out of the vehicle and started running towards Plaintiff with his gun drawn and pointed at Plaintiff.

28. As Defendant Ferrigno was running towards Plaintiff with his gun drawn and pointed at him, Plaintiff exited the passenger side door and immediately proceeded towards his back yard at 5 Immel Street.

29. When Plaintiff exited his next door neighbor's vehicle and proceeded towards his back yard, Plaintiff was not armed with a gun or any weapon.

30. As Plaintiff was proceeding away from Defendant Ferrigno towards his back yard, Defendant Ferrigno fired multiple gun shots at Plaintiff striking Plaintiff in his back, left buttock and right upper leg.

31. After Plaintiff was shot three (3) times by Defendant Ferrigno, Plaintiff was lying with his face down on the ground in the back yard when he heard Defendant Ferrigno yell out "I got him!".

32. When Plaintiff took a deep breath due to pain, Defendant Ferrigno said "What the fuck" and kicked Plaintiff in his back.

33. After Defendant Ferrigno kicked Plaintiff in the back, he said to Plaintiff "Shut the fuck up before I blow your brains out". Defendant Ferrigno then said to Plaintiff "I should just finish you off".

34. As Plaintiff lay on the ground in back of his home, he heard Defendant Ferrigno speaking with another police officer and heard Defendant Ferrigno say "How should we handle this".

35. After Plaintiff was shot by Defendant Ferrigno, he was dragged by Defendant Ferrigno and/or Defendant Giancursio in the back yard.

36. Upon information and belief, after Plaintiff was shot by Defendant Ferrigno and was laying on the ground helpless, Defendants Ferrigno and/or Giancursio dragged, kicked and physically injured Plaintiff.

37. When Defendant Ferrigno shot at Plaintiff multiple times, it was dark outside.

38. When Defendant Ferrigno shot at Plaintiff multiple times, he was wearing black gloves.

39. When Defendant Ferrigno shot at Plaintiff, Defendant Ferrigno could not see Plaintiff.

40. When Defendant Ferrigno shot at Plaintiff, Defendant Ferrigno did not see a gun or weapon in Plaintiff's hand.

41. When Defendant Ferrigno shot at Plaintiff, Defendant Giancursio could not see Plaintiff.

42. When Defendant Ferrigno shot at Plaintiff, Defendant Giancursio did not see a gun or weapon in Plaintiff's hand.

43. Upon information and belief, there are no witnesses who saw Plaintiff with a gun or weapon in his hand.

44. Following the shooting of Plaintiff, Defendant Ferrigno and/or Giancursio radioed to dispatch advising that shots were fired prompting other City of Rochester police officers to respond to the scene at 9 Immel Street.

45. After the "shots fired" call was made by Defendant Ferrigno and/or Giancursio and some time had passed, a second call was made to dispatch that there was a gun in the back yard.

46. When the Rochester Police Department responded to the scene, a Ruger P85 9 mm handgun (hereinafter "Ruger handgun") was recovered in the back yard area.

47. The Ruger Handgun recovered in the back yard area did not belong to Plaintiff.

48. Upon information and belief, the Rochester Police Department recovered four (4) shell casings on the ground from Defendant Ferrigno's gun.

49.     Besides a spent casing found inside the chamber of the Ruger handgun, the Rochester Police Department did not recover any discharged bullets or casings from the Ruger handgun which had an empty magazine.

50. After Plaintiff was shot, he was arrested, handcuffed and taken into custody by Defendants Ferrigno and Giancursio.

51. Plaintiff was thereafter transported to Strong Memorial Hospital in critical condition due to his gunshot wounds.

52. After Plaintiff arrived and was admitted to Strong Memorial Hospital, he made requests to medical staff and Rochester police officers to check his hands for gun powder residue but all of these requests were denied.

53. After Plaintiff was admitted at Strong Memorial Hospital, he underwent emergency surgery and medical treatment for his gunshot wounds and other injuries.

