UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SILVON S. SIMMONS,

                         Plaintiff,                      CA: No. 17-CV-6176

       vs.

                                               **AMENDED COMPLAINT
AND JURY DEMAND**

JOSEPH M. FERRIGNO, II,
SAMUEL GIANCURSIO,
MARK WIATER,
CHRISTOPHER MUSCATO,
ROBERT WETZEL,
MICHAEL L. CIMINELLI,
JOHN DOES 1-20,
CITY OF ROCHESTER,
SHOTSPOTTER INC.,
SST, INC.,
JOHN DOES 21-30 and
PAUL C. GREENE,

                          Defendants.
_____

       Plaintiff SILVON S. SIMMONS (hereinafter "Plaintiff"), by and through his

attorneys, Burkwit Law Firm, PLLC, as and for his complaint against Defendants

JOSEPH M. FERRIGNO, II, SAMUEL GIANCURSIO, MARK WIATER, CHRISTOPHER

MUSCATO, ROBERT WETZEL, MICHAEL L. CIMINELLI, JOHN DOES 1-20, CITY OF

ROCHESTER, SHOTSPOTTER, INC., SST, INC., JOHN DOES 21-30 and PAUL C.

GREENE (hereinafter "Defendants"), alleges as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment and monetary damages for violations of Plaintiff Silvon S. Simmons' constitutional rights pursuant to 42 U.S.C. 1983, 1988 and related New York State law claims. Plaintiff alleges that the Defendants, while acting in their official capacities and under color of State law illegally searched and seized, falsely arrested and imprisoned Plaintiff, used excessive and deadly force against Plaintiff, fabricated and falsified evidence, maliciously prosecuted and denied Plaintiff a fair trial in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings claims against Defendants under New York State Law for battery, assault and malicious prosecution. Plaintiff further alleges that Defendants City of Rochester and Michael L. Ciminelli have demonstrated a custom and policy of deliberate indifference to the constitutional rights of its citizens.

## JURISDICTION

2.      This action arises in part under 42 U.S.C. Section 1983 and accordingly, this Court has original subject matter jurisdiction under 28 U.S.C. Section 1331. For all remaining claims which do not present a federal question under 28 U.S.C. Section 1331, this Court has supplemental jurisdiction under 28 U.S.C. Section 1367.

3.      The causes of action alleged herein arise from the factual allegations which occurred in this judicial district.

4.      All individual Defendant police officers, John Does 1-20 and City of Rochester are domiciled within the Western District of New York and therefore, this Court has personal jurisdiction over said Defendants.

5.      This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene on the basis that the claims against them are related to the other claims alleged which this Court has independent jurisdiction.

6.      Pursuant to CPLR §302 (a)(1) and (2), this Court has personal jurisdiction over Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene since their alleged tortious actions occurred within New York State and since they transact business and supply goods and services within the State of New York.

7.      Pursuant to CPLR §302 (a)(3)(i), this Court has personal jurisdiction over Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene since they committed tortious acts without the State of New York causing injury to Plaintiff within the State of New York and since said Defendants regularly conduct or solicit business, engage in a persistent course of conduct and derive substantial revenue from goods used or consumed or services rendered in the State of New York.

8.      Pursuant to CPLR §302 (a)(3)(ii), this Court has personal jurisdiction over Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene since they committed tortious acts without the State of New York causing injury to Plaintiff within the State of New York which said Defendants expect or should reasonably expect their acts to have consequences within the State of New York and since said Defendants derive substantial revenue from interstate or international commerce.

9.      Pursuant to CPLR §302 (a)(4), this Court has personal jurisdiction over Defendants Shotspotter, Inc. and SST, Inc. since they own, use or possess real property within the State of New York.

10.      This Court has personal jurisdiction over Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene as minimum contacts exist between said Defendants and New York State, since they have purposefully availed themselves of the privileges of conducting business in the State of New York, since they have purposefully established contacts in the State of New York, since there is a significant nexus between those contacts and this litigation and since exercising jurisdiction over said Defendants does not offend traditional notions of fair play and substantial justice.

11.      Defendant Shotspotter, Inc., a Delaware Foreign Business Corporation, is duly licensed to conduct business within the State of New York through the New York State Department of State.

## VENUE

12.      Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C. Section 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District, since all individual Defendant police officers reside in this District and since Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene are deemed to reside in this district since their contacts are sufficient to subject them to personal jurisdiction in this District.

## PARTIES

13.     At all times relevant herein, Plaintiff was and still is a resident of the City of Rochester, County of Monroe and State of New York.

14.     Defendant Joseph M. Ferrigno, II (hereinafter "Defendant Ferrigno") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

15.     At all times relevant to this Complaint, Defendant Ferrigno was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

16.     Defendant Samuel Giancursio (hereinafter "Defendant Giancursio") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

17.     At all times relevant to this Complaint, Defendant Giancursio was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

18.     Defendant Mark Wiater (hereinafter "Defendant Wiater") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

19.     At all times relevant to this Complaint, Defendant Wiater was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

20.     Defendant Christopher Muscato (hereinafter "Defendant Muscato") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

21.     At all times relevant to this Complaint, Defendant Muscato was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

22.     Defendant Robert Wetzel (hereinafter "Defendant Wetzel") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer with the City of Rochester Police Department.

23.     At all times relevant to this Complaint, Defendant Wetzel was acting under color of law and is sued in his individual capacity and official capacity as a police officer for the Defendant City of Rochester.

24.     Defendant Michael L. Ciminelli (hereinafter "Defendant Ciminelli") is and at all times relevant herein was a citizen of New York State residing in Monroe County and was employed as a police officer and Chief of Police with the City of Rochester Police Department.

25.     At all times relevant to this Complaint, Defendant Ciminelli was acting under color of law and is sued in his individual capacity and official capacity as a police officer and Chief of Police for the Defendant City of Rochester.

26.     At all times relevant to this Complaint, as Chief of Police for the City of Rochester Police Department, Defendant Ciminelli was responsible for the supervision, training and retention of Defendants Joseph M. Ferrigno, II, Samuel Giancursio, Mark Wiater, Christopher Muscato, Robert Wetzel, John Does 1-20 and for making and

implementing policies, customs and practices used by law enforcement officers employed by Defendant City of Rochester regarding investigations, arrests, the use of force, collecting and preserving evidence and reporting incidents in performance of the acts herein alleged.

27.     Defendants John Does 1-20 (hereinafter "The Doe Defendants"), individuals whose names are currently unknown to Plaintiff, are citizens of New York State who were employed by and served as police officers for Defendant City of Rochester on and around April 1, 2016.

28.     The Doe Defendants are unknown police officers who were involved in the arrest and/or use of force on Plaintiff, the investigation of the incident, the fabrication of evidence, the giving of false statements, suppression and/or destruction of evidence favorable to Plaintiff and/or failed to intervene to protect Plaintiff's constitutional rights concerning the events related to the April 1, 2016 incident alleged herein.

29.     At all times relevant to this Complaint, The Doe Defendants were acting under color of law and are sued in their individual capacities and official capacities as police officers for the Defendant City of Rochester.

30.     At all times material to the allegations in this Complaint, Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, Ciminelli and John Does 1-20 were acting under color of State law as police officers employed by Defendant City of Rochester.

31.     At all times herein relevant, Defendant City of Rochester  was and still is a municipal corporation duly organized and existing under the laws of the State of New York with its principal place of business in the County of Monroe, State of New York.

7

32.     Defendant City of Rochester is a political subdivision of the State of New York for which at all times relevant to this Complaint, Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, Ciminelli and John Does 1-20 were employed by and served as police officers.

33.     Defendant City of Rochester is responsible for the hiring, training, supervision and retention of Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, Ciminelli and John Does 1-20.

34.     At all times relevant herein, Defendant City of Rochester has established and/or delegated to Defendant Ciminelli the responsibility for establishing and implementing policies, practices, procedures and customs used by law enforcement officers employed by the City of Rochester regarding investigations, arrests, the use of force on persons, collection and preservation of evidence, reporting incidents and intervention to protect the constitutional rights of citizens.

35.     At all times herein relevant, Defendant City of Rochester was responsible for the policies, practices and supervision of its police officers, the enforcement of the rules of the Rochester Police Department and ensuring that its officers act in accordance with the law.

36.     On or about June 23, 2016, Defendant City of Rochester was served with a Verified Notice of Claim and on August 23, 2018 was served with a Supplemental Verified Notice of Claim detailing its culpability and Plaintiff's damages.

37.     Defendant City of Rochester has failed and refused to make payment to Plaintiff in accordance with said Verified Notice of Claim and Supplemental Verified Notice of Claim.

8

38.     At least thirty (30) days have elapsed since the service of the Verified Notice of Claim upon Defendant City of Rochester and adjustment of payment thereof has been neglected or refused by Defendant City of Rochester.

39.     At all times herein relevant, Defendant Shotspotter, Inc. was and still is a foreign business corporation existing under the laws of the State of Delaware and is duly authorized by the New York Department of State to operate as such in New York State.

40.     Upon information and belief, Defendant Shotspotter, Inc. maintains principal offices at 7979 Gateway Boulevard, Suite 210, Newark, California 94560.

41.     At all times relevant herein, Defendant Shotspotter, Inc. has maintained and conducted business in the State of New York.

42.     At all times herein relevant and upon information and belief, Defendant SST, Inc. was and still is a corporation existing under the laws of the State of California.

43.     Upon information and belief, Defendant SST, Inc. maintains principal offices at 7979 Gateway Boulevard, Suite 210, Newark, California 94560.

44.     At all times relevant herein, Defendant SST, Inc. has maintained and conducted business in the State of New York.

45.     At all times herein relevant, Defendant Shotspotter, Inc. has contracted with the Defendant City of Rochester and/or the City of Rochester Police Department to provide gunshot detection and location services within the City of Rochester, New York.

46.     At all times relevant herein, Defendant SST, Inc. has contracted with the City of Rochester and/or the City of Rochester Police Department to provide gunshot detection and location services within the City of Rochester, New York.

47.     Upon information and belief, Defendants Shotspotter, Inc. and/or SST, Inc.

receive approximately $130,000.00 per year from the City of Rochester and/or City of Rochester Police Department for providing gunshot detection and location services

48.     Defendants John Does 21-30 (hereinafter "Shotspotter Doe Defendants"), individuals whose names are currently unknown to Plaintiff, are United States citizens who were employed by and/or served as agents for Defendants Shotspotter, Inc. and/or SST, Inc. on or about April 1, 2016.

49.     The Shotspotter Doe Defendants are unknown employees and/or agents who were involved in the search for, the altering and/or fabrication of gunshot audio, documentary and/or other evidence at the request of Defendant City of Rochester and/or police officers employed by Defendant City of Rochester, giving false statements, creating and/or altering reports, audio and/or evidence used to prosecute Plaintiff, suppressed and/or destroyed evidence favorable to Plaintiff concerning the events of April 1, 2016 alleged herein.

50.     Upon information and belief, Defendant Paul C. Greene (hereinafter "Defendant Greene") was and is a resident of the State of California and/or Arizona.

51.     Upon information and belief and at all times herein relevant, Defendant Greene served as the Lead Customer Support Engineer and/or Manager of Forensic Services for Defendants Shotspotter, Inc. and/or SST, Inc.

52.     Defendant Greene testified at Plaintiff's criminal trial in October 2017 in Monroe County Court as an expert at the prosecution's request and he certified Detailed Forensic Reports for Defendants Shotspotter, Inc. and/or SST Inc. concerning the alleged gunfire detected on April 1, 2016 at 9 Immel Street in Rochester, New York.

53.     At all times herein, Defendant Greene was responsible for the search, review, altering and/or editing, approval and certification of Shotspotter gunshot audio and documentary evidence which was used in the prosecution of Plaintiff in Monroe County Court.

54.     At all times herein relevant, Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene were state actors as their conduct alleged herein constitutes state action and was the result of state compulsion, a public function and/or a joint action as a result of a close nexus between public and private actors. (Jane Doe v. Harrison, et al., 254 FSupp2d 338, 342 (SDNY 2003), citing Blum v. Yaretsky, 457 US 991, 1004-05 (1982)).

55.     At all times relevant to this Complaint, the conduct of Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene constitutes state action, they were acting under color of law and are sued in their individual capacities and official capacities.

## **FACTS**

### *The Pursuit of Plaintiff*

56.     On April 1, 2016 at approximately 8:55 p.m., Plaintiff left his home located at 5 Immel Street Rochester, New York 14606 to go with his next door neighbor, Detron Parker, to a nearby store.

