UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――

SILVON S. SIMMONS,

                       Plaintiff,

    vs.

JOSEPH M. FERRIGNO, II, SAMUEL
GIANCURSIO, MARK WIATER, CHRISTOPHER
MUSCATO, ROBERT WETZEL, MICHAEL L.
CIMINELLI, JOHN DOES 1-20, CITY OF ROCHESTER,
SHOTSPOTTER, INC., SST, INC., JOHN DOES 21-30
and PAUL C. GREENE,

                       Defendants.

**MEMORANDUM OF LAW**

**17-CV-6176 MAT-MWP**

―――――――――――――――――――

       Plaintiff Silvon S. Simmons (hereinafter "Plaintiff"), by his attorneys, Burkwit Law Firm, PLLC, submits this Memorandum of Law in opposition to Defendants' Motion pursuant to FRCP 12(b)(6) for partial dismissal of the Complaint for failure to state a claim and for an order dismissing Plaintiff's third, fourth, fifth, sixth, seventh, eighth and ninth causes of action. Upon reviewing the allegations set forth in Plaintiff's Amended Complaint (See Exhibit A – Campolieto Attorney Declaration (hereinafter referred to as "Amended Complaint")), legally sufficient causes of action have been alleged by Plaintiff and Defendants' motion should be denied in its entirety.

## THE FACTS ALLEGED IN THE AMENDED COMPLAINT

       On April 1, 2016 at approximately 8:55 p.m., Plaintiff and his next door neighbor went to a nearby store and returned to his neighbor's driveway at approximately 9:08 p.m. (Amended Complaint, paras. 56 & 59). After Plaintiff's neighbor backed the

vehicle into the driveway and turned it off, Defendant Ferrigno drove up and suddenly

stopped his Rochester Police Department vehicle along the curb at the end of the

driveway and shined a bright spotlight at Plaintiff who had exited the vehicle. (Amended

Complaint, paras. 61, 62 & 68). Prior to stopping, Defendant Ferrigno had not been

provided with any information that would suggest to a reasonable police officer that

Plaintiff or his neighbor had engaged in any criminal activity. (Amended Complaint,

para. 68). Defendant Ferrigno, who did not state he was a police officer, began running

towards Plaintiff with his gun drawn and pointed at him and Plaintiff immediately started

running down the driveway towards his back yard. (Amended Complaint paras. 72 &

73). Plaintiff, who was blinded by the spotlight shined directly in his face, did not know

who was chasing him at gunpoint when he ran down the driveway. (Amended

Complaint, para. 74). As Plaintiff was running away from Defendant Ferrigno down the

driveway, Defendant Ferrigno fired four (4) gun shots at Plaintiff striking Plaintiff's body

three (3) times with his police issued Glock .45 caliber hand gun. (Amended Complaint,

para. 86). When Defendant Ferrigno shot at Plaintiff, he could not see Plaintiff since it

was dark and he did not see a gun or weapon in Plaintiff's hand. (Amended Complaint,

paras. 124-125). Defendant Giancursio was not present at the scene when Defendant

Ferrigno shot Plaintiff and he never saw Plaintiff holding a gun or weapon in his hand.

(Amended Complaint, paras. 132 & 135).

Plaintiff was unable to get away from Defendant Ferrigno due to his injuries so he

played dead in the back yard since he feared he would be shot again and killed.

(Amended Complaint, para. 90). While Plaintiff was playing dead in the back yard, he

accidentally took a deep breath due to pain and Defendant Ferrigno said "What the

fuck", kicked Plaintiff in his back multiple times, said "Shut the fuck up before I blow your brains out" and pointed a gun to Plaintiff's head and said "I should just finish you off". (Amended Complaint, paras. 90-94). At no time did Plaintiff or any other person fire a gun at Defendants Ferrigno or Giancursio on the evening of April 1, 2016. (Amended Complaint, paras. 106 & 107).

Defendants Ferrigno and Giancursio went into the back yard where Plaintiff was lying and kicked Plaintiff. (Amended Complaint, para. 111). Defendant Giancursio searched and handcuffed Plaintiff who was lying on the ground and he did not see a gun before or after he handcuffed and searched Plaintiff. (Amended Complaint, paras. 113-115). After Plaintiff was shot by Defendant Ferrigno and handcuffed by Defendant Giancursio, he was dragged further into the back yard where it was even darker. (Amended Complaint, para. 116). After Plaintiff was shot by Defendant Ferrigno, he was frisked, searched, handcuffed, kicked, dragged and physically injured by Defendants Ferrigno and Giancursio. (Amended Complaint, para. 118). When Plaintiff was shot three (3) times by Defendant Ferrigno, there was no gun or weapon in the back yard or on Plaintiff's person. (Amended Complaint, para. 117). At no time did Plaintiff pose a threat of physical harm to Defendants Ferrigno, Giancursio or any other person. (Amended Complaint, para. 126). Following the shooting of Plaintiff, Defendant Ferrigno called dispatch advising shots were fired prompting other Rochester police officers to respond to the scene. (Amended Complaint, para. 137). Prior to the numerous Rochester police officers arriving at the scene, there was no gun or other weapon present on the ground. (Amended Complaint, para. 139).