54. For the entire duration of Plaintiff's admission at Strong Memorial Hospital, Plaintiff remained under arrest and in the custody of the Rochester Police Department.

55. Upon information and belief, as a result of his gunshot and other injuries, Plaintiff suffered gunshot wounds to the left buttock, lower back, lateral right thigh, medial right thigh and areas, a moderate sized left hemopneumothorax requiring placement of chest tubes, a severely comminuted left posterior 10th rib fracture with bony fragments, comminuted fractures of the lateral sixth and seventh ribs, multiple contusions, a fracture of the posterior wall and column of the left acetabulum with extensive comminution, pseudo aneurysm of the right superficial femoral artery, bullet fragment lodged in the left pelvic sidewall just distal to the branching of the main portion of the left iliac artery together with other physical and psychological injuries.

56. When Plaintiff was admitted at Strong Memorial Hospital, Plaintiff was Intubated, placed and remained on a ventilator until he was weaned off of it on April 4, 2016 at 8:55 a.m.

57. Within three (3) hours after coming off the ventilator, on April 4, 2016 at

approximately 11:50 a.m., investigators from the Rochester Police Department began interrogating Plaintiff while he was under the influence of medications and after Plaintiff requested his attorney.

58. On April 5, 2016, Plaintiff was arraigned at Strong Memorial Hospital on criminal charges for Attempted Aggravated Murder, Attempted Aggravated Assault on a Police Officer and two (2) counts of Criminal Possession of a Weapon in the Second Degree based on the false accusation that he fired a weapon at Defendant Ferrigno on April 1, 2016.

59. Upon information and belief, the accusatory informations/complaints which were filed by Defendants Ferrigno and/or Giancursio contained false and fabricated allegations in an effort to justify the criminal charges against Plaintiff and to assure the Defendant Officers' own exonerations from any wrongdoing.

60. Plaintiff was discharged from Strong Memorial Hospital on April 11, 2016 and transferred to the Monroe County Jail where he has remained incarcerated pending his criminal trial which is scheduled to begin on April 3, 2017.

61. Upon information and belief, a DNA profile was obtained from the recovered Ruger handgun.

62. Plaintiff voluntarily gave a DNA swab to be compared to the DNA profile obtained from the Ruger handgun.

63. The DNA profile obtained from the Ruger handgun did not match Plaintiff's DNA.

64. Plaintiff took no actions to justify his arrest, search and seizure, imprisonment and use of force upon his person.

65. As a result of the aforedescribed incident and the use of unlawful, unreasonable, excessive and deadly force upon Plaintiff by Defendants, Plaintiff suffered multiple contusions and gunshot wounds and other physical and psychological injuries. The full nature and extent of Plaintiff's injuries is unknown at this time.

66. Upon information and belief, Defendants Ferrigno and Giancursio were never reprimanded, suspended or terminated from their employment by Defendant Ciminelli or Defendant City of Rochester following the aforedescribed incident and upon information and belief, said officers remain employed as City of Rochester Police officers.

67. Upon information and belief, Defendants Ferrigno and Giancursio had inadequate training and supervision regarding arrests, searches and seizures and reasonable use of force on citizens which led to the constitutional and New York State law violations in this case.

68. Based on the foregoing, Defendants City of Rochester and Ciminelli failed to adequately train and supervise Defendants Ferrigno and Giancursio.

69. Defendants City of Rochester and Ciminelli's failure to properly train, supervise, reprimand, suspend and/or terminate their subordinates, including but not limited to Defendants Ferrigno and Giancursio, amounts to a deliberate indifference to the rights of those with whom City of Rochester employees and officers will come into contact, including Plaintiff.

70. Defendants Ciminelli and City of Rochester were aware or should have been aware that their officers, including Defendants Ferrigno and Giancursio, require special training, procedures, policies and customs to be used so as to not infringe upon the legal and constitutional rights of City of Rochester citizens, including Plaintiff. The failure to promulgate and implement such procedures, policies or customs led to the violation of Plaintiff's legal and constitutional rights and the use of excessive and unreasonable force against his person.