57.     As Plaintiff proceeded to and from the store, Plaintiff was a passenger in a gray Chevy Impala which was operated by his next door neighbor, Detron Parker, who resided at 9 Immel Street, Rochester, New York 14606.

58.     As Plaintiff proceeded to and from the store, he did not observe any police

vehicles.

59.     On April 1, 2016 at approximately 9:08 p.m., Plaintiff and Detron Parker

returned in the gray Chevy Impala to Mr. Parker's driveway located at 9 Immel Street,

Rochester, New York 14606.

60.     When Detron Parker drove the gray Chevy impala to and from the store,

the evening of April 1, 2016, he did not drive erratically or unlawfully, did not commit any

traffic infraction and did not receive any traffic tickets that evening.

61.     When Plaintiff and Detron Parker returned to the driveway at 9 Immel

Street, Detron Parker backed the gray Chevy Impala into said driveway, turned the

vehicle off and Plaintiff proceeded to exit said vehicle.

62.     On April 1, 2016 at approximately 9:09 p.m., after Detron Parker backed

the gray Chevy Impala into the driveway at 9 Immel Street and shut the vehicle off,

Defendant Ferrigno drove up and suddenly stopped his Rochester Police Department

vehicle (hereinafter "police vehicle") along the curb at the end of the driveway at 9

Immel Street.

63.     Prior to stopping his police vehicle along the curb at the end of the

driveway at 9 Immel Street, Defendant Ferrigno did not observe Plaintiff or Detron

Parker commit any criminal act or violation.

64.     Defendant Ferrigno did not possess a warrant  to search or arrest Plaintiff

or Detron Parker.

65.     Prior to stopping his police vehicle along the curb at the end of the

driveway at 9 Immel Street, Defendant Ferrigno had not been provided with any

information that would suggest Plaintiff or Detron Parker engaged in any criminal activity.

66.     Prior to stopping his police vehicle along the curb at the end of the driveway at 9 Immel Street, Defendant Ferrigno had not been provided with any information that would suggest to a reasonable police officer that Plaintiff or Detron Parker engaged in any criminal activity.

67.     The objective facts known to Defendant Ferrigno did not provide him with reasonable or probable cause to believe Plaintiff or Detron Parker had committed any criminal act or violation.

68.     When Defendant Ferrigno pulled his police vehicle in front of the driveway at 9 Immel Street, he shined a bright spotlight at Plaintiff who had exited the gray Impala.

69.     Defendant Ferrigno popped out of his police vehicle immediately after he had stopped at the end of the driveway at 9 Immel Street.

70.     After Defendant Ferrigno pulled his police vehicle over, stopped and shined a bright spotlight at Plaintiff, he got out of his vehicle with his gun drawn, pointed at Plaintiff and started running westerly down the driveway towards Plaintiff.

71.     Plaintiff was blinded by the spotlight Defendant Ferrigno shined directly in Plaintiff's face.

72.     At no time did Defendant Ferrigno state that he was a police officer or otherwise identify himself as a police officer.

73.     As Defendant Ferrigno was running towards Plaintiff with his gun drawn and pointed at him, Plaintiff immediately started running down the driveway towards his back yard at 5 Immel Street.

74.     Plaintiff, who was blinded by the spotlight, did not know who was chasing him at gunpoint when he ran down the driveway towards his back yard.

75.     Plaintiff ran down the driveway towards his back yard since he did not know who was chasing him at gunpoint, did not know why he was being chased and since he feared for his life.

76.     Because Plaintiff was blinded by the spotlight and because Defendant Ferrigno failed to identify himself as a police officer, Plaintiff did not know who was chasing him at gunpoint and did not know it was a police officer.

77.     When Plaintiff exited the gray Chevy Impala and ran down the driveway towards his back yard, Plaintiff was not armed with a gun or any weapon.

78.     When Plaintiff exited the gray Chevy Impala and ran towards his back yard, he did not make any violent or threatening actions towards Defendant Ferrigno.

79.     When Defendant Ferrigno chased Plaintiff down the driveway and into the back yard, Defendant Ferrigno had not seen Plaintiff in possession of any weapon, had not seen Plaintiff commit any crime and had not received any report that Plaintiff had been involved in any type of crime.

80.     When Defendant Ferrigno chased Plaintiff into the back yard, he did not know whether the person he was chasing was a male or female.

81.     When Defendant Ferrigno chased Plaintiff into the back yard, he did not know who he was chasing and whether any crime had been committed by said person.

14

82.     Defendants Giancursio and Ferrigno claimed that on April 1, 2016 at approximately 9:03 p.m., they made a traffic stop in the vicinity of 1384 Lyell Avenue in Rochester, New York.

83.     On April 1, 2016 at approximately 9:09 p.m., a dispatcher called Defendants Giancursio and Ferrigno to check on them regarding the alleged traffic stop.

84.     On April 1, 2016 at 9:09 p.m., Defendants Giancursio and/or Ferrigno reported to dispatch that they were all set or okay with their traffic stop.

85.     Before Plaintiff was stopped, pursued, shot and seized by Defendant Ferrigno, Defendants Giancursio and Ferrigno never notified dispatch that they were leaving or had left their alleged traffic stop job at 1384 Lyell Avenue in Rochester, New York.

### Defendant Ferrigno Shoots Plaintiff

86.     As Plaintiff was running away from Defendant Ferrigno down the driveway towards his back yard, Defendant Ferrigno fired four (4) gun shots at Plaintiff striking Plaintiff's body three (3) times with his police issued Glock .45 caliber hand gun.

87.     On April 1, 2016 at approximately 9:09 p.m., Defendant Ferrigno fired his Police issued Glock .45 caliber hand gun at Plaintiff four (4) times striking Plaintiff a total of three (3) times, once behind in his back, left buttock and right upper leg.

88.     When Defendant Ferrigno fired his police issued hand gun and struck Plaintiff, he was standing in the driveway between 7 and 9 Immel Street.

89.     When Plaintiff was shot the third time by Defendant Ferrigno, Plaintiff dove over a fence which led to his back yard, landed on the ground and attempted to crawl to his back door.

90.     Plaintiff was physically unable to get to the back door of his home and was unable to get away from Defendant Ferrigno due to his injuries so Plaintiff decided to lay face down on the ground and "play dead" since he could not get away from his shooter and feared he would be shot again and killed.

91.     Plaintiff was lying face-down on the ground, playing dead, in the back yard when he heard Defendant Ferrigno yell out "I got him!".

92.     When Plaintiff was trying to "play dead", he accidentally took a deep breath due to pain and Defendant Ferrigno said "What the fuck" and kicked Plaintiff in his back multiple times.

93.     After Defendant Ferrigno kicked Plaintiff in the back multiple times, he said to Plaintiff "Shut the fuck up before I blow your brains out".

94.     Defendant Ferrigno then said to Plaintiff while pointing a gun to his head "I should just finish you off".

95.     On April 1, 2016 at 9:10:01 p.m., after Plaintiff was shot by Defendant Ferrigno, Defendant Ferrigno called dispatch and reported "Shots Fired" (hereinafter "Shots Fired Call").

96.     When the Shots Fired Call was made by Defendant Ferrigno to dispatch, he did not claim that Plaintiff had fired a gunshot at him.

97.     When the Shots Fired Call was made by Defendant Ferrigno to dispatch, he did not claim that any other person had fired a gunshot at him.

98.     When the Shots Fired Call was made by Defendant Ferrigno to dispatch, he did not claim that he was shot or injured in any way.

99.     When the Shots Fired Call was made by Defendant Ferrigno, he did not claim that he was concerned that he may have been shot or injured.

100.    After the initial Shots Fired Call was made by Defendant Ferrigno on April 1, 2016 at 9:10:01 p.m., Defendant Giancursio radioed to dispatch at 9:10:37 p.m. and stated "We're on Immel".

101.    On April 1, 2016 at 9:11:05 p.m., Defendant Giancursio radioed to dispatch "We have a gun in the back yard here. We're approximately ten (10) houses up north on Immel from Jay".

102.    The location where the Plaintiff was shot on Immel Street on April 1, 2016 is the second house north on Immel Street from Jay Street.

103.    On April 1, 2016 at 9:11:31 p.m., Defendant Giancursio radioed to dispatch "Number 9 Immel".

104.    There are no 911 Emergency Communication recordings where Defendants Ferrigno or Giancursio stated anyone fired a gun at a police officer.

105.    At no time did Defendants Ferrigno or Giancursio report to 911 Emergency Communications that a gun had been fired at them by Plaintiff or any other person.

106.    At no time did Plaintiff fire a gun at Defendants Ferrigno or Giancursio.

107.    At no time did any other person fire a gun at Defendants Ferrigno or Giancursio the evening of April 1, 2016.

108.    Defendants Ferrigno and Giancursio lacked objective facts to believe that Plaintiff or any other person, other than Defendant Ferrigno, had fired a gun during the alleged incident.

109.    After Plaintiff was shot and was lying in the back yard, Defendant Ferrigno went over to the driveway area between 7 and 9 Immel Street where Plaintiff heard him speaking with another police officer believed to be Defendant Giancursio.

110.    As Plaintiff lay on the ground in back of his home, he heard Defendant Ferrigno speaking with another police officer believed to be Defendant Giancursio and heard Defendant Ferrigno say "How should we handle this" and "How should we call this in".

111.    After Defendants Ferrigno and Giancursio spoke at the end of the driveway, they went into the back yard where Plaintiff was lying and kicked Plaintiff.

112.    When Defendant Giancursio went in the back yard, Plaintiff stated to him "I ain't dead. I don't have a gun".

113.    When Defendant Giancursio approached Plaintiff in the back yard, he searched and handcuffed Plaintiff who was lying on the ground and he did not see a gun before he handcuffed Plaintiff.

114.    When Defendant Giancursio handcuffed Plaintiff and rolled him over onto his stomach to see if there was a gun underneath him, there was no gun underneath Plaintiff.

115.    When Defendant Giancursio handcuffed and searched Plaintiff, he did not find a gun on Plaintiff's person.

116.    After Plaintiff was shot three (3) times by Defendant Ferrigno and handcuffed by Defendant Giancursio, he was dragged by Defendant Ferrigno and/or Defendant Giancursio further in the back yard where it was even darker.

117.    When Plaintiff was shot three (3) times by Defendant Ferrigno, there was

no gun or weapon in the back yard or on Plaintiff's person.

118.    After Plaintiff was shot by Defendant Ferrigno, he was frisked, searched, handcuffed, kicked, dragged and physically injured by Defendants Ferrigno and Giancursio.

119.    Defendants Ferrigno and Giancursio violated good and accepted police practices and RPD internal policies by dragging Plaintiff after he had been shot three (3) times.

120.    After Defendant Giancursio dragged Plaintiff further into the back yard, he radioed to dispatch, requested an ambulance for Plaintiff and shut down the scene waiting for backup to arrive.

121.    When Defendant Ferrigno shot at Plaintiff four (4) times, it was dark outside.

122.    When Defendant Ferrigno shot at Plaintiff four (4) times, he was wearing black gloves.

123.    When Defendant Ferrigno shot at Plaintiff, Defendant Ferrigno could not see Plaintiff.

124.   When Defendant Ferrigno shot at Plaintiff, Defendant Ferrigno could not see Plaintiff since it was dark and there were no lights on in the back yard.

125.    When Defendant Ferrigno shot at Plaintiff, Defendant Ferrigno did not see a gun or weapon in Plaintiff's hand.

126.    At no time did Plaintiff pose a threat of physical harm to Defendants Ferrigno and Giancursio or any other person.

127.    At no time did Plaintiff threaten Defendants Ferrigno, Giancursio or any

other person through his words or actions.

128.   Defendant Ferrigno's use of force against Plaintiff violated clearly established law.

129.   Defendant Ferrigno's use of force violated the RPD's internal written policies.

130.   Any reasonable officer would have known that Defendant Ferrigno lacked any justification to use any force against Plaintiff.

131.   Any reasonable officer would have known that Defendant Ferrigno lacked any justification to use deadly force against Plaintiff.

132.   When Defendant Ferrigno shot at Plaintiff, Defendant Giancursio was not present at the scene.

133.   When Defendant Ferrigno shot at Plaintiff, Defendant Giancursio could not see Plaintiff.

134.   When Defendant Ferrigno shot at Plaintiff, Defendant Giancursio could not have seen whether or not Plaintiff was holding anything in his hand,

135.    At no time did Defendant Giancursio observe Plaintiff holding a gun or weapon in his hand.

136.   There are no witnesses who saw Plaintiff with a gun or weapon in his hand.

137.   Following the shooting of Plaintiff, Defendant Ferrigno's call to dispatch advising that shots were fired prompted other City of Rochester police officers to respond to the scene at 9 Immel Street in Rochester, New York.