When Rochester police officers responded to the scene, a Sturm Ruger P85

9mm handgun (hereinafter "Ruger Handgun") was allegedly found on the ground and taken into evidence. (Amended Complaint, paras. 140 &141). The Ruger Handgun did not belong to Plaintiff who never touched, held or possessed it. (Amended Complaint, paras. 144-146). Plaintiff's DNA and fingerprints were not on the Ruger Handgun. (Amended Complaint, para. 147). Besides a spent bullet casing in the chamber of the Ruger Handgun, the Rochester Police Department did not recover any discharged bullets or other casings from the Ruger Handgun which had an empty magazine and was not in the "lock back" position. (Amended Complaint, paras. 152-154). When the Rochester Police Department allegedly recovered the Ruger Handgun, there was no objective evidence that it had recently been fired. (Amended Complaint, para. 155). The Ruger Handgun was subsequently tested by the Monroe County Crime Lab and determined to be a properly functioning firearm since it was fired multiple times, all bullet casings properly discharged from the gun with the slide of the gun going into the "lock back" position like it was supposed to when the last bullet in the magazine was fired. (Amended Complaint, paras. 183-185).

Before Plaintiff was loaded into the ambulance, he heard Defendant Ferrigno accuse him of firing a gun at him so when Plaintiff was loaded into the ambulance, he specifically requested Defendant Christopher Muscato and other officers to check his hands for gun powder residue but Plaintiff's request was refused. (Amended Complaint, paras. 157-159). At no time was Plaintiff's person or his clothing tested for gunshot residue and there was no gunshot residue on Plaintiff's person or his clothing. (Amended Complaint, paras. 160-161). When Plaintiff arrived and was admitted at

4

Strong Memorial Hospital, he again made requests to Defendant Muscato and other police officers to check his hands for gun powder residue since he knew Defendant Ferrigno falsely accused him of firing a gun at him but these requests were again denied. (Amended Complaint, para. 163). After Plaintiff was intubated and unable to speak, he made a written request to Defendant Muscato to check his hands for gun powder residue but Defendant Muscato refused and told Plaintiff to stop writing questions. (Amended Complaint, para. 164).

On April 5, 2016, Plaintiff was arraigned at Strong Memorial Hospital on criminal charges for Attempted Aggravated Murder, Attempted Aggravated Assault on a police officer and two (2) counts of Criminal Possession of a Weapon in the Second Degree, charges which were based on the Defendants' false accusations that Plaintiff possessed and fired the Ruger Handgun at Defendant Ferrigno on April 1, 2016. (Amended Complaint, paras. 171-172). Plaintiff alleged that accusatory informations/complaints were filed by Defendants Ferrigno, Giancursio and other Rochester police officers which contained false and fabricated allegations in an effort to justify the criminal charges against Plaintiff and to assure their own exonerations from any wrongdoing. (Amended Complaint, para. 173). Plaintiff alleged that upon information and belief, Defendant Ferrigno conspired with the other Defendants, including Rochester Police Chief Michael L. Ciminelli, to concoct a fabricated account of the events occurring the evening of April 1, 2016 and his interaction with Plaintiff and the reasons he allegedly shot Plaintiff. (Amended Complaint, paras. 175-176). Plaintiff was discharged from Strong Memorial Hospital on April 11, 2016 and immediately transferred to Monroe County Jail where he remained incarcerated until his criminal trial

ended on October 26, 2017. (Amended Complaint, para. 177).

Shotspotter is an acoustics gunshot detection and location system with sensors set in undisclosed locations of the City of Rochester. (Amended Complaint, para. 196). When gunshot or gunfire activity is detected, Shotspotter reports it to the police 911 center to dispatch a patrol car. (Amended Complaint, para. 197). On April 1, 2016 at approximately 9:00 p.m., the Shotspotter system was on but was in the "squelch mode" and did not alert the Rochester Police Department or the 911 call center that there had been a shooting in the vicinity of 9 Immel Street in Rochester, New York. (Amended Complaint, para. 221). Shortly after the incident, Defendant Robert Wetzel from the Rochester Police Department informed Shotspotter in an email that the RPD had an officer involved shooting in the area of 10 Immel Street and approximately 3 to 5 rounds were fired. (Amended Complaint, para. 222). Defendant Wetzel provided location, time, number of possible shots and the caliber of the weapons fired during the incident. (Amended Complaint, para. 224). On April 2, 2016 at 12:55 a.m., the incident was "Reclassified to Multiple Gunshots from helicopter, Reason: per customer. OIS (officer involved shooting), and the "Number of rounds updated from 3 to 4". (Amended Complaint, paras. 228, 232). Shotspotter generated a Detailed Forensic Report dated April 7, 2016 which noted that on April 1, 2016 at 9:09:38 p.m., "4 rounds" were detected. (Amended Complaint, para. 227). Defendant Mark Wiater testified at Plaintiff's criminal trial that after he left the incident scene and returned back to the Rochester Police Department after midnight, he opened a chat session with Shotspotter between 12:30 a.m. and 1:00 a.m., he acknowledged that Shotspotter initially detected four (4) gunshots and he wanted Shotpotter to look into the incident and see if they

detected any other gunfire. (Amended Complaint, paras. 233-235). Defendant Paul C.

Greene, manager of forensic services for Shotspotter, testified at Plaintiff's criminal trial

that somebody from the Rochester Police Department contacted Shotspotter and asked

Shotspotter to try to find additional shots. (Amended Complaint, paras. 200 & 236).