71. The foregoing actions taken or decisions made by City of Rochester

government officials responsible for establishing municipal policies caused the alleged violations of Plaintiff's civil rights.

72. The policies and practices of the City of Rochester in authorizing its police officers to use excessive and/or deadly force is so persistent and widespread that it constitutes a custom or usage and implies the actual or constructive knowledge of City of Rochester policy-making officials.

73. As a direct and proximate result of the intentional and/or negligent acts of the Defendants, Plaintiff continues to remain incarcerated pending trial, has suffered and continues to suffer serious physical and mental injuries, pain and suffering and other damages in an amount that will be established at trial.

74. Plaintiff is entitled to compensation for the constitutional harms and State law violations that Defendants inflicted upon him.

75. As for the timing of the filing this Complaint, Plaintiff is commencing this action prior to his criminal trial in order to comply with the one (1) year statute of limitations for his New York State assault and battery claims.

## CAUSES OF ACTION
### COUNT I

**VIOLATION OF 42 U.S.C. SECTION 1983 BY DEFENDANTS JOSEPH M. FERRIGNO, II, SAMUEL GIANCURSIO AND CITY OF ROCHESTER FOR FALSE ARREST, ILLEGAL SEARCH AND SEIZURE AND FALSE IMPRISONMENT OF PLAINTIFF**

76. The Plaintiff repeats and realleges the allegations in paragraphs 1 through 75 above and incorporates them by reference as if set forth in their entirety herein.

77. Defendants falsely arrested, illegally searched, seized and imprisoned Plaintiff's person without probable cause or reasonable suspicion that a crime has been or was being committed in violation of the Fourth and Fourteenth Amendments to the

11

United States Constitution.

78. By the actions described in paragraphs 1 through 77 above, Defendants, without a warrant or without probable cause and while acting under color of law, arrested Plaintiff and deprived him of certain constitutionally protected rights to be free from unreasonable searches and seizures, the right not to be deprived of liberty without due process of law and the right to be free from false arrest and imprisonment, all in violation of 42 U.S.C. Section 1983 and his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

79. Defendants Ferrigno and Giancursio were acting under color of state law when they, without probable cause or reasonable suspicion that a crime has been or was being committed, exercised their authority as police officers when the falsely arrested, searched, seized and imprisoned Plaintiff who was at all times acting in a lawful manner.

80. Defendant City of Rochester caused Plaintiff to be subjected to the Fourth Amendment violations of illegal search and seizure, false arrest and false imprisonment because the Defendant officers' actions were part of the customary practices of the City of Rochester Police Department.

81. Based upon the foregoing allegations, Defendant City of Rochester and its Police Department have shown a deliberate indifference to an obvious need for training of its officers, including Defendants Ferrigno and Giancursio, and the failure to adequately train, supervise and/or reprimand them resulted in the Defendant officers' actions that caused Plaintiff's harm.

82. As a direct and proximate cause of the illegal search and seizure, false arrest and imprisonment of Plaintiff by Defendants Ferrigno, Giancursio and Defendant City of Rochester, Plaintiff suffered and continues to suffer deprivation of his freedom, serious physical and mental injuries and other damages in an amount that will be established at trial.

83. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

84. As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

85. Defendants Ferrigno's and Giancursio's conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## COUNT II

### VIOLATION OF 42 U.S.C. SECTION 1983 BY JOSEPH M. FERRIGNO, II, SAMUEL GIANCURSIO AND CITY OF ROCHESTER FOR USE OF EXCESSIVE FORCE AGAINST PLAINTIFF

86. The Plaintiff repeats and realleges the allegations in paragraphs 1 through 85 above and incorporates them by reference as if set forth in their entirety herein.

87. Based upon the aforedescribed conduct, Defendants illegally used excessive force under the circumstances against Plaintiff in violation of his Fourth Amendment right to be secure in his person from unreasonable seizures.

88. Defendants' conduct under the circumstances was an excessive use of force on Plaintiff which a reasonable officer in their position would not have used under the circumstances.