***The Mystery Sturm Ruger P85 9 mm Handgun Is Discovered***

20

138.     After Plaintiff was shot, handcuffed from behind and dragged further into the back yard, multiple "John Doe" Defendant Rochester Police Department officers arrived on scene and rushed into the back yard of 5-7 and 9 Immel Street in Rochester, New York (hereinafter "The Scene").

139.     Prior to the numerous "John Doe" Defendant Rochester Police Department officers arriving at The Scene, there was no gun or other weapon present on the ground in the vicinity of The Scene.

140.     When Rochester Police Department officers responded to The Scene, a Sturm Ruger P85 9 mm handgun (hereinafter "Ruger Handgun") was allegedly found on the ground in the back yard area of 5-7 and/or 9 Immel Street.

141.     After the Ruger Handgun was allegedly found, it was marked and taken into evidence by the Rochester Police Department.

142.     Upon information and belief, the Rochester Police Department did not follow good and accepted police evidence collection protocols when the Ruger Handgun was marked and taken into evidence.

143.     Upon information and belief, the Rochester Police Department did not follow its internal evidence collection policies, rules and/or protocols when the Ruger Handgun was marked and taken into evidence.

144.     The Ruger Handgun allegedly recovered in the back yard area did not belong to Plaintiff.

145.     At no time did Plaintiff ever possess the Ruger Handgun allegedly recovered in the back yard area.

146.     At no time did Plaintiff ever touch and/or hold the Ruger Handgun

allegedly recovered in the back yard area.

147.    Plaintiff's DNA and fingerprints were not on the Ruger Handgun.

148.    Upon information and belief, the Rochester Police Department recovered four (4) shell casings on the ground in the back yard from Defendant Ferrigno's police issued Glock .45 caliber hand gun.

149.    Upon information and belief, the Rochester Police Department did not follow good and accepted police evidence collection protocols when the four (4) shell casings from Defendant Ferrigno's police issued hand gun were found and collected.

150.    Upon information and belief, the Rochester Police Department did not follow its internal evidence collection policies, rules and/or protocols when the four (4) shell casings from Defendant Ferrigno's police issued hand gun were found and collected.

151.    Upon information and belief, the four (4) shell casings from Defendant Ferrigno's police issued hand gun were moved from the driveway area and into the back yard.

152.    Besides a spent bullet casing found inside the chamber of the Ruger Handgun, the Rochester Police Department did not recover any discharged bullets or other casings from the Ruger Handgun.

153.    When the Rochester Police Department allegedly recovered the Ruger Handgun in the back yard, it had an empty magazine.

154.    When the Rochester Police Department allegedly recovered the Ruger Handgun in the back yard, it was not in "lock back" position.

155.    When the Rochester Police Department allegedly recovered the Ruger

Handgun in the back yard, there was no objective evidence that it had recently been fired.

156. After Plaintiff was shot three (3) times, handcuffed, searched, seized and dragged further into the back yard, he was taken into police custody by Defendants Ferrigno, Giancursio, Muscato and the Rochester Police Department.

157. Before Plaintiff was loaded into an ambulance, he heard Defendant Ferrigno accuse him of firing a gun at him.

158. When Plaintiff was loaded into the ambulance, he knew Defendant Ferrigno had accused him of firing a gun at him so Plaintiff specifically requested that "John Doe" Defendant Rochester Police officers and Defendant Christopher Muscato check his hands for gun powder residue.

159. The "John Doe" Defendant Rochester Police officers and Defendant Christopher Muscato refused Plaintiff's request to check his hands for gun powder residue.

160. At no time was Plaintiff's person or his clothing tested for gunshot residue.

161. At no time did Plaintiff's person or clothing contain gunshot residue.

162. Plaintiff was thereafter transported to Strong Memorial Hospital in critical condition due to his gunshot wounds.

**Plaintiff Is Admitted to Strong Memorial Hospital**

163. After Plaintiff arrived and was admitted to Strong Memorial Hospital, he again made requests to "John Doe" Defendant Rochester police officers, specifically Defendant Christopher Muscato, to check his hands for gun powder residue since he

knew Defendant Ferrigno falsely accused him of firing a gun at him but these requests were again denied.

164.    While intubated and unable to speak, Plaintiff made a written request to Defendant Christopher Muscato to check his hands for gun powder residue but Defendant Christopher Muscato refused and told Plaintiff to stop writing questions.

165.    After Plaintiff was admitted at Strong Memorial Hospital, he underwent emergency surgery and medical treatment for his gunshot wounds and other injuries.

166.    For the duration of Plaintiff's admission at Strong Memorial Hospital, Plaintiff remained under arrest and in the custody of the Rochester Police Department.

167.    Upon information and belief, Plaintiff suffered gunshot wounds to the left buttock, lower back, right medial and lateral thigh areas, a moderate sized left hemopneumothorax requiring placement of chest tubes, a severely comminuted left posterior 10th rib fracture with bony fragments, comminuted fractures of the lateral sixth and seventh ribs, multiple contusions, a fracture of the posterior wall and column of the left acetabulum with extensive comminution, 1.3 cm pseudo aneurysm of the right superficial femoral artery, bullet fragment lodged in the left pelvic sidewall just distal to the branching of the main portion of the left iliac artery together with other physical and psychological injuries.

168.    When Plaintiff was admitted at Strong Memorial Hospital, Plaintiff was Intubated, placed and remained on a ventilator until he was weaned off of it on April 4, 2016 at 8:55 a.m.

169.    Within three (3) hours after Plaintiff was taken off the ventilator, on April 4,

2016 at approximately 11:50 a.m., investigators from the Rochester Police Department began interrogating Plaintiff and tried to coerce a false confession from Plaintiff while he was under the influence of medications and after Plaintiff had requested an attorney.

170.    On April 13, 2017, in the Monroe County Court criminal *proceeding The People of the State of New York v. Silvon S. Simmons*, Indict. No. 2016-0404, Honorable Sam L. Valleriani determined that hospital interrogation statements of Plaintiff were inadmissible at trial since Plaintiff unequivocally invoked his right to counsel while in police custody and the police were prohibited from questioning him without first obtaining a waiver of his right to counsel in the presence of an attorney.

171.    On April 5, 2016, Plaintiff was arraigned at Strong Memorial Hospital by Honorable Melchor Castro on criminal charges for Attempted Aggravated Murder in violation of New York Penal Law §110.00/125.26(1)(a)(i), Attempted Aggravated Assault on a Police Officer in violation of New York Penal Law §110.00/120.11 and two (2) counts of Criminal Possession of a Weapon in the Second Degree in violation of New York Penal Law §§265.03(1)(b) and 265.03(3).

172.    The foregoing criminal charges against Plaintiff were based on the Defendants' false accusations that Plaintiff possessed and fired a 9 mm Ruger Handgun at Defendant Ferrigno on April 1, 2016.

173.    Upon information and belief, the accusatory informations/complaints which were filed by Defendants Ferrigno, Giancursio and other Rochester Police Department officers contained false and fabricated allegations in an effort to justify the criminal charges against Plaintiff and to assure their own exonerations from any wrongdoing.

174.    Defendant Joseph M. Ferrigno, II did not sign a supporting deposition or

subject resistance report until April 6, 2016, five (5) days after he shot Plaintiff three (3) times from behind.

175.    Upon information and belief, Defendant Ferrigno conspired with the other Defendants, including Rochester Police Department Chief, Defendant Michael L. Ciminelli, to concoct a fabricated account of the events occurring the evening of April 1, 2016 and his interaction with Plaintiff.

176.    Upon information and belief, Defendant Ferrigno conspired with the other Defendants, including Rochester Police Department Chief, Defendant Michael L. Ciminelli, to concoct a fabricated account of the reasons he allegedly shot Plaintiff.

177.     Plaintiff was discharged from Strong Memorial Hospital on April 11, 2016 and immediately transferred to the Monroe County Jail where he remained incarcerated until his criminal trial ended on October 26, 2017.

***Evidence Analyzed By The Monroe County Crime Lab***

178.    A DNA profile was obtained from the recovered Ruger Handgun and analyzed by the Monroe County Crime Lab.

179.    Plaintiff voluntarily gave a DNA swab to be compared to the DNA profile obtained from the Ruger Handgun.

180.    Plaintiff was excluded as a possible contributor to the major component of the DNA mixture obtained from the Ruger Handgun.

181.    Plaintiff's fingerprints and DNA were not detected on any part of the Ruger Handgun.

182.    No human DNA was detected and no DNA profile was obtained from the casing and magazine of the Ruger Handgun.

183.   The Ruger Handgun was tested at the Monroe County Crime Lab and it was determined to be a properly functioning firearm.

184.   When the Ruger Handgun was tested and fired multiple times by the Monroe County Crime Lab, all bullet casings properly discharged from the gun.

185.   When the Ruger Handgun was tested and fired multiple times by the Monroe County Crime Lab, the slide of the gun properly went into the "lock back" position like it was supposed to when the last bullet in the magazine was fired.

186.   During Plaintiff's criminal trial, Eric Freemesser from the Monroe County Crime Lab testified that he expected to see the recovered Ruger Handgun with the slide locked back since the magazine was empty when said gun was discovered.

187.   Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that the Ruger Handgun properly ejected all bullet casings when he fired said gun five (5) times without malfunction.

188.   Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that it is possible to fire a bullet, take the bullet casing from the ground and put it back into the gun and close it up.

189.   Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that he fired the Ruger Handgun in a controlled environment in his lab and there were no malfunctions and the Ruger Handgun worked the way it was designed to.

190.  Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that there are labs more expansive than Monroe County's Crime Lab that can take a swab of a person's hand and determine whether or not gun powder residue is detected on the person's hand.

191.    Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that no swab was ever taken from Plaintiff's hand to determine whether or not gun powder residue was present on his hand.

192.    Mr. Freemesser testified at Plaintiff's criminal trial that he did not receive a swab for gun powder residue testing but this could have been done in Plaintiff's case.

193.    Eric Freemesser from the Monroe County Crime Lab testified at Plaintiff's criminal trial that he regularly tests clothing for gun powder residue, that he could have tested the arm of Plaintiff's blue sweatshirt for gun powder residue but this was not done and was not requested.

194.    Eric Freemesser from the Monroe County Crime Law testified at Plaintiff's criminal trial that he could have tested blood and gun powder residue around the bullet hole in the back of Plaintiff's blue sweatshirt to determine how far away Defendant Ferrigno was when he shot Plaintiff but this was not done and was not requested.

195.    Upon information and belief, the Rochester Police Department never gave the Monroe County Crime Lab Plaintiff's blue sweatshirt for gun powder residue testing.

### Shotspotter Audio/Report Evidence

196.    Upon information and belief, Shotspotter is an acoustics gunshot detection and location system with sensors set in undisclosed geographic locations of the City of Rochester to detect and pinpoint locations where gunshot or gunfire activity occurs.

197.    When gunshot or gunfire activity is detected, Shotspotter reports to the police 911 center to dispatch a patrol car.

198.    Upon information and belief, customers pay Shotspotter to provide rapid

notification that gunfire has occurred within their jurisdiction and to give them an accurate location to respond to.

199.    There are 101 cities which subscribe to Shotspotter worldwide, 97 within the United States.

200.    Defendant Paul C. Greene, manager of forensic services for Shotspotter (hereinafter "Mr. Greene"), testified at Plaintiff's criminal trial that customers who subscribe to Shotspotter have the ability to edit the audio data that is sent to them.

201.    Shotspotter was installed in Rochester, New York in 2006 and there are 123 sensors in Rochester, New York covering 7.2 square miles.

202.    Defendant Greene testified at Plaintiff's criminal trial that it takes four (4) sensors to participate in detecting and locating a single shot.

203.    Defendant Greene testified at Plaintiff's criminal trial that all Shotspotter data is physically saved in an internet cloud.

204.    Defendant Greene testified that during the post-incident processing of a gunshot incident detected by Shotspotter sensors, Defendant Greene has the ability to alter the audio file himself.

205.    Defendant Greene was retained by the Monroe County District Attorney's Office and testified at Plaintiff's criminal trial in October 2017 on behalf of the prosecution.

206.    Upon information and belief, Defendant Greene was paid a substantial sum of money by the Monroe County District Attorney's Office and/or City of Rochester to testify at Plaintiff's criminal trial on behalf of the prosecution.