Defendant Greene acknowledged at Plaintiff's criminal trial that he listened to the audio

that was presented to the dispatcher, he could hear the sound of four (4) gunshots and

subsequently he was asked by the Rochester Police Department to essentially search

and see if there were more shots fired than Shotspotter picked up. (Amended

Complaint, para. 237). After further review, Shotspotter modified their report and

indicated that five (5) rounds were fired. (Amended Complaint, para. 242). Defendant

Greene certified and acknowledged that his final report was true and accurate and he

attended Plaintiff's criminal trial to testify on behalf of the prosecution and against

Plaintiff concerning the Shotspotter evidence. (Amended Complaint, para. 244). Upon

information and belief, the spool containing sounds and/or other information pertaining

to the April 1, 2016 shooting was lost, deleted and/or destroyed by Defendants

Shotspotter, Inc, SST, Inc. City of Rochester and/or the Defendant officers. (Amended

Complaint, paras. 248-249).

On October 26, 2017, a jury acquitted Plaintiff of Attempted Aggravated Murder,

Attempted Aggravated Assault on a police officer and one count of Criminal Possession

of a Weapon, a charge where there was insufficient proof that Plaintiff possessed a

loaded firearm with the intent to use the same unlawfully against another. (Amended

Complaint, paras. 251-252). The jury, however, convicted Plaintiff of Criminal

Possession of a Weapon in the Second Degree in violation of Penal Law 265.03(3)

based on the testimony of Defendant Greene that five (5) shots were fired and the Shotspotter audio and Detailed Forensic Reports that were received into evidence. (Amended Complaint, paras. 253-254). Following the jury verdict on October 26, 2017, Plaintiff was released from prison on his own recognizance pending sentencing. (Amended Complaint, para. 255). Plaintiff's criminal sentencing hearing occurred on January 11, 2018 at which time Monroe County Court Judge Christopher Ciaccio reversed and set aside the jury's weapon conviction and ordered a new trial precluding Shotspotter evidence as unreliable scientific evidence. (Amended Complaint, para. 256). On May 31, 2018, Plaintiff's jury trial was scheduled to begin on the remaining weapons charge but the prosecution was unable to proceed without the Shotspotter evidence since it could not establish that the firearm was loaded at the time it was allegedly possessed by Plaintiff. (Amended Complaint, paras. 257-259). Defense counsel's motion to dismiss the indictment was thereafter granted and the criminal proceeding terminated in Plaintiff's favor. (Amended Complaint, para. 260).

## DEFENDANTS' MOTION TO DISMISS

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level". Rodriguez v. Winski, 973 FSupp2d 411, 418 (SDNY 2013), citing Bell Atlantic Corp. v. Twombly, 550 US 544, 555 (2007). For a complaint to be sufficient, the claim asserted must be one that, in light of the factual allegations, is at least "plausible". Anderson News, LLC, et al. v. American Media, Inc. et al., 680 F3d 162 (2nd Cir. 2012), citing Bell Atlantic Corp. v. Twombly, 550 US 544, 570 (2007). To present a plausible claim, the pleading must contain something more than a statement that merely creates

8

a suspicion of a legally cognizable right of action. Id. at 182, citing Bell Atlantic Corp. v. Twombly at 555. It must allege facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". Id. at 182, citing Ashcroft v. Iqbal, 556 US 662 (2009). In order to withstand dismissal, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Sharp v. Town of Greece et al., 2010 US Dist. Lexis 42944 at 10 (WDNY 2010), citing Ruotolo v. City of New York, 414 F3d 184, 188 (2nd Cir. 2008), citing Ashcroft v. Iqbal, 556 US 662 (2009). A court should draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true and determine whether they plausibly give rise to an entitlement to relief. McNaughton v. De Blasio, 2015 US Dist. Lexis 13352 at 11-12 (SDNY 2015), citing Faber v. Metropolitan Life Insurance Co., 648 F3d 98, 104 (2nd Cir. 2011). The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof". Ryder Energy Distribution Corporation v. Merrill Lynch Commodities, Inc., et al., 748 F2d 774, 779 (2nd Cir. 1984) (citing Geisler v. Petrocelli, 616 F2d 636, 639 (2nd Cir. 1980)). The district court should deny the motion unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief. Id. at 779, citing Conley v. Gibson, 355 US 41, 45-46 (1957). The district court must limit itself to a consideration of the facts that appear on the face on the complaint. Id. at 779.

The facts alleged in the Amended Complaint clearly show that Plaintiff's claims

are plausible and that Defendants have engaged in culpable conduct in using unlawful

excessive and deadly force against him and by conspiring, fabricating and falsifying

evidence to support the criminal charges and proceeding against Plaintiff, his

incarceration and the Defendant Officers' exonerations.

## POINT I

## PLAINTIFF HAS ALLEGED A VIABLE 42 USC SECTION 1983 EIGHTH CAUSE OF ACTION FOR MUNICIPALITY LIABILITY BY DEFENDANT CITY OF ROCHESTER

To prevail on a claim against a municipality under Section 1983 based on the

acts of a public official, a plaintiff is required to prove: 1) actions taken under color of

law; 2) deprivation of a constitutional or statutory right; 3) causation; 4) damages; and 5)

that an official policy of the municipality caused the constitutional injury. White v. The

City of New York, 2015 US Dist. Lexis 100772 at 14 (SDNY 2015), citing Roe v.