89. Defendant City of Rochester caused Plaintiff to be subjected to the Fourth Amendment violation of excessive force because the Defendant officers' actions were

part of the customary practices of the City of Rochester Police Department.

90. Based upon the foregoing allegations, Defendant City of Rochester and its Police Department have shown a deliberate indifference to an obvious need for training of its officers, including Defendants Ferrigno and Giancursio and the failure to adequately train, supervise and/or reprimand them resulted in the Defendant officers' actions that caused Plaintiff's injuries and damages.

91. Upon information and belief, Defendants City of Rochester and Ciminelli had knowledge that Defendant Ferrigno had been subject to citizen complaints during the course of his career as a City of Rochester police officer.

92. In addition to Defendant Ferrigno being subject to citizen complaints, Defendants City of Rochester and Ciminelli had knowledge that Defendant Ferrigno was a named Defendant in police misconduct/excessive force complaints in civil actions Robinn Turner v. City of Rochester, et al., 11-CV-06200-DGL-MWP and Benny T. Warr v. Anthony R. Liberatore, et al., 13-CV-0658-EAW-MWP in United States District Court for the Western District of New York.

93. Upon information and belief, Defendant Ferrigno has been subject to internal excessive force/misconduct complaints during his career as a police officer.

94. Upon information and belief, Defendant Ferrigno has always been cleared of wrongdoing by the City of Rochester Police Department.

95. Upon information and belief, Defendants Ferrigno and Giancursio have had citizen complaints made against them during their careers as police officers and have not faced reprimand, suspension or termination for their alleged conduct.

96. As a direct and proximate cause of the excessive use of force by Defendants Ferrigno, Giancursio and City of Rochester, Plaintiff suffered and continues to suffer serious physical and mental injuries and other damages in an amount that will be established at trial.

97. As a direct and proximate result of Defendants' violations of Plaintiff's

constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

98. As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

99. Defendants Ferrigno's and Giancursio's conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### COUNT III

### VIOLATION OF 42 U.S.C. 1983 (CONSPIRACY TO VIOLATE) BY DEFENDANTS FERRIGNO AND GIANCURSIO

100.    The Plaintiff repeats and realleges the allegations in paragraphs 1 through 99 above and incorporate them by reference as if set forth in their entirety herein.

101.    By and through the actions described in paragraphs 1 through 100 above, Defendants Ferrigno and Giancursio, acting under color of state law, conspired to deprive Plaintiff of his constitutional rights, in violation of 42 U.S.C Section 1983 and his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

102.    Defendants Ferrigno and Giancursio conspired amongst themselves to use excessive force against Plaintiff, to unlawfully search, seize, arrest and imprison his person and to falsely accuse Plaintiff of shooting a gun at Defendant Ferrigno which would result in Plaintiff's arrest, incarceration and conviction and secure Defendants Ferrigno's and Giancursio's exonerations.

103.    Defendants Ferrigno and Giancursio agreed to deprive Plaintiff his constitutional rights and deprived him of his constitutional rights by falsely accusing him of shooting the Ruger handgun at Defendant Ferrigno, by unlawfully searching, seizing, arresting and imprisoning him and by using unlawful excessive and deadly force against his person thus causing serious physical and mental injuries and damages in an amount that will be established at trial.

104.    Defendants Liberatore and Giancursio's conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## COUNT IV

### VIOLATION OF 42 U.S.C. SECTION 1983
### BY DEFENDANT CITY OF ROCHESTER (FAILURE TO IMPLEMENT POLICIES, CUSTOMS AND PRACTICES)

105.    The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 104 above and incorporates them by reference as if set forth in their entirety herein.