207.    Defendant Greene testified during Plaintiff's criminal trial that the audio

data from each Shotspotter sensor is saved indefinitely and never deleted.

208.   Upon information and belief, Shotspotter's reliability and accuracy is questionable with an alleged accuracy rate of only 80% within a 25 meter range from the shooting.

209.   Shotspotter's guarantee of accuracy was invented by the company's sales and marketing team.

210.   According to Shotspotter, in one out of five times, the Shotspotter system is not accurate.

211.   Upon information and belief, Defendant Greene testified previously in a criminal case in Monroe County Court concerning Shotspotter evidence but his testimony was stricken by the Court since Defendant Greene could not render his opinion within a reasonable degree of scientific certainty.

212.   Defendant Greene acknowledged at Plaintiff's criminal trial that Shotspotter allows a margin of error because the technology simply cannot detect everything and cannot detect everything accurately.

213.   Shotspotter's reliability and accuracy is also questionable since intervening factors, such as buildings, hills, valleys, foliage, trees, leaves, bushes, traffic and construction noise and other extraneous noise impacts Shotspotter's ability to collect data, correctly locate it and identify whether or not a "hit" was actually a gunshot or not.

214.   The technological limitations of the Shotspotter sensors make it impossible to determine within a reasonable degree of scientific certainty whether or not a "hit" was actually a gunshot.

215.    The technological limitations of the Shotspotter sensors make it impossible to determine within a reasonable degree of scientific certainty the exact location of a "hit" detected by the sensors and whether or not the "hit" was actually a gunshot.

216.    Defendant Greene acknowledged at Plaintiff's criminal trial that in the case of Johnny Blackshell (Boys and Girls Club Shooting Incident), he authored an initial report of the shooting incident detailing that the Shotspotter technology detected only four (4) rounds of gunfire.

217.    Defendant Greene testified at the Plaintiff's criminal trial that objective evidence later proved, after he had drafted his report, that there were actually 29 rounds of gunfire in the Johnny Blackshell shooting incident.

218.    Defendant Greene acknowledged at Plaintiff's criminal trial that the initial report located gunfire in the Boys and Girls Club shooting a mile and a half away from the Boys and Girls Club.

219.    Defendant Greene acknowledged during Plaintiff's criminal trial that the Rochester Police Department contacted Shotspotter after its initial report that only three (3) shots had been fired and requested that Shotspottter look for more shots.

220.    Defendant Greene acknowledged during Plaintiff's criminal trial that Shotspotter changed its initial report regarding the number of rounds of gun shot fired during the Boys and Girls Club incident from three (3) to four (4) as a result of the Rochester Police Department contacting Shotspotter and requesting that Shotspotter look for more shots.

221.    Upon information and belief, on April 1, 2016 at approximately 9:00 p.m.,

31

the Shotspotter system was on but it was in the "squelch mode" and did not alert the

Rochester Police Department or the 911 call center that there had been a shooting in

the vicinity of 9 Immel Street in Rochester, New York.

222.    Upon information and belief, on April 1, 2016 shortly after the incident

alleged herein, Defendant Robert Wetzel from the Rochester Police Department

informed Shotspotter in an email correspondence that the Rochester Police Department

had an officer involved shooting in the area of 10 Immel Street and approximately 3 to 5

rounds were fired.

223.    Defendant Wetzel acknowledged during his trial testimony at Plaintiff's

criminal trial that Shotspotter did not publish an incident or an alert they believed was

gunfire in this case.

224.    Defendant Wetzel acknowledged during his trial testimony at Plaintiff's

criminal trial that he provided a lot of information to Shotspotter including location, time,

number of possible shots and the caliber of the weapons allegedly fired during the

incident.

225.    Defendant Wetzel was selected by the Rochester Police Department in

April 2014 to go to Shotspotter headquarters in Newark, California to go through a one-

week training program where he became a "super user" as identified by the company to

be the liaison for the department and to train other police officers and investigators.

226.    When Defendant Mark Wiater was a lieutenant in the Central

Investigations Division of the Rochester Police Department, he oversaw the Shotspotter

program for two (2) years.

227.    Shotspotter generated a Detailed Forensic Report dated April 7, 2016

which noted that on April 1, 2016 at 9:09:38 p.m., "4 rounds" were detected, the incident was "auto acknowledged and not alerted because squelch mode was enabled at time of detection".

228.   The Shotspotter Detailed Forensic Report dated April 7, 2016 noted that on April 2, 2016 at 12:55:57 a.m., the incident was "Reclassified to Multiple Gunshots from helicopter, Reason: per customer. OIS" (officer involved shooting), and the "Number of rounds updated from 3 to 4".

229.   Shotspotter was only alerted to the April 1, 2016 incident as a result of being alerted by the Rochester Police Department.

230.   Shotspotter only changed its Detailed Forensic Report after being requested to do so by officers of the Rochester Police Department.

231.   Shotspotter only changed its Detailed Forensic Report after receiving information regarding the incident from officers of the Rochester Police Department.

232.   According to the Shotspotter Detailed forensic Report dated April 7, 2016, on April 2, 2016 at 12:55 a.m., Shotspotter Review Operator R. Bresler noted that the incident involving Plaintiff was reclassified to multiple gunshots from helicopter and changed the number of rounds fired from three (3) to four (4).

233.   Defendant Mark Wiater acknowledged at Plaintiff's criminal trial that he went to the scene on April 1, 2016 at approximately 9:15 p.m., that he left the scene after midnight, returned back to the fourth floor at the Central Investigations Division of the Rochester Police Department, logged onto a computer and opened a chat session with Shotspotter.

234.   Defendant Mark Wiater acknowledged during his trial testimony that on

33

April 2, 2016 at between approximately 12:30 a.m. and 1:00 a.m., he requested Shotspotter to look into the incident, by opening a larger window of time to see if they detected any other gunfire.

235.    Defendant Mark Wiater acknowledged during his trial testimony at Plaintiff's criminal trial that Shotspotter initially detected four (4) shots and he wanted them to open up a larger window and check to see if there were any other gunfire that may have been detected.

236.    Defendant Greene acknowledged that he reviewed customer support chat emails, marked as Defendant's Exhibit CC at Plaintiff's criminal trial, which indicated somebody from the Rochester Police Department contacted Shotspotter at 9:05 p.m. Pacific Standard Time and during this chat session, the Rochester Police Department notified Shotspotter that there was an officer involved shooting at 9:09 p.m. Eastern Standard Time, asked Shotspotter to try to find additional shots and Shotspotter immediately reclassified the incident as multiple gunshots.

237.    Defendant Greene acknowledged during his trial testimony that when he listened to the audio that was presented to the dispatcher, he could hear the sound of four (4) gunshots and subsequently he was asked by the Rochester Police Department to essentially search and see if there were more shots fired than Shotspotter picked up.

238.    Defendant Greene acknowledged during his testimony at Plaintiff's criminal trial that it was the technician who upgraded it from three (3) rounds to four (4) rounds and who reclassified it to gunshots from helicopter.

239.    Defendant Greene acknowledged during his trial testimony at Plaintiff's

criminal trial that the system detected the incident that it classified as a helicopter, then it changed it to multiple gun shots after speaking with their customer (Rochester Police Department).

240.   Defendant Wetzel acknowledged during his trial testimony at Plaintiff's criminal trial that later that day on April 2, 2016, Shotspotter responded to him that they did find a fifth gunshot after his request.

241.   Shotspotter issued a Detailed Forensic Report on April 7, 2016 which gave the times for the discharge of five (5) rounds with the first shot at 9:09:35 p.m. and the fifth shot at 9:09:38 p.m. which falsely implicated Plaintiff as shooting one of the rounds.

242.   The detailed Forensic Report of Shotspotter indicated that Shotspotter detected a Multiple Gunshot incident at 9 Immel Street at 9:09:38 p.m. and after review, the location and times of five (5) rounds fired were calculated.

243.   The Shotspotter Detailed Forensic Report notes "Acoustical data analysis of a gunfire incident is complex and not comprehensive. The conclusions above should be corroborated with other evidentiary sources such as recovered shell casings, and witness statements".

244.   Defendant Paul C. Grene certified and acknowledged that his report was true and accurate and he even attended Plaintiff's criminal trial to testify in favor of the prosecution.

245.   Defendant Paul C. Greene acknowledged during Plaintiff's criminal trial that there is no way to go and look at the original file that was recorded and there is no way to listen to all the audio from that day.

246.    Upon information and belief, Shotspotter audio and other evidence from the evening of April 1, 2016 was lost and/or destroyed.

247.    Defendant Greene acknowledged at Plaintiff's criminal trial that employees of Shotspotter and law enforcement customers with an audio editor can alter any audio file that's not been locked or encrypted.

248.    Upon information and belief, Defendants Shotspotter, Inc. and/or SST, Inc. lost, deleted and/or destroyed the spool containing sounds and/or other information pertaining to the officer involved shooting which occurred on April 1, 2016 at 9:09 p.m. at 9 Immel Street in Rochester, New York.

249.    Upon information and belief, Defendant City of Rochester, Defendant officers and/or the Rochester Police Department lost, deleted and/or destroyed the spool and/or other information containing sounds pertaining to the officer involved shooting which occurred on April 1, 2016 at approximately 9:09 p.m. at 9 Immel Street in Rochester, New York.

**Outcome of Plaintiff's Criminal Trial**

*250.*    Plaintiff's criminal trial began on October 2, 2017 and ended with a jury verdict on October 26, 2017.

251.    The jury acquitted Plaintiff of Attempted Aggravated Murder, New York Penal Law §110.00/125.26(1)(a)(i), Attempted Aggravated Assault on a Police Officer, New York Penal Law §110.00/120.11 and Criminal Possession of a Weapon in the Second Degree, New York Penal Law §265.03(1)(b).

252.    By acquitting Plaintiff of Criminal Possession of a Weapon in the Second

Degree, New York Penal Law §265.03(1)(b), the jury determined that there was insufficient proof that Plaintiff possessed a loaded firearm with the intent to use the same unlawfully against another.

253.    The jury, however, convicted Plaintiff of Criminal Possession of a Weapon in the Second Degree in violation of New York Penal Law §265.03(3).

254.    The jury's conviction of Plaintiff for Criminal Possession of a Weapon in the Second Degree, New York Penal Law §265.03(3), was based upon the testimony of Defendant Greene that five (5) shots were fired and the Shotspotter audio and Detailed Forensic Reports that were offered and received into evidence.

255.    Immediately following the jury's verdict on October 26, 2017, Honorable Christopher Ciaccio, Monroe County Court Judge, released Plaintiff from prison on his own recognizance pending sentencing.

256.    During Plaintiff's criminal sentencing hearing on January 11, 2018, Honorable Christopher Ciaccio, Monroe County Court Judge, reversed and set aside the jury's weapon conviction and ordered a new trial but precluded Shotspotter evidence as unreliable scientific evidence.

257.    On May 31, 2018, Plaintiff's jury trial was scheduled to commence on the remaining charge of Criminal Possession of a Weapon in the Second Degree in violation of New York Penal Law §265.03(3).

258.    On May 31, 2018, before jury selection took place, the Court asked the prosecution how they wished to proceed.

259.   The prosecution indicated that based on the Court's prior ruling precluding

Shotspotter evidence, the prosecution cannot establish that the firearm was loaded at the time it was allegedly possessed by Plaintiff.

260.    Plaintiff's defense counsel moved to dismiss the indictment pursuant to CPL §210.20 and the Court granted this motion dismissing the indictment and terminating the criminal proceeding in Plaintiff's favor.

**Plaintiff's Injuries and Damages**

261.    Based on the foregoing, Plaintiff took no actions to justify his arrest, search and seizure, imprisonment and use of excessive and deadly force upon his person.

262.    As a result of the aforedescribed incident and the use of unlawful, unreasonable, excessive and deadly force upon Plaintiff by Defendants, Plaintiff suffered multiple contusions and gunshot wounds and other physical and psychological injuries. The full nature and extent of Plaintiff's injuries is unknown at this time.

263.    Upon information and belief, Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 were never reprimanded, suspended or terminated from their employment by Defendant Ciminelli or Defendant City of Rochester following the aforedescribed incident and upon information and belief, said officers remain employed as City of Rochester Police officers.

264.    Upon information and belief, despite over 20 prior citizen complaints made against him, many for use of excessive force, Defendant Ferrigno has recently been promoted to serve on the Professional Standards Section, the internal affairs department of the City of Rochester Police Department.