Waterbury, 542 F3d 31, 36 (2nd Cir. 2008). To state a §1983 claim against a

municipality, a plaintiff must adequately allege that a deprivation of his constitutional

rights was caused by an official policy or custom of that municipality. Urbina v. City of

New York, 2016 US Dist. Lexis 1439 at 10 (SDNY 2016), citing Jeffes v. Barnes, 208

F3d 49, 57 (2nd Cir. 2000), citing Monell v. Department of Social Services of New York,

436 US 658, 692-94 (1978). A plaintiff may satisfy the "policy or custom" requirement in

one of several ways, including by alleging the existence of 1) a formal policy officially

endorsed by the municipality; 2) actions taken by government officials responsible for

establishing the municipal policies that caused the particular deprivation in question; 3)

a practice so consistent and widespread that, although not expressly authorized,

constitutes a custom or usage of which a supervising policy-maker must have been

aware; or 4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. White v. City of New York, supra at 15, citing Brandon v. City of New York, 205 F.Supp2d 261, 276-77 (SDNY 2010). To satisfy the fourth prong, the plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious", which may be established "by showing that there were repeated complaints of civil rights violations", and "deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents". White v. City of New York, supra at 15, citing Tieman v. City of Newburgh, 2015 WL 1379652 at 19 (SDNY 2015) and Jett v. Dallas Independent School District, 491 US 701, 737 (1989)(noting municipal liability may attach where policy maker acquiesces in long-standing practice that constitutes "standard operating procedure" of local government), citing Reynolds v. Giuliani, 506 F3d 183, 192 (2nd Cir. 2007).

Under Monell, a municipality may be liable for deprivation of constitutional rights "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury". Kastle v. The Town of Kent, 2014 US Dist. Lexis 56125 at 35 (SDNY 2014), citing Monell, supra at 694. A municipality may also be liable for inadequate training, supervision, or hiring when the failure to train, hire or supervise amounts to a deliberate indifference to the rights of those with whom municipal employees will come into contact. Kastle, supra at 34-35, citing City of Canton v. Harris, 489 US 378, 388 (1989). "Monell's policy or custom requirement is satisfied where a local government is faced with

a pattern of misconduct and does nothing, compelling the conclusion that the local

government has acquiesced in or tacitly authorized its subordinates' unlawful actions".

White v. City of New York, supra at 16, citing Fiacco v. City of Rensselaer, 783 F2d 319,

328 (2nd Cir. 1986) ("Whether or not the claims had validity, the very assertion of a number

of such claims put the City on notice that there was a possibility that its police officers had

used excessive force"). Thus, local governing bodies "may be sued for constitutional

deprivations visited pursuant to governmental custom even though such custom has not

received formal approval through the government's official decision-making channels".

White v. City of New York, supra at 16, citing Monell, 436 US at 659. Monell does not

provide a separate cause of action for the failure by the government to train its employees;

it extends liability to the municipal organization where that organization's failure to train,

or the policies or customs that it has sanctioned, led to an independent constitutional

violation. McNaughton v. De Blasio, supra at 16, citing Segal v. City of New York, 459

F3d 207, 219 (2nd Cir. 2006).

Plaintiff's Amended Complaint alleges legally sufficient facts showing a claim

under 42 USC §1983 for municipal liability against Defendant City of Rochester. Plaintiff

alleged that the Defendant officers acted under color of law, that they arrested Plaintiff,

deprived him of certain constitutionally protected rights to be free from unreasonable

searches,and seizures, when they falsely arrested him and illegally used excessive and

deadly force on his person. Plaintiff has alleged that these violations caused him injuries

and damages and that an official policy or custom of Defendant City of Rochester caused

the constitutional injury.

As for an official policy or custom of Defendant City of Rochester which allegedly caused Plaintiff a deprivation of his constitutional rights, Plaintiff has alleged in Count VIII, paragraph 364, in the Amended Complaint that the City of Rochester has demonstrated a policy, ordinance, custom, regulation and/or decision of deliberate indifference to the rights of its citizens by:

    a. failing to adequately train its police officers regarding the proper methods for stops, arrest procedures, use of force, securing and preserving evidence and/or intervening to prevent constitutional rights violations from occurring by other police officers;

    b. failing to adequately investigate and acknowledge excessive force and police misconduct complaints of citizens whose constitutional rights are violated;

    c. failing to independently investigate and all excessive force and police misconduct complaints of citizens which are brought to its attention;

    d. failing to refer all excessive force complaints of citizens to the Civilian Review Board for review;

    e. allowing the investigation and internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board or other agency;

    f. failing to administer the internal review process of excessive/deadly force and/or police misconduct cases through an independent Civilian Review Board through Center For Dispute Settlement and in compliance with Rochester City Council Resolution 92-40, enacted October 13, 1992, and modified in 1995 by Resolution 95-8 of the Rochester City Council;

    g. promoting and tolerating a custom and policy in which officers violate the constitutional rights of citizens through unlawful stops, searches, seizures, excessive and/or deadly force, imprisonment, malicious prosecutions and/or failing to intervene to prevent such violations;

    h. failing to suspend, terminate or take disciplinary action against officers who violate rights of citizens through unlawful stops, searches and seizures, excessive and/or deadly force, imprisonment, malicious prosecutions and/or failing to intervene to prevent such violations;

i. failing to adequately train and supervise officers who are prone to commit unlawful stops, searches and seizures, use of excessive and/or deadly force, malicious prosecutions and/or failure to intervene to prevent such constitutional rights violations; and

j. failing to investigate, acknowledge and discipline but rather, instructing or acquiescing in Rochester Police officers' filing of false charges against individuals who are insufficiently deferential during interactions with the police and against individuals who are the victims of false arrest, excessive force and/or other police misconduct in order to justify and cover up such violations.