106.    By the actions described in paragraphs 1 through 105 above, Defendant City of Rochester has demonstrated a policy, ordinance, custom, regulation and/or decision of deliberate indifference to the rights of its citizens by:

    a.  failing to adequately train its police officers regarding the proper methods for stops, arrest procedures, use of force and/or intervening to prevent constitutional rights violations from occurring by other police officers;

    b.  failing to adequately investigate excessive force complaints of citizens whose constitutional rights are violated;

    c.  failing to independently investigate all excessive force complaints of citizens which are brought to its attention;

    d.  failing to refer all excessive force complaints of citizens to the Civilian Review Board for review;

e. allowing the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;

f. failing to administer the internal review process of excessive/deadly force and/or police misconduct cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;

g. promoting and tolerating a custom and policy in which officers violate the constitutional rights of citizens through unlawful stops, searches, seizures, excessive force and/or failing to intervene to prevent such violations;

h. failing to suspend, terminate or take disciplinary action against officers who violate rights of citizens through unlawful stops, searches and seizures, excessive force and/or failing to intervene to prevent such violations; and

i. failing to adequately train and supervise officers who are prone to commit unlawful stops, searches and seizures, use of excessive force and/or failure to intervene to prevent such constitutional rights violations.

107.   The actions of Defendant City of Rochester were taken under color of law, constitute an official policy or custom of the City of Rochester, deprived Plaintiff of a constitutional or statutory right and caused injuries and damages to his person in an amount to be determined at the trial of this action.

108.   The deficiencies described in paragraph 106 above are practices so consistent and widespread and constitute customs or usages of which City of Rochester supervising policy-makers were aware of and which cause deprivation of constitutional rights of citizens, including Plaintiff.

109.   The failure of policymakers of Defendant City of Rochester to provide adequate training and/or supervision to its police chief and police officers amounts to deliberate indifference to the rights of those who come into contact with its police officers. This is demonstrated by repeated complaints of civil rights violations against Defendant City of Rochester, no meaningful attempt to investigate or to forestall further

incidents and the City of Rochester's policy makers' acquiescence in such long-standing practice/s.

110.   As a direct and proximate cause of Defendant City of Rochester's policy, ordinance, custom, regulation and/or decision or usage of deliberate indifference, Plaintiff suffered violations of his rights as secured under the Fourth Amendment to the United States Constitution to be free from unlawful arrest, imprisonment search and seizure and the use of excessive force.

111.   As a direct and proximate cause of Defendant City of Rochester's policy, ordinance, custom, regulation and/or decision or usage of deliberate indifference, Plaintiff suffered and continues to suffer serious physical and mental injuries and other damages in an amount that will be established at trial.

112.   As a direct and proximate result of Defendant City of Rochester's violations of Plaintiff' constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

113.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.


## COUNT V

### VIOLATION OF 42 U.S.C. SECTION 1983 BY DEFENDANTS CITY OF ROCHESTER AND MICHAEL L. CIMINELLI (Supervisory Liability/Monell v. Dept. of Social Services, 436 U.S. 658 (1978))

114.   The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 113 above and incorporates them by reference as if set forth in their entirety herein.

115.   At all times relevant herein, Defendants City of Rochester and Ciminelli have supervised Defendants Ferrigno and Giancursio and are responsible for said officers' retention, training and supervision.

116.   Defendants Ciminelli and City of Rochester have condoned a pattern of brutality committed by City of Rochester police officers. Defendants Ciminelli and City of Rochester maintained or permitted one or more of the following official policies, customs or practices:

A. Failure to adequately train and supervise City of Rochester police officers regarding: 1) their duty to intervene to prevent to protect the constitutional rights of citizens from infringement; 2) constitutional limitations on stops; 3) the use of force; 4) arrests; and 5) searches and seizures of persons;

B. Failure to adequately discipline, suspend, terminate and/or retrain officers involved in misconduct;

C. Hiring, assigning/selecting and retention of City of Rochester police officers with demonstrable propensities for use of excessive force, violence, dishonesty and other misconduct;

D. Condoning and encouraging City of Rochester police officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for continued employment, promotion and other employment benefits;

E. Failure to take adequate measures to discipline City of Rochester police officers who engage in the use of excessive force, unlawful stops, arrests, searches, seizures, violence, dishonesty and other misconduct;

F. Failure to practice and enforce proper reporting and investigation of use of force by City of Rochester police officers;

G. Allowing the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;

H. Failing to allow the internal review process of excessive force cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;

I.  Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

117.    Defendants City of Rochester and Ciminelli have maintained and permitted the aforedescribed practices, policies and customs, were aware of widespread abuses of power and use of excessive force by City of Rochester police officers and failed to take proper measures to investigate and/or discipline said officers and/or remedy such practices.