265.    Upon information and belief, Defendants Ferrigno, Giancursio, Wiater,

38

Muscato, Wetzel and John Does 1-20 had inadequate training and supervision regarding arrests, searches and seizures, reasonable use of force on citizens, securing and preserving evidence and intervening when constitutional deprivations occur which led to the constitutional and New York State law violations in this case.

266.   Based on the foregoing, Defendants City of Rochester and Ciminelli failed to adequately train and supervise Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20.

267.   Defendants City of Rochester and Ciminelli's failure to properly train, supervise, reprimand, suspend and/or terminate their subordinates, including but not limited to Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 amounts to a deliberate indifference to the rights of those with whom City of Rochester employees and officers will come into contact, including Plaintiff.

268.   Defendants Ciminelli and City of Rochester were aware or should have been aware that their officers, including Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 require special training, procedures, policies and customs to be used so as to not infringe upon the legal and constitutional rights of City of Rochester citizens, including Plaintiff. The failure to promulgate and implement such procedures, policies or customs led to the violation of Plaintiff's legal and constitutional rights.

269.   The foregoing actions taken or decisions made by City of Rochester government officials responsible for establishing municipal policies caused the alleged violations of Plaintiff's civil rights.

270.   The policies and practices of the City of Rochester in authorizing its police

officers to use excessive and/or deadly force, to fabricate, alter and/or destroy evidence, to cover up such violations and maliciously prosecute innocent citizens is so persistent and widespread that it constitutes a custom or usage and implies the actual or constructive knowledge of City of Rochester policy-making officials.

271.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff was subjected to unlawful excessive and deadly force when he was shot three times from behind, was severely injured, falsely arrested and imprisoned from April 1, 2016 through October 26, 2017 while he was maliciously prosecuted by Defendants.

272.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered and continues to suffer serious physical and mental injuries, pain and suffering and other damages in an amount that will be established at trial.

273.    Plaintiff is entitled to compensation for the constitutional harms and State law violations that Defendants inflicted upon him.


**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF 42 U.S.C. SECTION 1983 BY DEFENDANTS JOSEPH M. FERRIGNO, II AND SAMUEL GIANCURSIO FOR FALSE ARREST**

274.    The Plaintiff repeats and realleges the allegations in paragraphs 1 through 273 above and incorporates them by reference as if set forth in their entirety herein.

275.    Defendants Ferrigno and Giancursio detained, handcuffed and arrested

Plaintiff and illegally searched and seized his person without probable cause or reasonable suspicion that a crime has been or was being committed in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

*276.* On April 13, 2017, in the Monroe County Court criminal proceeding *The People of the State of New York v. Silvon S. Simmons*, Indict. No. 2016-0404, Honorable Sam L. Valleriani determined that Defendant Ferrigno did not have reasonable suspicion that Plaintiff had committed or was about to commit a crime to warrant the pursuit of Plaintiff.

277. Plaintiff's arrest was made in the absence of a warrant for his arrest.

278. Defendants Ferrigno and Giancursio arrested Plaintiff without having exigent circumstances for doing so.

279. Plaintiff was conscious of and did not consent to his arrest.

280. By the actions described herein, Defendants, without a warrant or without probable cause and while acting under color of law, arrested Plaintiff and deprived him of certain constitutionally protected rights to be free from unreasonable searches and seizures, the right not to be deprived of liberty without due process of law and the right to be free from false arrest and imprisonment, all in violation of 42 U.S.C. Section 1983 and his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

281. Defendants Ferrigno and Giancursio were acting under color of state law when they, without probable cause or reasonable suspicion that a crime has been or was being committed, exercised their authority as police officers when the falsely arrested, searched, seized and imprisoned Plaintiff who was at all times acting in a

lawful manner.

282.    Defendants' false arrest, illegal search, seizure and imprisonment of Plaintiff was pursuant to municipal policy or custom of Defendant City of Rochester and part of customary practices of the City of Rochester Police Department.

283.    As a direct and proximate cause of the false arrest, illegal search, seizure and false imprisonment of Plaintiff by Defendants Ferrigno and Giancursio, Plaintiff suffered deprivation of his freedom, serious physical and mental injuries and other damages in an amount that will be established at trial.

284.    As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

285.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

286.    Defendants Ferrigno's and Giancursio's conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**COUNT II**

**VIOLATION OF 42 U.S.C. SECTION 1983 BY JOSEPH M. FERRIGNO, II AND SAMUEL GIANCURSIO FOR USE OF EXCESSIVE AND/OR DEADLY FORCE AGAINST PLAINTIFF**

287.    The Plaintiff repeats and realleges the allegations in paragraphs 1 through 286 above and incorporates them by reference as if set forth in their entirety herein.

288.    Based upon the aforedescribed conduct, Defendants illegally used excessive and/or deadly force under the circumstances against Plaintiff in violation of his Fourth Amendment right to be secure in his person from unreasonable seizures.

289.    Defendants' conduct under the circumstances was an excessive and/or deadly use of force on Plaintiff which a reasonable officer in their position would not have used under the circumstances.

290.    Defendants' actions and use of force against Plaintiff were objectively unreasonable in light of the facts and circumstances confronting them and violated the Fourth Amendment rights of Plaintiff.

291.    Defendants Ferrigno and Giancursio unlawfully seized Plaintiff by means of objectively unreasonable, excessive and deadly force thereby unreasonably restraining Plaintiff of his freedom.

292.    Defendant Ferrigno's use of force against Plaintiff constituted deadly force in that it could have caused death and did cause serious bodily injury to Plaintiff.

293.    Defendants Ferrigno and Giancursio intentionally deprived Plaintiff of his constitutional rights and caused him damages.

294.    Defendants Ferrigno's and Giancursio's use of excessive and/or deadly

force against Plaintiff alleged herein and the violation of Plaintiff's Fourth Amendment rights was pursuant to municipal policy or custom of Defendant City of Rochester and part of customary practices of the City of Rochester Police Department.

295.   As a direct and proximate cause of the excessive and/or deadly use of force by Defendants Ferrigno and Giancursio, Plaintiff suffered and continues to suffer serious physical and mental injuries and other damages and losses in an amount that will be established at trial.

296.   As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

297.   As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

298.   Defendants Ferrigno's and Giancursio's conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## COUNT III

### VIOLATION OF 42 U.S.C. 1983 BY ALL DEFENDANTS FOR CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS

299.   The Plaintiff repeats and realleges the allegations in paragraphs 1 through 298 above and incorporates them by reference as if set forth in their entirety

herein.

300.     By and through the actions described in paragraphs 1 through 299 above, Defendants, acting under color of state law, conspired to deprive Plaintiff of his constitutional rights, in violation of 42 U.S.C Section 1983 and his Fourth and Fourteenth Amendment rights as guaranteed by the United States Constitution.

301.     Defendants Ferrigno and Giancursio conspired amongst themselves to unlawfully search, seize, arrest and imprison Plaintiff and to falsely accuse Plaintiff of possessing and shooting a gun at Defendant Ferrigno which resulted in Plaintiff's arrest, incarceration, prosecution and secured Defendant Ferrigno's and Giancursio's exoneration for use of unlawful excessive and/or deadly force against Plaintiff.

302.     Defendants Ferrigno and Giancursio agreed to deprive Plaintiff of his constitutional rights and deprived him of his constitutional rights by falsely arresting him, falsely accusing him of possessing and firing the Ruger Handgun at Defendant Ferrigno, by unlawfully searching, seizing, arresting, imprisoning and prosecuting him thus causing Plaintiff's incarceration and deprivation of his freedom, serious physical and mental injuries and damages in an amount that will be established at trial.

303.     Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, Ciminelli, John Does 1-20 and City of Rochester conspired and agreed to concoct a story that on the evening of April 1, 2016, Defendants Ferrigno and Giancursio were actively and aggressively pursuing a menacing suspect named Ivory Golden, who drove a gray or tan Chevy Impala and that they thought Plaintiff was said suspect, to justify the pursuit, arrest and use of force against Plaintiff.

304.     Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, Ciminelli, John

Does 1-20 and City of Rochester conspired and agreed to falsely accuse Plaintiff of possessing and firing a gun at Defendant Ferrigno, by fabricating and falsifying evidence which they then forwarded to the Monroe County District Attorney's Office to cause Plaintiff to be wrongfully imprisoned and prosecuted for felony crimes.

305.   Defendants Ferrigno, Giancursio and John Does 1-20 conspired to stage the alleged crime scene by relocating Defendant Ferrrigno's fired gun shell casings from the driveway to the back yard, by dragging Plaintiff's body further into the back yard and by otherwise tampering with and/or planting incriminating evidence at the alleged crime scene.

306.   Defendants Ferrigno and Giancursio conspired to falsely accuse Plaintiff of possessing and firing a gun at Defendant Ferrigno and staged the alleged crime scene so that justification to charge Plaintiff with committing felony crimes would be created.

307.   Based on the foregoing allegations, all Defendants conspired to falsely create additional gun shots on Shotspotter audio and/or reports, to fabricate and falsify evidence which they forwarded to prosecutors and participated in the prosecution against Plaintiff to cause Plaintiff to be wrongfully charged, imprisoned and prosecuted for crimes which he did not commit and to secure the exoneration of Defendant Ferrigno for using excessive and deadly force against Plaintiff.

308.   The Defendants herein acted in concert to inflict unconstitutional injury on Plaintiff and their overt acts were done in furtherance of that goal which has caused damages to Plaintiff which will be established at trial.

309.   Defendants' conspiracy to violate the civil rights of Plaintiff was pursuant

to municipal policy or custom of Defendant City of Rochester and part of customary

practices of the City of Rochester Police Department.

310.   As a direct and proximate cause of the Defendants' conspiracy to violate

Plaintiff's civil rights, Plaintiff suffered serious physical and mental injuries, was falsely

arrested, searched, seized, imprisoned, maliciously prosecuted, denied a fair trial and

suffered damages in an amount that will be established at trial.

311.   As a direct and proximate result of Defendants' violations of Plaintiff's

constitutional rights, Plaintiff has suffered general and special damages to be proved at

trial and is entitled to relief under 42 U.S.C. Section 1983.

312.   As a direct and proximate result of the Defendants' conduct, Plaintiff has

been compelled to retain the services of counsel to protect and enforce his rights and

therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and

costs for which Plaintiff is entitled to reimbursement in an amount to be established at

the time of trial pursuant to 42 U.S.C. Section 1988.

313.   Defendants' conduct was willful, malicious, oppressive and/or reckless

and was of such a nature that Plaintiff claims punitive damages against each of them in

an amount commensurate with the wrongful acts alleged herein.


**COUNT IV**

**VIOLATION OF 42 U.S.C 1983 FOR MALICIOUS PROSECUTION
AGAINST ALL DEFENDANTS**

314.   The Plaintiff repeats and realleges the allegations set forth in paragraphs

1 through 313 above and incorporates them by reference as if set forth in their entirety

herein.

315. At the time of the complained of events, Plaintiff had the constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

316. The Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from malicious prosecution without probable cause and without due process when they worked in concert to fabricate and falsify evidence and secure false charges against Plaintiff, resulting in Plaintiff's unlawful confinement and prosecution.

317. Defendants, despite knowing that probable cause did not exist to arrest and prosecute Plaintiff for Attempted Aggravated Murder, Attempted Aggravated Assault on a Police Officer and two (2) counts of Criminal Possession of a Weapon in the Second Degree, acting individually and in concert, fabricated and falsified evidence which was then forwarded to the Monroe County District Attorney's Office to cause Plaintiff to be wrongfully charged with and prosecuted for those crimes.

318. Defendants conspired and/or acted in concert to institute, procure and continue the criminal proceeding against Plaintiff without probable cause.

319. The Defendants lacked probable cause to initiate and continue the prosecution of Plaintiff which was procured by fraud, perjury and the fabrication and suppression of evidence by Defendants.

320. False and fabricated evidence was given by the Defendant Police Officers to the District Attorney's Office and the Grand Jury.