Plaintiff alleged that despite over 20 prior citizen complaints made against Defendant Ferrigno, many for excessive use of force, he has recently been promoted to serve on the internal affairs department of the City of Rochester Police Department. (Amended Complaint, para. 264). Plaintiff alleged in the Complaint that Defendants City of Rochester and Ciminelli have been aware and have allowed widespread abuses of power by City of Rochester police officers for many years and their failure to discipline such officers constitutes tacit approval of said misconduct and encourages continuation of such misconduct without fear of being disciplined. (Amended Complaint, paras. 375-376). Plaintiff alleged that there have been repeated complaints of civil rights violations against Defendant City of Rochester with no meaningful attempt to investigate or to forestall further incidents and the City's policy makers have acquiesced in such long-standing practices. (Amended Complaint, para. 367). Plaintiff cited civil cases and instances of misconduct by some of the Defendant Officers and other officers of the Rochester Police Department at paragraphs 382 through 405 showing a pattern whereby officers were never reprimanded, suspended and/or disciplined for their misconduct for such constitutional injuries to citizens. Plaintiff alleged that Defendant City of Rochester permitted or acquiesced in the filing of false "cover charges" against innocent arrestees

14

who failed to display the degree of deference or subservience demanded by arresting officers. (Amended Complaint, para. 374). Plaintiff alleged that the Defendant officers had inadequate training and supervision regarding arrests, searches and seizures, use of force, securing and preserving evidence and intervening when constitutional deprivations occur and that Defendants City of Rochester and Ciminelli failed to properly train, supervise, reprimand, suspend and/or terminate them amounting to a deliberate indifference to the rights of those whom they will come into contact, including Plaintiff. (Amended Complaint, paras. 266-267). Plaintiff alleged that the policies and practices of Defendant City of Rochester in authorizing its police officers to use excessive and/or deadly force, to fabricate, alter and/or destroy evidence, to cover up such violations and maliciously prosecute innocent citizens is so persistent and widespread that it constitutes a custom or usage and implies the actual or constructive knowledge of the City of Rochester. (Amended Complaint, para. 270). Plaintiff also alleged that Defendant City of Rochester failed to adequately train, supervise, reprimand, suspend and/or terminate police officers who engage in misconduct, has retained officers involved in misconduct, has failed to report and investigate use of force by City of Rochester police officers, has allowed the internal review of excessive force/police misconduct cases to be controlled and/or influenced by the Rochester Police Department and not by the Center For Dispute Settlement, an independent Civilian Review Board (hereinafter "CRB") or other agency, has failed to allow the internal review process of excessive force cases to occur through an independent CRB through Center For Dispute Settlement and in compliance with Rochester City Council Resolutions 92-40 and 95-8. Plaintiff has alleged ample grounds for imposing municipal liability in paragraphs 364 and 374 of the Amended Complaint.

Assuming the factual allegations alleged in the Amended Complaint as true, and upon

considering the above case authority, Plaintiff has alleged legally sufficient claims under

42 USC §1983 for municipal liability against Defendant City of Rochester warranting the

denial of Defendants' motion to dismiss for failure to state a claim.

## POINT II

**PLAINTIFF HAS ALLEGED A VIABLE 42 USC §1983 NINTH CAUSE OF ACTION
FOR SUPERVISORY LIABILITY AGAINST DEFENDANTS CITY OF ROCHESTER
AND MICHAEL L. CIMINELLI**

With respect to supervisory liability, a supervisory defendant must have been

personally involved in a constitutional deprivation to be held liable under §1983. Williams

v. Smith, 781 F2d 319, 323 (2nd Cir. 1986). A supervisor may be personally involved

through: (1) direct participation in the alleged constitutional violation; (2) failure to remedy

the wrong after being informed of the violation by report or appeal; (3) creation or

continuance of a policy or custom under which the unconstitutional practices occurred;

(4) gross negligence in supervising the subordinates who committed the wrongful acts; or

(5) deliberate indifference demonstrated by failure to act on information that

unconstitutional acts were occurring. Colon v. Coughlin, 58 F3d 865, 872 (2nd Cir. 1995).

In the Amended Complaint, Plaintiff has sufficiently alleged facts showing

supervisory liability under the second through fifth prongs of Colon. Plaintiff alleged at

paragraph 374 that Defendant Ciminelli has condoned a pattern of brutality and other

misconduct, failed to adequately investigate, discipline, suspend, terminate and/or

retrain officers involved in misconduct, failed to intervene to protect the constitutional

rights of citizens, condoned excessive and/or deadly use of force by officers, failed to

conduct independent and adequate investigations, permitted the filing of false "cover

charges" against innocent arrestees, maliciously prosecuted citizens who are falsely

arrested. Plaintiff also gave specific examples of police misconduct and supervisory liability in the Amended Complaint from paragraphs 382 through 405.