118.    Upon information and belief, instead of taking proper measures to investigate and/or discipline City of Rochester police officers who have engaged in abuse of power and use of excessive force, Defendants Ciminelli and City of Rochester condoned, encouraged, fostered and/or ratified the unlawful conduct of said officers.

119.    Upon information and belief, Defendants Ciminelli and City of Rochester have ratified Defendants Ferrigno and Giancursio's unconstitutional conduct towards Plaintiff.

120.    Based on the foregoing, Defendants City of Rochester and Ciminelli had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens, including Plaintiff, that Defendant Ciminelli's response to that knowledge was so inadequate as to show deliberate indifference to or a tacit authorization of the alleged offensive practices and there is an affirmative causal link between Defendant Ciminelli's inaction and the particular constitutional injuries suffered by Plaintiff.

121.    Upon information and belief, by and through policy, custom and training, Defendants City of Rochester and Ciminelli had actual or constructive knowledge that their subordinates, including Defendants Ferrigno and Giancursio, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff and have condoned this custom, policy and training whereby unconstitutional practices occur.

20

122.    Upon information and belief, Defendants Ferrigno and Giancursio have prior employment histories involving alleged misconduct and Defendants City of Rochester and Ciminelli were negligent for their training, supervision and retention of said officers.

123.    In the civil action <u>Robinn Turner v. City of Rochester, et al.</u>, 11-CV-06200-DGL-MWP (WDNY), the Plaintiff alleged that Defendant Ferrigno picked her up off the ground, slammed her onto the concrete breaking a rib, dragged her across the concrete pavement by her right arm, pulled Plaintiff's right arm behind her back and then slammed his knee into Plaintiff's back.

124.    In the civil action <u>Robinn Turner v. City of Rochester, et al.</u>, 11-CV-06200-DGL-MWP (WDNY), the Plaintiff alleged that Defendant Ferrigno violated her civil rights, acted with malice and without probable cause in commencing a criminal proceeding against Plaintiff which was terminated in Plaintiff's favor.

125.    In the civil action <u>Benny T. Warr v. Anthony R. Liberatore, et al.</u>, 13-CV-0658-EAW-MWP (WDNY), the Plaintiff, a wheelchair bound and one leg amputee, was peacefully waiting for a bus when Defendant Ferrigno maced him in his face and eyes, pushed his wheelchair over causing his body to slam onto the sidewalk where Defendant Ferrigno jumped on, kicked, punched and kneed Plaintiff in the stomach, chest, head, back, neck and other areas of his body causing him to suffer rib fractures, serious physical and mental injuries.

126.    In the civil action <u>Benny T. Warr v. Anthony R. Liberatore, et al.</u>, 13-CV-0658-EAW-MWP (WDNY), the alleged disorderly conduct and resisting arrest charges against Plaintiff Warr were based on false and fabricated allegations contained in the informations/supporting depositions which were filed by Defendants Ferrigno and Liberatore and which the Rochester Police Department allowed the Civilian Review Board to consider.

127.    Upon information and belief, despite Defendants City of Rochester

and Ciminelli's knowledge that their subordinates, including Defendants Ferrigno and Giancursio, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, their response to said knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices of their subordinates, including the actions of Defendants Ferrigno and Giancursio.

128.   Upon information and belief, there is an affirmative causal link between the aforedescribed culpable action and/or inaction of Defendants City of Rochester and Ciminelli and the particular constitutional injuries suffered by Plaintiff.