321. Defendants knew or were deliberately and recklessly indifferent to the truth that probable cause did not exist to arrest and prosecute Plaintiff since there are no witnesses who saw Plaintiff possess a handgun, there was no physical evidence

48

showing Plaintiff ever had possession of the alleged weapon or fired it, since Plaintiff

denied having a gun, since Rochester Police Department officers dragged Plaintiff's

body in the back yard and tampered with and/or planted incriminating evidence at the

alleged crime scene, since Defendants Ferrigno and Giancursio made no mention on

their calls to dispatch that Defendant Ferrigno was shot at or was concerned that he

was shot, since Defendant Muscato and other officers refused to test Plaintiff for gun

powder residue at Plaintiff's requests, since Plaintiff's sweatshirt was never submitted

by the Rochester Police Department to the Monroe County Crime Lab for gun powder

residue testing, since the recovered Ruger Handgun was not found in lock back position

like it should have been found, since the Ruger Handgun did not have Plaintiff's

fingerprints or DNA on it, since Rochester Police Department officers had to call

Defendant Shotspotter requesting they look for additional shots after three (3) and then

four (4) shots were reported, since Defendant Shotspotter added a fifth gunshot after

the request of the Rochester Police Department and since it took several days before

any reports/supporting depositions would even be created by Rochester Police

Department officers and Shotspotter.

322.   Defendants had knowledge that the charging paperwork of the Defendant

Police Officers lacked objective proof that Plaintiff committed any crime, contained

fabricated and false accounts of their reasoning for arresting Plaintiff, that their charging

paperwork incorporated these false accounts and Defendants acted individually and in

concert to create the requisite proof to initiate and continue the prosecution of Plaintiff.

323.   Defendants knew that they lacked objective facts to support reasonable or

probable cause to prosecute Plaintiff but they initiated and continued the prosecution

against Plaintiff.

324. Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene colluded with Defendant City of Rochester and its police officers when it determined that there were three (3) then four (4) gunshots fired but looked for and added an additional fifth shot upon request of their customer, the Rochester Police Department.

325. Defendant Paul C. Greene, knowing and admitting to the unreliability of Shotspotter technology at Plaintiff's criminal trial and knowing there was a lack of objective facts and proof to support reasonable or probable cause to prosecute Plaintiff, signed and certified a Detailed Forensic Report certifying that five (5) rounds were in fact fired and testified to same at Plaintiff's criminal trial even though his conclusion was based solely upon information provided to Shotspotter by the Rochester Police Department.

326. Defendant Paul C. Greene, knowing and admitting to the unreliability of Shotspotter technology at Plaintiff's criminal trial, still voluntarily testified and actively and willingly participated as an expert in the prosecution's case which lacked objective proof that Plaintiff committed the alleged crimes.

327. Defendant Paul C. Greene, knowing there was a complete lack of objective proof that Plaintiff committed any crime, conspired with officers from the Rochester Police Department, Shotspotter, Inc. and/or SST, Inc. to fabricate and create the necessary reports and audio evidence through Shotspotter and to add the requested fifth gun shot to secure Plaintiff's conviction and to exonerate Defendant Ferrigno.

328.    The Shotspotter Defendants did not use their technology for its intended purpose of providing alert notification of gunfire to the Rochester Police Department, but rather, manipulated and used their unreliable, incomplete, questionable, falsified and/or fabricated technology to provide its customer, the City of Rochester/Rochester Police Department with the requested and necessary number of gunshots to pursue felony criminal charges against Plaintiff and to secure Defendants Ferrigno and City of Rochester's exoneration for the

unlawful use of excessive and deadly force against Plaintiff.

329.    Defendants' conduct was critical to the continued prosecution of Plaintiff and they knew that their conduct would only cause Plaintiff's wrongful prosecution to continue.

330.    On October 26, 2017, the jury acquitted Plaintiff of Attempted Aggravated Murder (NY Penal Law §110.00/125.26(1)(a)(i)), Attempted Aggravated Assault on a Police Officer (NY Penal Law §110.00/120.11) and Criminal Possession of a Weapon in the Second Degree (NY Penal Law §265.03(1)(b)) but convicted Plaintiff of Criminal Possession of a Weapon in the Second Degree (NY Penal Law §265.03(3)).

331.    On January 11, 2018, Honorable Christopher Ciaccio, Monroe County Court Judge, reversed and set aside the jury's sole weapon conviction and ordered a new trial precluding Shotspotter evidence as unreliable scientific evidence.

332.    On May 31, 2018, Plaintiff's jury trial was scheduled to begin on the remaining charge of Criminal Possession of a Weapon in the Second Degree (NY Penal Law §265.03(3)) but the prosecution was unable to proceed since without the Shotspotter evidence, they could not establish the firearm was loaded at the time it was

allegedly possessed by Plaintiff.

333.    Due to the prosecutor's inability to proceed to trial, the defense moved to dismiss the indictment which was granted by the Court.

334.    The prosecution of all criminal charges against Plaintiff terminated in his favor.

335.    The malicious prosecution of Plaintiff by Defendants was done pursuant to the policy, custom, usage and/or practice of Defendant City of Rochester and/or was ratified by Defendant City of Rochester.

336.    As a direct and proximate result of the Defendants' acts and omissions, Plaintiff was deprived of his constitutional and statutory rights, was wrongfully and maliciously prosecuted, denied a fair trial, deprived of his freedom when he was imprisoned from April 1, 2016 through October 26, 2017 and has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. 1983.

337.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

338.    Defendants' conduct was willful, malicious, oppressive and/or reckless and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

**COUNT V**

**VIOLATION OF 42 U.S.C 1983 FOR DENIAL OF THE RIGHT TO A FAIR
TRIAL AGAINST ALL DEFENDANTS**

339.    The Plaintiff repeats and realleges the allegations in paragraphs 1 through
338 above and incorporates them by reference as if set forth in their entirety herein.

340.   By deliberately manufacturing false evidence against Plaintiff, including
but not limited to Shotspotter audio, Shotspotter reports, police reports containing the
Defendant Police Officers' own fabricated and falsified accounts that Plaintiff possessed
and fired a loaded firearm and had committed crimes and by forwarding that fabricated
and false evidence to the prosecutors, the Defendants caused Plaintiff to be arrested,
detained, imprisoned, charged and prosecuted in violation of Plaintiff's rights pursuant
to the Fifth, Sixth and Fourteenth Amendments to the US Constitution, to due process of
law and to a fair trial and are liable to Plaintiff under 42 USC 1983 for compensatory and
punitive damages.

341.    The deprivation of Plaintiff's right to a fair trial is based upon Defendant
City of Rochester's custom, practice and policy of being deliberately indifferent to false
arrests made by its police officers and instructing or acquiescing in Rochester Police
officers to file false charges against individuals who are insufficiently deferential during
interactions with the police and against individuals who are victims of false arrest,
excessive force and/or other police misconduct in order to justify and cover up such
violations.

342.    As a direct and proximate result of the Defendants' acts and omissions,
Plaintiff was deprived of his constitutional and statutory rights, was wrongfully and

maliciously prosecuted, deprived of a fair trial, was imprisoned from April 1, 2016

through October 26, 2017 and has suffered general and special damages to be proved

at trial and is entitled to relief under 42 U.S.C. 1983.

343.   As a direct and proximate result of the Defendants' conduct, Plaintiff has

been compelled to retain the services of counsel to protect and enforce his rights and

therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and

costs for which Plaintiff is entitled to reimbursement in an amount to be established at

the time of trial pursuant to 42 U.S.C. Section 1988.

344.   Defendants' conduct was willful, malicious, oppressive and/or reckless

and was of such a nature that Plaintiff claims punitive damages against each of them in

an amount commensurate with the wrongful acts alleged herein.


## COUNT VI

## VIOLATION OF 42 USC 1983 BY ALL DEFENDANTS FOR MALICIOUS ABUSE OF PROCESS

345.   The Plaintiff repeats and realleges the allegations in paragraphs 1

through 344 above and incorporates them by reference as if set forth in their entirety

herein.

346.   Defendants issued criminal process against Plaintiff by fabricating and

falsifying evidence and causing his arrest and prosecution in Monroe County Court with

intent to do harm without excuse or justification.

347.   Plaintiff's indictment was procured by fraud, perjury, the suppression of

evidence, fabrication and falsifying evidence or other conduct undertaken in bad faith by

Defendants.

348.    Defendants caused Plaintiff to be arrested and prosecuted in order to

obtain collateral objective outside the legitimate ends of the legal process, to wit: to

create justification for and cover up Defendant Ferrigno's false arrest and use of

unlawful and deadly force against Plaintiff, to secure Defendants Ferrigno's and City of

Rochester's exonerations for any police misconduct and constitutional rights violations

against Plaintiff relating to the incident alleged herein, to avoid accountability for the

Defendant officers' unlawful use of deadly and/or excessive force and/or other

misconduct against Plaintiff, to cover up the Defendant officers' misconduct, abuse of

authority and to retaliate against Plaintiff and thereby violated Plaintiff's right to be free

from malicious abuse of process.

349.    As a direct and proximate result of the Defendants' acts and omissions,

Plaintiff was deprived of his constitutional and statutory rights, was wrongfully and

maliciously prosecuted, deprived of a fair trial, was imprisoned from April 1, 2016

through October 26, 2017, was required to be retried on May 31, 2018 and has suffered

general and special damages to be proved at trial and is entitled to relief under 42

U.S.C. 1983.

350.    As a direct and proximate result of the Defendants' conduct, Plaintiff has

been compelled to retain the services of counsel to protect and enforce his rights and

therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and

costs for which Plaintiff is entitled to reimbursement in an amount to be established at

the time of trial pursuant to 42 U.S.C. Section 1988.

351.    Defendants' conduct was willful, malicious, oppressive and/or reckless

and was of such a nature that Plaintiff claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## COUNT VII

**VIOLATION OF 42 U.S.C 1983 BY DEFENDANTS FERRIGNO, GIANCURSIO, WIATER, MUSCATO, CIMINELLI AND JOHN DOES 1-20 FOR FAILURE TO INTERVENE TO PROTECT PLAINTIFF'S CONSTITUTIONAL RIGHTS (*Anderson v. Branen*, 17 F3d 552 (2nd Cir. 1994))**

352.    The Plaintiff repeats and realleges the allegations in paragraphs 1 through 351 above and incorporates them by reference as if set forth in their entirety herein.

353.    When certain of the Defendants illegally arrested, searched, seized, imprisoned and prosecuted Plaintiff, there was an affirmative duty on the part of the other Defendants who were present to intervene to protect the constitutional rights of Plaintiff from infringement by the other Defendant law enforcement officers.

354.    Defendant Muscato failed to intervene to protect Plaintiff's constitutional rights when he refused to check Plaintiff for gun powder residue after Plaintiff requested this twice before he was criminally charged.

355.    Defendant Ciminelli failed to intervene to protect Plaintiff's constitutional rights when knowing of Defendant Ferrigno's extensive history of past citizen complaints and his propensity to give false sworn statements, failed to intervene to independently investigate and substantiate the accusations made against Plaintiff.

356.    The Defendants herein who failed to intervene to protect Plaintiff's constitutional rights violated 42 USC Section 1983 since an infringement of Plaintiff's constitutional rights occurred within their presence, they were aware of such

infringement and failed to intervene and protect Plaintiff's constitutional rights.

357.    The Defendants herein who failed to intervene to prevent injury to Plaintiff observed, knew and/or had reason to know that unlawful excessive and deadly force was used on Plaintiff, that Plaintiff had been unjustifiably arrested, criminally charged, imprisoned, maliciously prosecuted, that Shotspotter audio and other evidence was concealed, destroyed, fabricated and/or altered at the request of the Rochester Police Department and the Defendant officers and that constitutional violations had been committed against Plaintiff by law enforcement officials.

358.    There was a realistic opportunity for Defendants Ferrigno, Giancursio, Waiter, Muscato, Wetzel, Ciminelli and John Does 1-20 to intervene to prevent the harm to Plaintiff from occurring but they failed to do so.

359.    As a direct and proximate cause of the illegal search, seizure, use of excessive and deadly force on Plaintiff, the fabrication of falsified evidence, the concealment or destruction of evidence, the malicious prosecution of and imprisonment of Plaintiff, and the failure of the Defendants herein to intervene to protect the constitutional rights of Plaintiff from infringement by the other Defendant law enforcement officers, Plaintiff suffered deprivation of his freedom, constitutional rights and suffered serious physical and mental injuries and other damages in an amount that will be established at trial.

360.    As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered general and special damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

361.    As a direct and proximate result of the Defendants' conduct, Plaintiff has

been compelled to retain the services of counsel to protect and enforce his rights and

therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and

costs for which Plaintiff is entitled to reimbursement in an amount to be established at

the time of trial pursuant to 42 U.S.C. Section 1988.

362.    The Defendants' actions and/or inaction was willful, malicious, oppressive

and/or reckless and was of such a nature that Plaintiff claims punitive damages against

each of them in an amount commensurate with the wrongful acts alleged herein.