As in Kastle v. The Town of Kent, supervisory liability is alleged against Defendant Ciminelli in this case for his failure to remedy the wrong after being informed of the violation by report or appeal, by creating or continuing of a policy or custom under which the unconstitutional practices occurred, by his gross negligence in supervising his subordinates who committed the wrongful acts and by showing deliberate indifference demonstrated by his failure to act on information that unconstitutional acts were occurring. Colon v. Coughlin, 58 F3d 865, 872 (2nd Cir. 1995). Based on the foregoing, Plaintiff has sufficiently alleged a claim against Defendant Ciminelli for supervisory liability under 42 USC §1983 warranting the denial of Defendants' motion to dismiss for failure to state a claim.

## POINT III

### PLAINTIFF HAS ALLEGED A VIABLE 42 USC §1983 SIXTH CAUSE OF ACTION FOR MALICIOUS ABUSE OF PROCESS AGAINST ALL DEFENDANTS

A malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance of forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. Savino v. City of New York, 331 F3d 63, 682nd Cir. 2003), citing Cook v. Sheldon, 41 F3d 73, 80 (2nd Cir. 1994). Malicious abuse of criminal process also supports liability under §1983. Id. at 80. To state a claim for abuse of criminal process, a plaintiff must establish that the defendants had an improper purpose for instigating the action. Id. at 80.

Plaintiff alleged in the Amended Complaint that Defendants issued criminal process against him by fabricating and falsifying evidence by causing his arrest and

prosecution with intent to do harm without excuse or justification in order to obtain collateral objective outside the legitimate ends of the legal process, to wit: to create justification for and cover up Defendant Ferrigno's false arrest and use of unlawful and deadly force against Plaintiff, to secure Defendant Ferrigno's and City of Rochester's exonerations for any police misconduct and constitutional rights violations against Plaintiff, to avoid accountability and to cover up the Defendant officer's use of force and misconduct. (Amended Complaint, paras. 346-348). Plaintiff has clearly satisfied the third element of malicious abuse of process since Defendants had an improper purpose in instigating the criminal proceeding against Plaintiff. Based on the foregoing, Plaintiff has sufficiently alleged a claim against Defendants for Malicious Abuse of Process under 42 USC §1983 warranting the denial of Defendants' motion to dismiss for failure to state a claim.

### POINT IV

### PLAINTIFF HAS ALLEGED A VIABLE 42 USC §1983 THIRD CAUSE OF ACTION FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS AGAINST ALL DEFENDANTS

Plaintiff has not alleged a claim for Conspiracy To Violate pursuant to 42 USC §1985 but rather, pursuant to 42 USC §1983. To state a conspiracy claim under §1983, plaintiff must allege (1) an agreement between two or more State actors or between a State actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Sharp v. Town of Greece, et al. at 21, citing Pangburn v. Culbertson, 200 F3d 65, 72 (2nd Cir. 1999). Where the alleged conspirators all consist of employees, officers, or agents of a corporation, the "intracorporate conspiracy" doctrine bars such claims. Id. at 21, citing Perrin v. Canandaigua City School District, 2008 US Dist. Lexis 95280 at 2 (WDNY

2008), citing <u>Hartline v. Gallo</u>, 2006 US Dist. Lexis 75849 at 9 (EDNY 2006), affd. in

pertinent part, 546 F3d 95 (2nd Cir. 2008).  An exception to this doctrine exists where the

intracorporate actors allegedly have motives independent from the corporation. Id. at

21.

At paragraphs 300 through 313 of the Amended Complaint, Plaintiff alleged that

Defendants Ferrigno and Giancursio conspired to unlawfully search, seize, arrest and

imprison him and falsely accuse him of possessing and shooting a gun at Defendant

Ferrigno and prosecute him thus causing his incarceration and deprivation of freedom.

(Amended Complaint, paras. 301-302). Plaintiff alleged that the Defendant Officers

conspired and agreed to concoct a story that on the evening of April 1, 2016,

Defendants Ferrigno and Giancursio were actively and aggressively pursuing a

menacing suspect named Ivory Golden to justify the pursuit, arrest and use of force

against Plaintiff. (Amended Complaint, para. 303). Plaintiff alleged that the Defendant

Officers agreed to stage the alleged crime scene by relocating Defendant Ferrigno's

fired gun shell casings from the driveway to the back yard, by dragging Plaintiff's body

further into the back yard and otherwise tampering with and/or planting incriminating

evidence at the alleged crime scene. (Amended Complaint, para. 305). Plaintiff also

alleged that the Defendant Officers falsely accused Plaintiff of possessing and firing a

gun at Defendant Ferrigno, fabricated and falsified evidence to cause Plaintiff to be

wrongfully imprisoned and prosecuted for felony crimes. (Amended Complaint, para.

304). Plaintiff alleged that "all Defendants" conspired to falsely create additional gun

shots on Shotspotter audio and/or reports, to fabricate and falsify evidence which they

forwarded to prosecutors and participated in the prosecution against Plaintiff to secure

the exoneration of Defendant Ferrigno for using excessive and deadly force against Plaintiff. (Amended Complaint, para. 307).