129.   As a direct and proximate cause of Defendant City of Rochester's and Ciminelli's official policies, customs or practices which condone a pattern of brutality, police misconduct and civil rights violations by Rochester police officers, Plaintiff remains incarcerated pending his criminal trial, has suffered and continues to suffer serious physical and mental injuries and other damages in an amount that will be established at trial.

130.   As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff is entitled to relief under 42 U.S.C. Section 1983 and has suffered general and special damages in an amount to be determined at trial.

131.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

## COUNT VI

### BATTERY BY DEFENDANTS FERRIGNO, GIANCURSIO AND CITY OF ROCHESTER

132.   The Plaintiff repeats and realleges the allegations set forth in

paragraphs 1 through 131 above and incorporates them by reference as if set forth in their entirety herein.

133.   The aforesdescribed actions of Defendants Ferrigno and Giancursio constitute an intentional battery upon Plaintiff's person.

134.   Defendant Ferrigno committed a battery upon Plaintiff's person by shooting and striking Plaintiff three (3) times from behind with bullets as Plaintiff was proceeding towards his back yard.

135.   Defendants Ferrigno and Giancursio committed a battery upon Plaintiff's person by dragging, striking, kicking and handcuffing Plaintiff and causing physical injury to Plaintiff's body as he lay on the ground critically wounded.

136.   The battery committed upon Plaintiff was without provocation by Plaintiff and without his consent.

137.   As a direct and proximate result of the battery committed upon his person by Defendants, Plaintiff suffered severe and permanent physical and mental injuries and damages in an amount to be determined at trial.

138.   Defendant City of Rochester is liable under the doctrine of Respondeat Superior for the acts and omissions of its employees and/or agents, Defendants Ferrigno and Giancursio, who were purporting to act or were acting in the course and scope of their employment as police officers with Defendant City of Rochester when the alleged battery was committed upon Plaintiff's person.

139.   Defendants Ferrigno and Giancursio's actions were malicious, oppressive, reckless, wanton and in willful disregard of Plaintiff's rights that Plaintiff claims punitive damages against Defendants Ferrigno and Giancursio in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## COUNT VII

### ASSAULT BY DEFENDANTS FERRIGNO, GIANCURSIO
### AND CITY OF ROCHESTER

140.    The Plaintiff repeats and realleges the allegations set forth in paragraphs

1 through 139 above and incorporates them by reference as if set forth in their entirety

herein.

141.    The aforedescribed actions of Defendants Ferrigno and Giancursio

constitute an intentional assault upon Plaintiff's person.

142.    Defendant Ferrigno intentionally placed Plaintiff in fear of imminent,

harmful or offensive contact when Defendant Ferrigno ran towards Plaintiff with a gun

drawn and pointed at him, by shooting Plaintiff three (3) times from behind and by

kicking and threatening to "finish off" Plaintiff and "blowing his brains out".

143.    Defendants Ferrigno and Giancursio intentionally placed Plaintiff in fear of

imminent, harmful or offensive contact when said Defendants dragged, struck, kicked,

handcuffed and/or caused physical injury to Plaintiff's body as he lay on the ground

critically injured.

144.    The Defendants Ferrigno and Giancursio made an intentional attempt,

displayed by violence or threatening gesture, to do injury to or commit a battery upon

Plaintiff's person.

145.    The assault committed upon Plaintiff by Defendants Ferrigno and

Giancursio was without provocation by Plaintiff.

146.    Defendant City of Rochester is liable under the doctrine of Respondeat

Superior for the acts and omissions of its employees and/or agents including

Defendants Ferrigno and Giancursio who were purporting to act or were acting in the

course and scope of their employment as police officers with Defendant City of

Rochester when the alleged assault was committed upon Plaintiff's person.

147.   As a direct and proximate result of the assault committed upon his

person, Plaintiff suffered severe and permanent physical and mental injuries and

damages in an amount to be determined at trial.