**COUNT VIII**

**VIOLATION OF 42 U.S.C. SECTION 1983
BY DEFENDANT CITY OF ROCHESTER (FAILURE TO IMPLEMENT
POLICIES, CUSTOMS AND PRACTICES)**

363.   The Plaintiff repeats and realleges the allegations set forth in

paragraphs 1 through 362 above and incorporates them by reference as if set forth in

their entirety herein.

364.    By the actions described in paragraphs 1 through 363 above, Defendant

City of Rochester has demonstrated a policy, ordinance, custom, regulation and/or

decision of deliberate indifference to the rights of its citizens by:

a.      failing to adequately train its police officers regarding the proper methods for
        stops, arrest procedures, use of force, securing and preserving evidence
        and/or intervening to prevent constitutional rights violations from occurring by
        other police officers;

b.      failing to adequately investigate and acknowledge excessive force and police
        misconduct complaints of citizens whose constitutional rights are violated;

c.      failing to independently investigate all excessive force and police misconduct complaints of citizens which are brought to its attention;

d.      failing to refer all excessive force complaints of citizens to the Civilian Review Board for review;

e.      allowing the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;

f.      failing to administer the internal review process of excessive/deadly force and/or police misconduct cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;

g.      promoting and tolerating a custom and policy in which officers violate the constitutional rights of citizens through unlawful stops, searches, seizures, excessive and/or deadly force, imprisonment, malicious prosecutions and/or failing to intervene to prevent such violations;

h.      failing to suspend, terminate or take disciplinary action against officers who violate rights of citizens through unlawful stops, searches and seizures, excessive and/or deadly force, imprisonment, malicious prosecutions and/or failing to intervene to prevent such violations;

i.      failing to adequately train and supervise officers who are prone to commit unlawful stops, searches and seizures, use of excessive and/or deadly force, malicious prosecutions and/or failure to intervene to prevent such constitutional rights violations; and

j.      failing to investigate, acknowledge and discipline but rather, instructing or acquiescing in Rochester Police officers' filing of false charges against individuals who are insufficiently deferential during interactions with the police and against individuals who are victims of false arrest, excessive force and/or other police misconduct in order to justify and cover up such violations.

365.    The actions of Defendant City of Rochester were taken under color of law, constitute an official policy or custom of the City of Rochester, deprived Plaintiff of a constitutional or statutory right and caused injuries and damages to his person in an amount to be determined at the trial of this action.

366.    The deficiencies described in paragraph 364 above are practices so consistent and widespread and constitute customs or usages of which City of Rochester supervising policy-makers were aware of and which cause deprivation of constitutional rights of citizens, including Plaintiff.

367.    The failure of policymakers of Defendant City of Rochester to provide adequate training and/or supervision to its police chief and police officers amounts to deliberate indifference to the rights of those who come into contact with its police officers. This is demonstrated by repeated complaints of civil rights violations against Defendant City of Rochester, no meaningful attempt to investigate or to forestall further incidents and the City of Rochester's policy makers' acquiescence in such long-standing practice/s.

368.    As a direct and proximate cause of Defendant City of Rochester's policy, ordinance, custom, regulation and/or decision or usage of deliberate indifference, Plaintiff suffered violations of his rights as secured under the Fourth Amendment to the United States Constitution to be free from unlawful arrest, imprisonment, malicious prosecution, search and seizure and the use of excessive and deadly force.

369.    As a direct and proximate cause of Defendant City of Rochester's policy, ordinance, custom, regulation and/or decision or usage of deliberate indifference, Plaintiff suffered deprivation of his freedom and constitutional rights, was maliciously prosecuted, denied a fair trial, suffered serious physical and mental injuries and other damages in an amount that will be established at trial.

370.    As a direct and proximate result of Defendant City of Rochester's violations of Plaintiff' constitutional rights, Plaintiff has suffered general and special

damages to be proved at trial and is entitled to relief under 42 U.S.C. Section 1983.

371.    As a direct and proximate result of the Defendants' conduct, Plaintiff has

been compelled to retain the services of counsel to protect and enforce his rights and

therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and

costs for which Plaintiff is entitled to reimbursement in an amount to be established at

the time of trial pursuant to 42 U.S.C. Section 1988.

### COUNT IX

**VIOLATION OF 42 U.S.C. SECTION 1983 BY DEFENDANTS
CITY OF ROCHESTER AND MICHAEL L. CIMINELLI (Supervisory
Liability/*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978))**

372.    The Plaintiff repeats and realleges the allegations set forth in paragraphs

1 through 371 above and incorporates them by reference as if set forth in their entirety

herein.

373.    At all times relevant herein, Defendants City of Rochester and Ciminelli

have supervised all members of the City of Rochester Police Department including

Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 and are

responsible for said officers' discipline retention, training and supervision.

374.    Defendants Ciminelli and City of Rochester have condoned a pattern of

brutality and other misconduct committed by City of Rochester police officers and have

maintained or permitted one or more of the following official policies, customs or

practices:

A.    Failure to adequately investigate, discipline, suspend, terminate and/or retrain City of Rochester police officers involved in misconduct - even when said misconduct is captured on video;

B.    Failure to adequately train and supervise City of Rochester police officers

regarding: 1) their duty to intervene to prevent to protect the constitutional rights of citizens from infringement; 2) constitutional limitations on stops; 3) the use of force; 4) arrests; 5) collection and preservation of evidence; and 5) searches and seizures of persons;

C.    Condoning the excessive and/or deadly use of force by officers and employees of the City of Rochester Police Department and failing to make meaningful attempts to investigate complaints, to adequately discipline, suspend, terminate and/or retrain City of Rochester police officers involved in such misconduct to forestall further incidents;

D.    Hiring, assigning/selecting and retention of City of Rochester police officers with demonstrable propensities for use of excessive force, violence, dishonesty and other misconduct;

E.    Condoning and encouraging City of Rochester police officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect their opportunities for continued employment, promotion and other employment benefits;

F.    Failure to take adequate measures to discipline City of Rochester police officers who engage in the use of excessive and/or deadly force, unlawful stops, arrests, searches, seizures, violence, dishonesty and other misconduct;

G.    Failure to practice and enforce proper reporting and investigation of use of excessive and/or deadly force and other misconduct by City of Rochester police officers;

H.    Failure to conduct independent and adequate investigations and allowing the investigations and internal reviews of excessive and/or deadly force/police misconduct cases to be conducted, controlled and/or influenced internally by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;

I.    Failing to allow the internal review process of excessive and/or deadly force cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;

J.    Permitting or acquiescing in the filing of false "cover charges" against innocent arrestees who fail to display the degree of deference or subservience demanded by arresting officers or who are the victims of

excessive and unlawful use of force or other constitutional rights violations by City of Rochester police officers;

K.   Maliciously prosecuting citizens who are falsely accused of engaging in criminal conduct to justify City of Rochester police officers' constitutional rights violations and to exonerate them for their misconduct; and

L.   Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this Complaint.

375.   Defendants City of Rochester and Ciminelli have maintained and permitted the aforedescribed practices, policies and customs, were aware of widespread abuses of power, including but not limited to false arrest, use of excessive and/or deadly force and malicious prosecution, by City of Rochester police officers and were deliberately indifferent to these constitutional violations by failing to take proper measures to acknowledge such abuses, investigate, train, supervise, suspend and/or discipline said officers and/or remedy such violations and practices and to forestall such future instances.

376.   Defendants City of Rochester and Ciminelli have been aware of the widespread abuses of power by City of Rochester police officers for many years and have also been aware that its policy of failing to discipline officers who abuse their power constitutes tacit approval of said misconduct and encourages those officers and other officers to engage in the same type of misconduct on subsequent occasions without the fear of being disciplined.

377.   Upon information and belief, instead of taking proper measures to investigate and/or discipline City of Rochester police officers who have engaged in abuses of power, Defendants Ciminelli and City of Rochester condoned, encouraged, fostered and/or ratified the unlawful conduct of said officers and have acquiesced in or

tacitly authorized their subordinates' unlawful actions.

378.   Upon information and belief, Defendants Ciminelli and City of Rochester have ratified the unconstitutional conduct of Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 towards Plaintiff.

379.   Based on the foregoing, Defendants City of Rochester and Ciminelli had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens, including Plaintiff, they failed to adequately investigate such instances and made no meaningful attempt to forestall further incidents and Defendant City of Rochester's and Ciminelli's response to that knowledge was so inadequate as to show deliberate indifference to or a tacit authorization of the alleged offensive practices and there is an affirmative causal link between Defendant City of Rochester's and Ciminelli's inaction and the particular constitutional injuries suffered by Plaintiff.

380.   Upon information and belief, by and through policy, custom and training, Defendants City of Rochester and Ciminelli had actual or constructive knowledge that their subordinates, including Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff and have condoned this custom, policy and training whereby unconstitutional practices occur.

381.   Upon information and belief, Defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel and John Does 1-20 have prior employment histories involving alleged misconduct and Defendants City of Rochester and Ciminelli were negligent for their training, supervision and retention of said officers.

382.    In the civil action <u>Robinn Turner v. City of Rochester, et al.</u>, 11-CV-06200-DGL-MWP (WDNY), the Plaintiff alleged that on or about September 12, 2010, Defendant Ferrigno picked her up off the ground, slammed her onto the concrete breaking a rib, dragged her across the concrete pavement by her right arm, pulled Plaintiff's right arm behind her back and then slammed his knee into Plaintiff's back.

383.    In the civil action <u>Robinn Turner v. City of Rochester, et al.</u>, 11-CV-06200-DGL-MWP (WDNY), the Plaintiff alleged that on or about September 12, 2010, Defendant Ferrigno violated her civil rights, acted with malice and without probable cause in commencing a criminal proceeding against Plaintiff which was terminated in Plaintiff's favor.

384.    In the civil action <u>Benny T. Warr v. Anthony R. Liberatore, et al.</u>, 13-CV-0658-EAW-MWP (WDNY), the Plaintiff, a wheelchair bound and one leg amputee, was peacefully waiting for a bus when Defendant Ferrigno maced him in his face and eyes, pushed his wheelchair over causing his body to slam onto the sidewalk where Defendant Ferrigno jumped on, kicked, punched and kneed Plaintiff in the stomach, chest, head, back, neck and other areas of his body causing him to suffer rib fractures, serious physical and mental injuries.

385.    In the civil action <u>Benny T. Warr v. Anthony R. Liberatore, et al.</u>, 13-CV-0658-EAW-MWP (WDNY), the alleged disorderly conduct and resisting arrest charges against Plaintiff Warr were based on false and fabricated allegations contained in the informations/supporting depositions which were filed by Defendants Ferrigno and Liberatore and which Defendant City of Rochester and the Rochester Police Department had knowledge of but allowed the Civilian Review Board to consider.

386.    Despite incriminating and shocking Blue Light Camera and cell phone video showing the brutal attack on Mr. Warr which included abdominal knee strikes by Defendant Ferrigno and an elbow strike by Officer Liberatore to Mr. Warr's head (an untrained technique per RPD) while Mr. Warr lay helpless on the sidewalk, Defendant City of Rochester and the City of Rochester Police Department cleared the involved Officers, including Defendant Ferrigno, of using unlawful excessive force against Mr. Warr.

387.    Former Rochester Police Chief James Sheppard reviewed Professional Standards Section false and fabricated investigative findings which he knew or should have known were false, the witness cell phone and RPD Blue Light Camera videos of the Benny Warr incident and despite such overwhelming proof of police misconduct and false reports filed by the arresting officers, decided to exonerate the police officers involved, including Defendant Ferrigno, on Mr. Warr's excessive force allegations.

388.    Defendants City of Rochester and Ciminelli refuse to discipline their police officers in cases where there has been cell phone camera and video proof of an officer's use of excessive and unlawful force.

389.    Upon information and belief, RPD Officer Patrick Giancursio has used excessive force against numerous citizens in the City of Rochester before and after the incident complained of herein but has never been disciplined by Defendant City of Rochester or the Rochester Police Department.

390.    Rather, Officer Patrick Giancursio was rewarded by Defendant City of Rochester and the Rochester Police Department as Officer of the year in May 2017, even though he was suspended at the time of the award while the police department

allegedly investigated his use of force against Alexander Grassies in an April 2017 incident that was caught on surveillance video.

391.   Upon information and belief, Defendants City of Rochester and Ciminelli never disciplined Officer Patrick Giancursio despite his repeated use of unlawful force against various arrestees.