Plaintiff has alleged a legally sufficient claim for Conspiracy to Violate Civil Rights against all Defendants. Plaintiff has not only alleged a conspiracy among the Defendant Officers to violate Plaintiff's civil rights, but also alleged this claim against Defendants Shotspotter, Inc., SST, Inc., John Does 21-30 and Paul C. Greene for conspiring with the Defendant Officers to falsely create additional gun shots on Shotspotter audio and/or reports, to fabricate and falsify evidence which they forwarded to prosecutors and participated in the prosecution against Plaintiff. These allegations of collusion between the Defendant Officers and the Shotspotter Defendants is set forth in Count IV of the Amended Complaint for malicious prosecution. Since not all the alleged co-conspirators consist of employees, officers or agents of a corporation, the "intracorporate conspiracy" doctrine does not apply to bar this claim. In any event, the exception to the "intracorporate conspiracy" doctrine exists where the intracorporate actors allegedly have motives independent from the corporation. Sharp v. Town of Greene, et al. at 21. The conduct alleged in the Amended Complaint shows the Defendant Officers had "motive independent from the corporation" and their conduct should not be shielded by the "intracorporate conspiracy" doctrine. Plaintiff has alleged a legally sufficient claim against all Defendants for conspiracy to violate under 42 USC §1983 warranting the denial of Defendants' motion to dismiss for failure to state a claim.

### POINT V

### PLAINTIFF HAS ALLEGED VIABLE 42 USC §1983 SEVENTH CAUSE OF ACTION FOR FAILURE TO INTERVENE AGAINST DEFENDANTS FERRIGNO, GIANCURSIO, WIATER, MUSCATO, CIMINELLI AND JOHN DOES 1-20

Law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. Terebesi v. Torreso, 764 F3d 217, 243 (2nd Cir. 2014), citing Anderson v. Branen, 17 F3d 552, 557 (2nd Cir. 1994). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer observes the constitutional violation and has sufficient time to act to prevent it. Figueroa v. Mazza, 825 F3d 89, 106 (2nd Cir. 2016).

Based on the allegations alleged in the Amended Complaint, the Defendant Officers observed or had reason to know that excessive and deadly force was used against Plaintiff, that Plaintiff had been unjustifiably arrested and that unconstitutional violations had been committed by the Defendant Officers. Plaintiff alleged that Defendant Muscato failed to intervene to protect his constitutional rights when he refused to check Plaintiff for gun powder residue after two requests were made before he was criminally charged. (Amended Complaint, para. 354). Plaintiff also alleged that Defendant Ciminelli failed to intervene to protect Plaintiff's constitutional rights knowing of Defendant Ferrigno's extensive history of past citizen complaints, his propensity to give false sworn statements and he failed to intervene to independently investigate and substantiate the accusations made against Plaintiff. (Amended Complaint, para. 355). Plaintiff alleged that the Defendants herein knew and/or had reason to know that unlawful excessive and deadly force was used on Plaintiff, that Plaintiff had been unjustifiably arrested, criminally charged, imprisoned, maliciously prosecuted, that Shotspotter audio and other evidence was concealed, destroyed, fabricated and/or altered at the request of the Rochester Police Department and the Defendant Officers,

that there was a realistic opportunity for the Defendant Officers to intervene to prevent

the harm to Plaintiff from occurring but they failed to do so. (Amended Complaint, paras.

357-358). Based on the foregoing, a legally sufficient claim has been alleged against

the Defendant Officers for Failure To Intervene under 42 USC §1983 warranting the

denial of Defendants' motion to dismiss for failure to state a claim.

### POINT VI

### PLAINTIFF HAS ALLEGED A VIABLE 42 USC §1983 FOURTH CAUSE OF ACTION FOR MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS

To prevail on a claim of malicious prosecution, four elements must be shown: (1)

the defendant initiated a prosecution against plaintiff, (2) without probable cause to

believe the proceeding can succeed, (3) the proceeding was begun with malice and (4)

the matter terminated in plaintiff's favor. Ricciuti v. City of New York, 124 F3d 123, 130

(2nd Cir. 1997), citing O'Brien v. Alexander, 101 F3d 1479, 1484 (2nd Cir. 1996). To

maintain a §1983 claim for malicious prosecution under the Fourth Amendment, a

plaintiff is required to show a seizure or other perversion of proper legal procedures

implicating his personal liberty and privacy interests under the Fourth Amendment.

Washington v. County of Rockland, 373 F3d 310, 316 (2nd Cir. 2004). The

deprivation of liberty – the seizure – must have been effected "pursuant to legal

process". Singer v. Fulton County Sheriff, 63 F3d 110 (2nd Cir. 1995), cert denied 517

US 1189 (1996), citing Heck v. Humphrey, 512 US 477 (1994). Claims for malicious

prosecution under §1983 are substantially the same as claims for malicious prosecution

under state law. Jocks v. Tavernier, 316 F3d 128, 134 (2nd Cir. 2003).

The allegations in Count IV of the Amended Complaint clearly set forth that

Defendants (1) initiated a prosecution against Plaintiff, (2) without probable cause to

believe the proceeding can succeed, (3) the proceeding was begun with malice and (4)

the matter terminated in the Plaintiff's favor. Plaintiff alleged that the Defendants worked

in concert to fabricate and falsify evidence and secure false charges against Plaintiff

resulting in Plaintiff being wrongfully charged and prosecuted for crimes which lacked

probable cause and which resulted in Plaintiff's unlawful confinement and prosecution.