148.   Defendants Ferrigno and Giancursio's actions were malicious, reckless,

wanton and in willful disregard of Plaintiff's rights that Plaintiff claims punitive damages

against Defendants Ferrigno and Giancursio in an amount to be determined at trial

commensurate with the wrongful acts alleged herein.

## COUNT VIII
## NEGLIGENCE BY ALL DEFENDANTS

149.   The Plaintiff repeats and realleges the allegations set forth in

paragraphs 1 through 148 above and incorporates them by reference as if set forth in

their entirety herein.

150.   In the event it is determined that the alleged actions of Defendants were

not intentional, in the alternative, Defendants negligently inflicted physical force and

injury on Plaintiff's person as alleged above.

151.   Defendants owed a duty of care to Plaintiff to act in a lawful manner and to

not use unlawful excessive physical force against Plaintiff which would cause injury and

damages.

152.   Defendants breached this duty of care by permitting unlawful excessive

physical force to be applied under the circumstances to Plaintiff's person causing

Plaintiff physical and mental injuries and damages in an amount to be determined at

trial.

153.   Upon information and belief, Defendant City of Rochester was negligent

by failing to properly investigate Defendants Ferrigno and Giancursio before hiring them.

154.    Upon information and belief, Defendants City of Rochester and/or Ciminelli were negligent with the training, supervision and retention of Defendants Ferrigno, Giancursio and Ciminelli resulting in the tortious and unlawful conduct used against Plaintiff as set forth in this Complaint.

155.    Defendants City of Rochester and Ciminelli owed a duty of care to Plaintiff to properly investigate Defendants Ferrigno and Giancursio at the time of their hiring and upon information and belief, failed to do so.

156.    Defendants City of Rochester and Ciminelli owed a duty of care to Plaintiff to properly instruct, train and supervise their officers including Defendants Ferrigno and Giancursio and upon information and belief, failed to do so.

157.    Defendants City of Rochester and Ciminelli breached their duty of care to Plaintiff by failing to properly investigate Defendants Ferrigno and Giancursio prior to their hiring and during the course of their employment as police officers.

158.    Defendants City of Rochester and Ciminelli breached their duty of care to Plaintiff by failing to adequately instruct, train and supervise Defendants Ferrigno and Giancursio.

159.    Upon information and belief, Defendants City of Rochester and Ciminelli breached their duty of care to Plaintiff by retaining Defendants Ferrigno and Giancursio after learning of their propensity to act in an unlawful and unauthorized manner by unlawfully stopping, arresting, searching, seizing, imprisoning and/or applying excessive physical force during encounters with citizens.

160.    As a direct and proximate result of Defendants' negligence as alleged herein, Plaintiff has remained incarcerated and has suffered severe and permanent physical and mental injuries and damages in an amount to be determined at trial.

161.    Defendants alleged actions were malicious, reckless, wanton and in willful

disregard of Plaintiff's rights that Plaintiff claims punitive damages be imposed against Defendants Ferrigno and Giancursio in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

**WHEREFORE,** Plaintiff Silvon S. Simmons prays for judgment against Defendants as follows:

1. Compensatory damages in the form of general and special damages against all Defendants, jointly and severally, in an amount that has yet to be ascertained and according to the proof to be determined at trial;

2. Punitive damages against all individual Defendants in an amount to be determined at trial;

3. Declaratory judgment declaring that Plaintiff Silvon S. Simmons' constitutional rights to be free from unlawful arrest, search, seizure, imprisonment and excessive force under the Fourth and Fourteenth Amendments were violated by Defendants;

4. Reasonable costs of this suit incurred herein;

5. An award of reasonable attorney's fees pursuant to 42 U.S.C. Section 1988; and

6. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded.

Dated: March 23, 2017

Respectfully submitted,

**BURKWIT LAW FIRM, PLLC**

s/Charles F. Burkwit, Esq.
Charles F. Burkwit, Esq.
Attorneys for Plaintiff Silvon S. Simmons
16 East Main Street, Suite 450
Rochester, New York 14614
(585) 546-1588
burkwitesq@aol.com