392.   Upon information and belief, other cases where Defendant City of Rochester and its police chief have failed to reprimand and/or suspend police officers for police misconduct include Officer Thomas Rodriquez, who was involved in an incident on August 31, 2002 resulting in the death of Lawrence Rogers, an incident on May 10, 2007 where Officer Rodriguez was accused of using excessive force against Ann Marie Sanders, an August 7, 2016 incident where Officer Rodriguez was involved in the brutal beating of teenager Rickey Bryant who was an innocent bicyclist and an April 2017 incident where Officer Rodriguez placed DKuan Webb in an illegal chokehold that was recorded on his police body worn camera.

393.   Another RPD police officer who has used excessive force but was never reprimanded or suspended is Officer Alexander Baldauf who attacked Dwayne Ivery on August 17, 2013 and Delmar Lipford on April 20, 2015.

394.   Although Defendant Ferrigno has been the subject of at least 23 civilian complaints of police misconduct, many which have involved allegations of excessive force, he has never been reprimanded, suspended, retrained on the use of force or otherwise disciplined by the Defendant City of Rochester or the Rochester Police Department.

395.   Rather than being reprimanded, suspended or retrained for violating

Plaintiff's constitutional and statutory rights and those of countless other citizens, upon information and belief, Defendant Ferrigno was recently promoted by the City of Rochester and Defendant Ciminelli to a position on the Professional Standards Section, the internal affairs review board for the Rochester Police Department.

396.    City of Rochester police officer Mario Masic is another police officer who has used excessive force against numerous individuals and has had citizen complaints against him but upon information and belief, has never been reprimanded, suspended, retrained on the use of force, or otherwise disciplined by Defendant City of Rochester or the Rochester Police Department.

397.    Upon information and belief, on August 7, 2009, Officer Masic unlawfully stopped, searched, arrested and used force against Deshawn Keon Fields and thereafter, he falsified his police paperwork in an attempt to justify the reasons that he stopped and arrested Mr. Fields and forwarded this paperwork to the Monroe County District Attorney's Office.

398.    Upon information and belief, Officer Masic perjured himself in front of the grand jury by tailoring his testimony in an attempt to nullify constitutional deficiencies in his arrest paperwork.

399.    Thereinafter, in *People v. Fields*, Indictment No. 2009-0864 (Feb. 17, 2010), the Honorable Joseph D. Valentino granted the criminal defendant's motion to suppress because forensic evidence showed that Officer Masic had testified untruthfully before the grand jury to nullify constitutional deficiencies in his arrest paperwork and to justify the initial unlawful stop and search of Mr. Fields. Judge Valentino also found Officer Masic's testimony at the suppression hearing to be incredible and unbelievable.

400.   After Judge Valentino granted the criminal defendant's motion to suppress in Fields based on his finding that Officer Masic had lied in his arrest and charging paperwork and perjured himself on the stand, Defendant City of Rochester and the Rochester Police Department failed to discipline Officer Masic.

401.   Upon information and belief, on or about May 12, 2011, Emily Good was assaulted, battered and falsely arrested by Officer Masic for lawfully filming Masic while conducting a vehicle search but the charges of Disorderly Conduct, Obstruction of Governmental Administration and Resisting Arrest against Ms. Good were dismissed less than a week after Masic falsely arrested her.

402.   On September 15, 2016, Rochester Police Officers were captured on video falsely arresting Lentorya Parker and violently throwing her to the ground but these officers were never disciplined.

403.   Lentorya Parker was falsely arrested and placed in handcuffs by City of Rochester police officers and was charged with Obstructing Governmental Administration in the Second Degree in violation of Penal Law §195.05, Resisting Arrest in violation of Penal Law §205.30, Disorderly Conduct in violation of Penal Law §240.20, Harassment in the Second Degree in violation of Penal Law §240.26 and Unlawful Possession of Marijuana in violation of Penal Law §221.05 based upon her search incident to arrest.

404.   In August 2017, following a probable cause hearing, Rochester City Court Judge Caroline Morrison dismissed all charges against Ms. Parker due to lack of probable cause for her arrest.

405.   Despite Ms. Parker bringing a federal civil rights action against

Defendant City of Rochester and the officers involved in her arrest, these City of

Rochester police officers were never reprimanded, suspended or disciplined by

Defendant City of Rochester or Defendant Ciminelli for their unlawful actions.

406.   Upon information and belief, despite Defendants City of Rochester

and Ciminelli's knowledge that their subordinates, including the Defendant Officers,

engaged in conduct that posed a pervasive and unreasonable risk of constitutional

injury to citizens like Plaintiff, their response to said knowledge was so inadequate as to

show deliberate indifference to or tacit authorization of the alleged offensive practices of

their subordinates, including the actions of the Defendant Officers.

407.   Based on the foregoing, Defendants City of Rochester and Ciminelli

were aware of the alleged instances of police abuse and misconduct, failed to perform a

meaningful investigation into those instances and failed to discipline the officers

involved.

408.   There is an affirmative causal link between the aforedescribed

culpable action and/or inaction of Defendants City of Rochester and Ciminelli and the

particular constitutional injuries suffered by Plaintiff.

409.   As a direct and proximate cause of Defendant City of Rochester's

and Ciminelli's official policies, customs or practices which condone a pattern of brutality

without justification, police misconduct, malicious prosecution against victims of police

abuse and civil rights violations by Rochester police officers, Plaintiff was illegally

searched and seized, falsely arrested, deprived of his freedom due to his wrongful

imprisonment from April 1, 2016 until October 26, 2017, subject to excessive and deadly

force, deprived of a fair trial, maliciously prosecuted and has suffered and continues to

suffer serious physical and mental injuries and other damages in an amount that will be established at trial.

410.    As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff is entitled to relief under 42 U.S.C. Section 1983 and has suffered general and special damages in an amount to be determined at trial.

411.    As a direct and proximate result of the Defendants' conduct, Plaintiff has been compelled to retain the services of counsel to protect and enforce his rights and therefore, Plaintiff has incurred and continues to incur attorney's fees, expert fees and costs for which Plaintiff is entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. Section 1988.

## COUNT X

### BATTERY BY DEFENDANTS FERRIGNO, GIANCURSIO AND CITY OF ROCHESTER (NY LAW)

412.    The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 411 above and incorporates them by reference as if set forth in their entirety herein.

413.    The aforesdescribed actions of Defendants Ferrigno and Giancursio constitute an intentional battery upon Plaintiff's person.

414.    Defendant Ferrigno committed a battery upon Plaintiff's person by shooting and striking Plaintiff three (3) times from behind with bullets from his police issued handgun as Plaintiff was running away from him towards his back yard.

415.    Defendants Ferrigno and Giancursio committed a battery upon Plaintiff's person by dragging, striking, kicking and handcuffing Plaintiff and causing physical injury to Plaintiff's body as he lay on the ground critically wounded.

416.    The battery committed upon Plaintiff by Defendants Ferrigno and Giancursio was without provocation by Plaintiff and without his consent.

417.    As a direct and proximate result of the battery committed upon his person by Defendants, Plaintiff suffered severe and permanent physical and mental injuries and damages in an amount to be determined at trial.

418.    Defendant City of Rochester is liable under the doctrine of Respondeat Superior for the acts and omissions of its employees and/or agents, Defendants Ferrigno and Giancursio, who were purporting to act or were acting in the course and scope of their employment as police officers with Defendant City of Rochester when the alleged batteries were committed upon Plaintiff's person.

419.    Defendants Ferrigno and Giancursio's actions were malicious, oppressive, reckless, wanton and in willful disregard of Plaintiff's rights that Plaintiff claims punitive damages against Defendants Ferrigno and Giancursio in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## COUNT XI

### ASSAULT BY DEFENDANTS FERRIGNO, GIANCURSIO AND CITY OF ROCHESTER (NY LAW)

420.    The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 419 above and incorporates them by reference as if set forth in their entirety herein.

421.    The aforedescribed actions of Defendants Ferrigno and Giancursio constitute an intentional assault upon Plaintiff's person.

422.    Defendant Ferrigno intentionally placed Plaintiff in fear of imminent,

harmful or offensive contact when Defendant Ferrigno ran towards Plaintiff with a gun

drawn and pointed at him, by shooting Plaintiff three (3) times from behind and by

kicking and threatening to "finish off" Plaintiff and "blowing his brains out" as he laid

critically injured and helpless in his back yard.

423.    Defendants Ferrigno and Giancursio intentionally placed Plaintiff in

fear of imminent, harmful or offensive contact when said Defendants dragged, struck,

kicked, handcuffed and/or caused physical injury to Plaintiff's body as he lay on the

ground critically injured.

424.    Defendants Ferrigno and Giancursio made an intentional attempt,

displayed by violence or threatening gesture, to do injury to or commit a battery upon

Plaintiff's person.

425.    The assaults committed upon Plaintiff by Defendants Ferrigno and

Giancursio was without provocation by Plaintiff.

426.    Defendant City of Rochester is liable under the doctrine of

Respondeat Superior for the acts and omissions of its employees and/or agents

including Defendants Ferrigno and Giancursio who were purporting to act or were acting

in the course and scope of their employment as police officers with Defendant City of

Rochester when the alleged assaults were committed upon Plaintiff's person.

427.    As a direct and proximate result of the assaults committed upon his

person, Plaintiff suffered severe and permanent physical and mental injuries and

damages in an amount to be determined at trial.

428.    Defendants Ferrigno and Giancursio's actions were malicious,

reckless, wanton and in willful disregard of Plaintiff's rights that Plaintiff claims punitive

damages against Defendants Ferrigno and Giancursio in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

## COUNT XII

## MALICIOUS PROSECUTION BY ALL DEFENDANTS (NY LAW)

429.   The Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 428 above and incorporates them by reference as if set forth in their entirety herein.

430.   By the actions described above, each and all of the Defendants, jointly and severally, acting in concert with each other and with additional persons whose acts they are liable, maliciously initiated, continued and/or caused the initiation or continuation of criminal proceedings against Plaintiff.

431.   The criminal proceedings terminated in Plaintiff's favor.

432.   There was no probable cause for the commencement or the continuation of the criminal proceedings.

433.   Based on the foregoing allegations, the Defendants misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith.

434.   Plaintiff's indictment was produced by fraud, perjury, fabricating, falsifying and/or suppressing evidence and conduct undertaken in bad faith by Defendants.

435.  The Defendants acted with actual malice.

436.   The Defendants were at all times agents, servants and employees

acting within the scope of their employment by the Defendant City of Rochester, Rochester Police Department, Shotspotter, Inc. and SST, Inc. which are therefore responsible for their conduct.

437.    Defendant City of Rochester is also liable to Plaintiff on the basis of respondeat superior as a result of the unlawful actions of the defendant police officers and Shotspotter defendants who acted as employees or agents on its behalf.

438.    The malicious prosecution of Plaintiff by Defendants was done pursuant to the policy, custom, usage and/or practice of Defendant City of Rochester and/or was ratified by Defendant City of Rochester.

439.    As a direct and proximate result of the malicious prosecution of Plaintiff, Plaintiff suffered loss of freedom as he was imprisoned from April 1, 2016 through October 26, 2017, suffered severe and permanent physical and mental injuries and damages in an amount to be determined at trial.

440.    Defendants' prosecution of Plaintiff was malicious, reckless, wanton and in willful disregard of Plaintiff's rights that Plaintiff claims punitive damages against Defendants in an amount to be determined at trial commensurate with the wrongful acts alleged herein.

**WHEREFORE,** Plaintiff Silvon S. Simmons prays for judgment against Defendants as follows:

1.    Compensatory damages in the form of general and special damages against all Defendants, jointly and severally, in an amount that has yet to be ascertained and according to the proof to be determined at trial;

2.    Punitive damages against all individual Defendants and against Defendants Shotspotter, Inc. and SST, Inc. in an amount to be determined at trial;

3.  Declaratory judgment declaring that Plaintiff Silvon S. Simmons' constitutional rights to be free from unlawful arrest, search, seizure, imprisonment, use of excessive and deadly force, malicious prosecution and abuse of process under the Fourth and Fourteenth Amendments were violated by Defendants;

4.  Reasonable costs of this suit incurred herein;

5.  An award of reasonable attorney's fees pursuant to 42 U.S.C. Section 1988; and

6.  Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded.

Dated: August 27, 2018                    Respectfully submitted,

                                          **BURKWIT LAW FIRM, PLLC**

                                          s/Charles F. Burkwit, Esq.
                                          Charles F. Burkwit, Esq.
                                          Attorneys for Plaintiff Silvon S. Simmons
                                          16 East Main Street, Suite 450
                                          Rochester, New York 14614
                                          (585) 546-1588
                                          burkwitesq@aol.com