(Amended Complaint, paras. 316-319). Plaintiff alleged that Defendants knew probable

cause did not exist to arrest and prosecute Plaintiff since no witnesses saw Plaintiff

possess a handgun, there was no physical evidence showing Plaintiff ever had

possession of the alleged weapon or fired it, since gun powder residue testing of

Plaintiff was refused after Plaintiff requested it, since the Rochester Police Department

had to call Shotspotter requesting they look for additional shots after three (3) and then

four (4) shots were reported and since Shotspotter added a fifth gunshot after the

request of the Rochester Police Department. (Amended Complaint, para. 321). Plaintiff

alleged that Defendants knew that they lacked objective facts to support reasonable or

probable cause to prosecute Plaintiff but they initiated and continued the prosecution

against Plaintiff. (Amended Complaint, para. 323).  Plaintiff has alleged a legally

sufficient claim against Defendants under 42 USC §1983 for malicious prosecution

warranting the denial of Defendants' motion to dismiss for failure to state a claim.

## POINT VII

### PLAINTIFF HAS ALLEGED A VIABLE 42 USC §1983 FIFTH CAUSE OF ACTION FOR DENIAL OF THE RIGHT TO A FAIR TRIAL AGAINST ALL DEFENDANTS

A Section 1983 plaintiff may sue for denial of the right to a fair trial based on a

police officer's fabrication of information. Ricciuti  v. New York City Transit Authority, 124 F3d 123, 130 (2nd Cir. 1997). To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that (1) an investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result. Gannett v. Undercover Officer C00039, 838 F3d 265, 277 (2nd Cir. 2016). An investigating official may be any governmental actor that investigates alleged criminal activity, which in most cases is a police officer. (Id. at 274). Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case. (Id. at 277). Fabricated evidence is material when it may effect "the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action" or could influence "the prosecutor's ... assessments of the strength of the case". Ricciuti v. New York City Transit Authority, 124 F3d 123, 129-130 (2nd Cir. 1997).  A plaintiff can establish a depravation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions. See Singer v. Fulton County Sheriff, 63 F3d 110, 117 (2nd Cir. 1995), Arbuckle v. City of New York, 2016 WL 5793741 at 10-11 (SDNY Sept. 30, 2016).

For the reasons already mentioned herein, Plaintiff has sufficiently alleged his claim for denial of the right to a fair trial based on fabrication of evidence by the Defendants. Pursuant to Gannett v. Undercover Officer C00039, 838 F3d 265, 277 (2nd Cir. 2016), Plaintiff has alleged that Defendant Officers and the Shotspotter Defendants fabricated evidence, including the Shotspotter audio and reports and police reports

that Plaintiff possessed and fired a loaded firearm and had committed felony crimes, forwarded that information to prosecutors and which was used to influence the jury's decision. Plaintiff was arrested, detained, imprisoned, charged and prosecuted in violation of his constitutional rights. (Amended Complaint, para. 340). Based on the foregoing, Defendants actively participated in denying Plaintiff the right to a fair trial based on fabrication of evidence in violation of 42 USC §1983 warranting the denial of Defendants' motion to dismiss for failure to state a claim.

## **CONCLUSION**

In light of the foregoing, the Plaintiff respectfully requests this Court to deny in its entirety Defendants' motion pursuant to FRCP 12(b)(6) for partial dismissal of the Complaint for failure to state a claim and for an order dismissing certain of Plaintiff's claims and grant such other and further relief as the Court deems just and proper.

Dated: February 19, 2019

**BURKWIT LAW FIRM, PLLC**

s/Charles F. Burkwit
Charles F. Burkwit, Esq.
Attorneys for Plaintiff Silvon S. Simmons
16 East Main Street, Suite 450
Rochester, New York 14614
(585) 546-1588
burkwitesq@aol.com

TO:   **TIMOTHY R. CURTIN, Corporation Counsel**
John M. Campolieto, Esq., of counsel
Attorneys for Defendants
City Hall Room 400A, 30 Church Street
Rochester, New York 14614-7741
(585) 428-6812
John.Campolieto@cityofrochester.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SILVON S. SIMMONS,

                        Plaintiff,               **CERTIFICATE OF SERVICE**

    vs.

                                                 **17-CV-6176 MAT-MWP**

JOSEPH M. FERRIGNO, II, SAMUEL
GIANCURSIO, MARK WIATER, CHRISTOPHER
MUSCATO, ROBERT WETZEL, MICHAEL L.
CIMINELLI, JOHN DOES 1-20, CITY OF ROCHESTER,
SHOTSPOTTER, INC., SST, INC., JOHN DOES 21-30
and PAUL C. GREENE,
                         Defendants.

---

I hereby certify that on February 19, 2019, the foregoing Memorandum of Law, dated February 19, 2019 was electronically filed with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

John M. Campolieto, Esq.
Attorney for Defendants
City of Rochester Department of Law
City Hall, Room 400-A
30 Church Street
Rochester, New York 14614-1295
Tel: (585) 428-6699
John.Campolieto@cityofrochester.gov

                         s/Charles F. Burkwit, Esq.
                         Charles F. Burkwit, Esq.
                         Attorney for Plaintiffs
                         Burkwit Law Firm, PLLC
                         16 East Main Street, Suite 450
                         Rochester, New York 14614 Tel:
                         (585) 546-1588
                         burkwitesq@aol.com