UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

SILVON S. SIMMONS,

                    Plaintiff,          6:17-CV-06176 MAT
        v.

                                        **DECISION AND ORDER**

JOSEPH M. FERRIGNO, II,
SAMUEL GIANCURSIO,
MICHAEL L. CIMINELLI,
CITY OF ROCHESTER,
MARK WIATER,
CHRISTOPHER MUSCATO,
ROBERT WETZEL,
JOHN DOES 1-20,
JOHN DOES 21-30,
SHOTSPOTTER, INC.,
SST, INC., and
PAUL C. GREENE,

                    Defendants.
─────────────────────────────────────────

## **INTRODUCTION**

    Plaintiff Silvon S. Simmons ("Plaintiff") brings this action
against defendants Joseph M. Ferrigno, II, Samuel Giancursio,
Michael L. Ciminelli, the City of Rochester, Mark Wiater,
Christopher Muscato, Robert Wetzel, John Does 1-20, John Does 21-
30, Shotspotter, Inc., SST, Inc., and Paul C. Greene pursuant to
Title 42, United States Code, Sections 1983 and 1988, alleging
violations of his civil rights under the Fourth and Fourteenth
Amendments to the United States Constitution.  Docket No. 10-1.
Plaintiff also alleges violations of New York State law, including
assault, battery, and malicious prosecution.  *Id.*

    Presently before the Court is a partial motion to dismiss
Plaintiff's amended complaint for failure to state a claim, filed

by defendants Ciminelli, the City of Rochester, Ferrigno, Giancursio, Muscato, Wetzel, and Wiater (collectively, the "City Defendants"). Docket No. 22. For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss Plaintiff's sixth cause of action for malicious abuse of process is granted. Further, the Court grants the City Defendants' motion to dismiss Plaintiff's failure to intervene claim against defendants Ferrigno, Giancursio, Wiater, and Ciminelli. The City Defendants' motion to dismiss is, in all other respects, denied.

## BACKGROUND

The following factual summary is taken from Plaintiff's first amended complaint (Docket No. 10-1). The incident in question took place on April 1, 2016. *Id*. at ¶ 56. On that date, Plaintiff, who resided at 5 Immel Street, Rochester, New York, left his home at approximately 8:55 p.m. to travel with his neighbor to a nearby store. *Id*. Plaintiff was a passenger in his neighbor's car (a gray Chevy Impala) as he traveled to and from the store. *Id*. at ¶ 57. Plaintiff and his neighbor returned the car to his neighbor's driveway at 9 Immel Street. *Id*. at ¶ 59. The entire trip lasted about thirteen minutes. *Id*. Plaintiff did not observe any police vehicles as he traveled to and from the store, and his neighbor did not receive any traffic tickets while traveling to and from the store. *Id*. at ¶¶ 58, 60.

After Plaintiff's neighbor parked in his driveway and turned off the motor, defendant Ferrigno, a City of Rochester police officer, stopped his Rochester police vehicle along the curb of the neighbor's driveway. *Id*. at ¶¶ 14, 62. Defendant Ferrigno exited his vehicle, shined a "bright spotlight" at Plaintiff, had his gun drawn, and began running at Plaintiff. *Id*. at ¶ 70. Plaintiff was blinded by the spotlight, and defendant Ferrigno did not state that he was a police officer. *Id*. at ¶¶ 71, 72. Plaintiff was unable to identify who was chasing him with a gun, and ran down the driveway towards his backyard at 5 Immel Street. *Id*. at ¶¶ 73-76. Plaintiff was not armed with a gun or any weapon, and he did not make any threatening actions toward defendant Ferrigno. *Id*. at ¶¶ 77, 78.

As Plaintiff was running away from defendant Ferrigno, Ferrigno fired four gunshots at Plaintiff with his police-issued Glock .45 caliber firearm, striking Plaintiff three times. *Id*. at ¶ 86. The shots hit Plaintiff in his back, left buttock, and right upper leg. *Id*. at ¶ 87.

After he was shot, Plaintiff dove over a fence and into his backyard, and attempted to crawl to his back door. *Id*. at ¶ 89. Because he was unable to reach the back door of his home, Plaintiff feared for his life and decided to "play dead." *Id*. at ¶ 90. Thereafter, when defendant Ferrigno observed Plaintiff breathing, he kicked Plaintiff in his back multiple times, pointed the gun at

Plaintiff's head, and said "I should just finish you off."  *Id.* at ¶¶ 92-94.

Defendant Giancursio arrived on the scene at Immel Street. *Id.* at ¶¶ 100, 132.  Giancursio searched and handcuffed Plaintiff, and was unable to locate any firearm "underneath" him.  *Id.* at ¶¶ 113, 114.  Thereafter, Ferrigno and/or Giancursio dragged Plaintiff further into his backyard.  *Id.* at ¶ 116.

Defendant Ferrigno made a "shots fired" call to dispatch, after which additional City of Rochester police officers arrived on scene.  *Id.* at ¶ 137.  During a search of the scene, a Sturm Ruger P85 9 mm handgun was found on the ground in the backyard area of 5-7 and/or 9 Immel Street.  *Id.* at ¶ 140.  The handgun did not belong to Plaintiff, and he never possessed the handgun.  *Id.* at ¶¶ 144, 145.  Officers also located four shell casings from defendant Ferrigno's police-issued handgun, which were moved from the driveway area and into the backyard.  *Id.* at ¶¶ 148, 151.  In addition to a spent bullet casing found inside the chamber of the Ruger handgun, there were no discharged bullets or other casings recovered from that scene, nor was there any objective evidence that the Ruger firearm had recently been fired.  *Id.* at ¶¶ 152-155.

Plaintiff was taken into police custody by defendants Ferrigno, Giancursio, and Muscato.  *Id.* at ¶ 156.  As he was being loaded into an ambulance, Plaintiff overheard defendant Ferrigno accuse Plaintiff of firing a gun at him.  *Id.* at ¶ 157.  Plaintiff

-4-

therefore requested that defendant Muscato and other City of
Rochester police officers check his hands for gunpowder residue;
however, they refused. *Id*. at ¶¶ 158, 159. Neither Plaintiff's
clothing, nor his person, was ever tested for gunpowder residue.
*Id*. at ¶¶ 160, 161.

Plaintiff was admitted to Strong Memorial Hospital in critical
condition. *Id*. at ¶ 162. While at the hospital, Plaintiff again
asked the officers, including officer Muscato, to check his hands
for gunpowder residue. *Id*. at ¶ 163. Plaintiff's requests were
again denied. *Id*. at 163, 164. During his stay at the hospital,
Plaintiff was intubated and placed on a ventilator. *Id*. at ¶ 168.
After Plaintiff was taken off the ventilator on April 4, 2016,
investigators began interrogating Plaintiff, and attempted to
coerce a false confession from him, even after Plaintiff had
requested an attorney. *Id*. at ¶ 169. A judge later determined
that Plaintiff's hospital statements were inadmissible at trial,
because Plaintiff was denied his request for an attorney. *Id*. at
¶ 170.

On April 5, 2016, Plaintiff was arraigned at the hospital and
charged with the following: attempted aggravated murder; attempted
aggravated assault on a police officer; and two counts of criminal
possession of a weapon in the second degree. *Id*. at ¶ 171. These
charges were based on Defendants' alleged false accusations that
Plaintiff possessed and fired the Ruger handgun at defendant

Ferrigno.  *Id.* at ¶ 172.  Plaintiff was discharged from the hospital on April 11, 2016, and immediately transferred to the Monroe County Jail, where he remained until the end of his criminal trial on October 26, 2017.  *Id.* at ¶ 177.

DNA testing of the Ruger handgun excluded Plaintiff as a possible contributor to the DNA mixture obtained from the handgun, and Plaintiff's fingerprints and DNA were not detected on the handgun.  *Id.* at ¶¶ 180, 181.  When the handgun was tested by the crime lab, it was determined to be a properly-functioning firearm, and all bullet casings had been discharged from the gun.  *Id.* at ¶¶ 183-85.

Plaintiff's criminal trial included evidence from defendants Shotspotter, Inc., and Greene, the manager of forensic services for Shotspotter (hereinafter, the "Shotspotter Defendants").  *Id.* at ¶¶ 196-249.  Shotspotter is an "acoustic gunshot detection and location system with sensors set in undisclosed geographic locations of the City of Rochester to detect and pinpoint locations where gunshot or gunfire activity occurs."  *Id.* at ¶ 196.  Defendant Greene testified as to Shotspotter's reliability and accuracy.  *Id.* at ¶ 212.

According to the amended complaint, on April 1, 2016, the Shotspotter system was in "squelch mode," and did not alert the Rochester Police Department or 911 that there had been a shooting in the vicinity of Immel Street.  *Id.* at ¶ 221.  Accordingly,

defendant Wetzel informed Shotspotter via email correspondence of an officer-reported shooting in the area of 10 Immel Street, where approximately three to five rounds were fired. *Id*. at ¶ 222.

Defendants Wiater and Wetzel, City of Rochester police officers, also testified at Plaintiff's trial regarding the Shotspotter evidence. Defendant Wiater testified that the Shotspotter system initially detected four gunshots; however, between 12:30 a.m. and 1:00 a.m. on April 2, 2016, he requested that Shotspotter open a larger window of time to see if any other gunfire had been detected. *Id*. at ¶¶ 234, 235. Defendant Wetzel testified that, thereafter, on April 2, 2016, Shotspotter responded to him that they found a fifth gunshot after the request. *Id*. at ¶ 240. Shotspotter issued a Detailed Forensic Report on April 7, 2016, which gave the times for the discharge of five rounds, which served to falsely implicate Plaintiff as shooting one of the rounds. *Id*. at ¶ 241.

Defendant Green further testified that "there [was] no way to go and look at the original file that was recorded and there [was] no way to listen to all the audio" from the date of the shooting. *Id*. at 245. Plaintiff contends that the defendants, including Shotspotter, Inc., and/or SST, Inc., the City of Rochester, the Rochester Police Department, and the defendant officers, "lost, deleted and/or destroyed the spool and/or other information

containing sounds and/or other information pertaining to [the shooting.]" *Id*. at ¶¶ 248, 249.

Following a jury trial which began on October 2, 2017, and ended on October 26, 2017, Plaintiff was acquitted of the attempted murder, attempted aggravated assault, and one of the criminal possession of a weapon charges. *Id*. at ¶ 251. However, Plaintiff was convicted of the other criminal possession of a weapon charge. *Id*. at ¶ 253. The conviction was based on defendant Greene's testimony that five shots were fired on April 1, 2016. *Id*. at ¶ 254. During his sentencing, the Honorable Christopher Ciaccio, a Monroe County Court Judge, reversed and set aside the jury's weapon conviction. *Id*. at ¶ 256. Judge Ciaccio found that the Shotspotter evidence was unreliable as scientific evidence, and ordered a new trial. *Id*. The prosecution dropped the charges because, without the Shotspotter evidence, it could not establish that the firearm was loaded at the time it was possessed by Plaintiff. *Id*. at ¶ 259. The Court dismissed the Indictment, and the proceedings were terminated in Plaintiff's favor. *Id*. at ¶ 260.

## PROCEDURAL HISTORY

Plaintiff filed his complaint against the above-mentioned defendants on March 27, 2017. Docket No. 1. Thereafter, on August 27, 2018, Plaintiff filed an amended complaint. Docket No. 10. On November 19, 2018, defendants Greene, SST, Inc., and Shotspotter,

Inc., filed an answer to the amended complaint. Docket No. 21. The City Defendants filed their partial motion to dismiss the complaint on November 20, 2018, which seeks dismissal of Plaintiff's third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action (conspiracy to violate Plaintiff's civil rights; malicious prosecution; denial of the right to a fair trial; malicious abuse of process; failure to intervene; failure to implement policies, customs, and practices; supervisory/*Monell* liability), as well as dismissal of the City of Rochester and former Police Chief Ciminelli from the action. Docket No. 22-1. Plaintiff filed response papers on February 19, 2019. Docket No. 37.

## **DISCUSSION**

**I.**      **Standard**

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

relief." *Id.* (internal citations and quotation macrks omitted). Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679.

II.   **Conspiracy to Violate Plaintiff's Civil Rights (Plaintiff's Third Cause of Action)**

The City Defendants contend that Plaintiff's third cause of action, conspiracy to violate his civil rights, must be dismissed because: (1) there is no evidence in the record regarding collusion between any of the named parties, entities, or agencies; (2) a conspiracy under Section 1985 must be motivated by some class-based animus; and (3) Plaintiff's claim is barred by the intra-corporate conspiracy doctrine. Docket No. 22-2 at 13-14. In response, Plaintiff contends that he adequately alleged a conspiracy against the Defendants and, because the conspiracy involved all of the defendants - including both the City Defendants, Shotspotter, and defendant Greene - the intra-corporate conspiracy doctrine does not apply. Docket No. 37 at 18-20.

"To prevail on a conspiracy claim under § 1983, the plaintiff must show '(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages.'" *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "Vague and conclusory allegations that defendants have engaged in a conspiracy must be

dismissed. . . .   To state a conspiracy claim, plaintiff must provide some factual basis supporting a meeting of the minds. Thus, plaintiff must make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express[ed] or tacit, to achieve the unlawful end." *Ivery*, 284 F. Supp. 3d at 439 (internal quotations and citations omitted) (first alteration in original).

As to the City Defendants' first argument that there is "no evidence in the record" regarding collusion between them, the Court notes that this is not the standard on a motion to dismiss. Plaintiff is not required to present any evidence at this stage of the case; rather, the Court must take as true the allegations in Plaintiff's amended complaint.   Here, the amended complaint contains allegations that the City Defendants conspired with the Shotspotter Defendants to present evidence at trial that five gunshots - rather than four gunshots - were fired in the vicinity of Immel Street, in an effort to make it appear that Plaintiff had fired one of the shots.   *See* Docket No. 10-1 at ¶¶ 196-249. Plaintiff's allegations are sufficiently detailed, as they explain when this information was provided by the City Defendants to the Shotspotter Defendants and how it was entered into the Shotspotter system.   Because Plaintiff is not required to present evidence substantiating his claims at this stage of the litigation, the Court declines to dismiss Plaintiff's conspiracy claim on this basis.

As to the City Defendants' argument regarding the intra-corporate conspiracy doctrine, the Court agrees with Plaintiff that it does not apply in this instance. "Under [the intra-corporate conspiracy] doctrine, 'officers, agents and employees of a single corporate entity are legally incapable of conspiring together.'" *Ivery*, 284 F. Supp. 3d at 440 (quoting *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999)). As noted above, Plaintiff's third cause of action is alleged against "All Defendants," and the amended complaint contains allegations that the City Defendants conspired with the Shotspotter Defendants to violate Plaintiff's civil rights. In other words, the amended complaint does not allege a conspiracy amongst the City Defendants alone. Accordingly, the intra-corporate conspiracy doctrine does not bar Plaintiff's conspiracy claim.

Plaintiff does not respond to the aspect of the City Defendants' argument that the conspiracy must be motivated by a class-based animus. The Court notes that the allegations regarding a class-based animus are required to state a claim under section 1985 for conspiring to violate a plaintiff's right to equal protection under the law - not a general 1983 conspiracy, which Plaintiff alleges in his amended complaint (*see* Docket No. 10-1 at p. 44). The requirements for alleging a cause of action under each of these sections are distinct. *See, e.g., Jennings v. Decker,* 359 F. Supp. 3d 196, 214 (N.D.N.Y. 2019) ("As a final point, it is worth noting that the Court could interpret Plaintiff's Complaint as attempting to allege both a 'civil' conspiracy pursuant to §

1983 and a 'race-based' conspiracy pursuant to § 1985. . . . *The legal standards applicable to those statutory schemes are slightly different, in particular because (1) a civil conspiracy need not include allegations of racial animus*. . . .") (internal quotations and citations omitted) (emphasis added); *McCloud v. Roy*, No. 9:08-CV-839(LEK/ATB), 2010 WL 985731, at *10 n.2 (N.D.N.Y. Feb. 22, 2010) ("The protection afforded by section 1985 is 'narrower' than that afforded by section 1983 because section 1985 requires the conspiracy to be motivated by a racial or other class-based animus."), *adopted*, 2010 WL 985737 (N.D.N.Y. Mar. 16, 2010); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 382 (S.D.N.Y. 2009) ("In other words, a Section 1985 conspiracy differs from a Section 1983 conspiracy in that the plaintiff must also provide evidence that Defendants acted in concert with a racial or discriminatory animus.") (internal quotations and citation omitted).  Because Plaintiff alleges a civil conspiracy under Section 1983, he is not required to allege a class-based animus, and the City Defendants' motion to dismiss Plaintiff's conspiracy claim on this basis is denied.

## III. **Abuse of Process (Plaintiff's Fourth, Fifth, and Sixth Causes of Action)**

The City Defendants next contend that Plaintiff's claims for abuse of process fail.  Docket No. 22-2 at 11-13.  Specifically, in connection with his sixth cause of action for malicious abuse of process, the City Defendants argue that Plaintiff has failed to allege that they abused process "in order to obtain a collateral

objective that is outside the legitimate ends of the process,"
*i.e.*, for an improper purpose. *Id*. at 12.  The City Defendants
also argue that Plaintiff's fourth and fifth cause of action
(malicious prosecution and denial of the right to a fair trial) are
duplicative of the malicious abuse of process claim and therefore
should be dismissed.  *Id*. at 13.  In response, Plaintiff argues
that his allegations, which include that the defendants issued
criminal process against him by fabricating and falsifying evidence
in order to create a justification and cover up for their own
actions, satisfy the third element of a claim for malicious abuse
of process.  Docket No. 37 at 17-18.

"[S]ection 1983 liability may lie for malicious abuse of
criminal process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).
"In New York, 'a malicious abuse-of-process claim lies against a
defendant who (1) employs regularly issued legal process to compel
performance or forbearance of some act (2) with intent to do harm
without excuse of justification, and (3) in order to obtain a
collateral objective that is outside the legitimate ends of the
process.'" *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003)
(quoting *Cook*, 41 F.3d at 80).

With regard to the third element, a "collateral objective is
not the same as a malicious motive and must exist beyond or in
addition to [the] criminal prosecution, but it is usually
characterized by personal animus.  Such an objective may include
infliction of economic harm, extortion, blackmail [or] retribution.
In other words, [a]buse of process resembles a form of extortion,

by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process necessitates." *Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (internal quotations and citations omitted) (alterations in original).

The City Defendants characterize Plaintiff's allegations regarding the collateral objective that defendants "issued criminal process to avoid discipline" and for retaliation. Docket No. 22-2 at 12. Plaintiff alleges the following information, which is relevant to the "collateral objective" requirement of his malicious abuse of process claim:

> Defendants caused Plaintiff to be arrested and prosecuted in order to obtain collateral objective outside the legitimate ends of the legal process, to wit: to create a justification for and cover up Defendant Ferrigno's false arrest and use of unlawful and deadly force against Plaintiff, to secure Defendant Ferrigno's and City of Rochester's exonerations for any police misconduct and constitutional rights violations against Plaintiff relating to the incident alleged herein, to avoid accountability for the Defendant officers' unlawful use of deadly and/or excessive force and/or other misconduct against Plaintiff, to cover up the Defendant officers' misconduct, abuse of authority and to retaliate against Plaintiff and thereby violated Plaintiff's right to be free from malicious abuse of process.

Docket No. 10-1 at ¶ 348.

The Court agrees with the City Defendants that Plaintiff has failed to state a claim for malicious abuse of process under New York law because he has not plausibly alleged the "collateral purpose" element of such a claim. Plaintiff alleges that the City Defendants caused him to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the

legal process; namely, to cover up and avoid discipline for their abuse of authority and acts of brutality, and to retaliate against him for the injuries they caused to themselves.  These allegations support at most an improper motive - not an improper purpose. *See, e.g., Gilliard v. City of N.Y.*, No. 10-CV-5187(NGG)(CLP), 2013 WL 521529, at *14 (E.D.N.Y. Feb. 11, 2013) ("At most, [d]efendants issued the summons with the improper motive of covering up their abuse of authority in arresting plaintiff . . . [,][b]ut an improper motive does not equate to an improper purpose; the [d]efendants used the process of the court for the purposes for which the law created[.]") (internal quotations and brackets omitted); *Dotson v. Farrugia*, No. 11 Civ. 1126(PAE), 2012 WL 996997, *8 (S.D.N.Y. Mar. 26, 2012) (plaintiff's contention that the summons was issued in retaliation "for his perceived affront, and to attempt to cover up the wrongdoing of the [c]ourt [o]fficers in having arrested plaintiff" was insufficient to state a claim for abuse of process; "[t]hese allegations, . . . even if taken as true, do not support a claim for abuse of process, because they allege only an improper motive, which is not actionable, rather than an ulterior collateral purpose or objective") (internal quotations omitted); *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010) (dismissing malicious abuse of process claim where the plaintiff failed to allege that the defendants "engaged in the legal process to compel performance or forbearance of some act. . . .  There is neither any explicit charge of extortion, blackmail, retribution, or similar extraneous harmful goal, nor are

there any facts pleaded upon which an inference of such a motive on the part of Defendants could reasonably be inferred."). Accordingly, the amended complaint fails to state a plausible claim for malicious abuse of process, and the City Defendants' motion to dismiss Plaintiff's sixth cause of action is granted.

However, the Court declines to dismiss Plaintiff's claims for malicious prosecution and denial of the right to a fair trial.  The City Defendants' sole argument why these causes of action should be dismissed is that they are "duplicative of the malicious abuse of process claim and therefore should be dismissed."  Docket No. 22-2 at 13.  The City Defendants do not make any additional, substantive argument why these particular causes of action should be dismissed.

Although the malicious abuse of process claim is dismissed, taking Plaintiff's allegations as true, he has adequately alleged claims for malicious prosecution and denial of the right to a fair trial.  *See Manbeck*, 640 F. Supp. 2d at 369 ("The elements of malicious prosecution under New York law are: '(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice.'") (quoting *Kinzer v. Jackson*, 316 F.3d 139, 142 (2d Cir. 2003)); *Folk*, 243 F. Supp. 3d at 374 ("A person is deprived of [his] constitutional right to a fair trial when 'an (1) investigating official (2) fabricates evidence (3) that is likely

to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result.'") (quoting *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012)).  Accordingly, the Court denies the City Defendants' motion to dismiss Plaintiff's claims for malicious prosecution and denial of his right to a fair trial.

IV.      **Failure to Intervene (Plaintiff's Seventh Cause of Action)**

The City Defendants contend that the Court should dismiss Plaintiff's failure to intervene claim against defendants Ferrigno, Giancursio, Wiater, Muscato, Ciminelli, and John Does 1-20, because (1) when defendant Ferrigno was using force against Plaintiff to effectuate his arrest, there were no other law enforcement officers present, and therefore no realistic opportunity to intervene, and (2) the law does not recognize an officer having to intervene on himself and, therefore, the failure to intervene claim must be dismissed as to defendant Ferrigno.  Docket No. 22-2 at 14-15.  The City Defendants further argue that Plaintiff's failure to intervene claim against defendant Ciminelli is "completely unsubstantiated" by any allegation in the amended complaint.  *Id.* at 15.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force

by someone other than the individual and that the defendant under consideration: (i) possessed actual knowledge of the use by another of excessive force; {ii) had a realistic opportunity to intervene and prevent the harm from occurring; and (iii) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Hamilton v. Robinson*, No. 6:12-cv-06449(MAT), 2018 WL 4334769, at *7 (W.D.N.Y. Sept. 11, 2018) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)).

In *Figueroa v. Mazza*, the Second Circuit held that the essential inquiry when evaluating a failure to intervene claim is whether "under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." 825 F.3d 89, 107-08 (2d Cir. 2016) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)). The Circuit Court cautioned against any bright-line rule based on the duration of an alleged assault, reasoning that, "[i]n each case, the question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Id*. at 107.

Defendant's argument is based on only one aspect of Plaintiff's failure to intervene theory, *i.e.*, the City Defendants' failure to intervene when defendant Ferrigno used excessive force against Plaintiff on Immel Street. However, a more thorough review

of the amended complaint reveals that Plaintiff alleges that the City Defendants failed to intervene on Plaintiff's behalf on several occasions throughout his arrest and prosecution. *See* Docket No. 10-1 at ¶ 354 ("Defendant Muscato failed to intervene to protect Plaintiff's constitutional rights when he refused to check Plaintiff for gun powder residue after Plaintiff requested this twice before he was criminally charged."); *id.* at ¶ 355 ("Defendant Ciminelli failed to intervene to protect Plaintiff's constitutional rights when knowing of Defendant Ferrigno's extensive history of past citizen complaints and his propensity to give false sworn statements, failed to intervene to independently investigate and substantiate the accusations made against Plaintiff."); *id.* at ¶ 357 (the defendants who failed to intervene knew that excessive force was used against Plaintiff, that he had been unjustifiably arrested, charged, and prosecuted, and that certain evidence was concealed, destroyed, fabricated and/or altered).

However, even these additional allegations do not support a failure to intervene claim against several of the above-mentioned defendants, including defendants Ferrigno, Giancursio, Wiater, and Ciminelli. As to defendants Ferrigno, Giancurso, and Wiater, a careful review of the allegations contained in the amended complaint support that these individuals, together, violated Plaintiff's constitutional rights. In other words, the amended complaint alleges that these defendants took an active a role in depriving Plaintiff of certain constitutional liberties - not that they were "tacit collaborators" in the unlawful conduct of another.

Although the amended complaint contains the general allegation that defendant Ciminelli failed to intervene on Plaintiff's behalf, it does not include specific facts supporting this allegation.  In other words, the amended complaint lacks factual content allowing the Court to draw the reasonable inference that defendant Ciminelli, during the course of Plaintiff's arrest and prosecution, was a tacit collaborator and failed to intervene on Plaintiff's behalf.

The Court notes that Plaintiff does allege specific facts supporting a failure to intervene claim against defendant Muscato, who refused to check Plaintiff for gunpowder residue after Plaintiff requested that he do so on multiple occasions.  *See* Docket No. 10-1 at ¶¶ 159, 159, 163, 164, 354.  As noted above, the City Defendants fail to address this aspect of Plaintiff's failure to intervene claim.  *See Vann v. City of Rochester*, No. 6:18-cv-06464(MAT), 2019 WL 1331572, at *10 (W.D.N.Y. Mar. 25, 2019) ("Vann does not allege that Mintz should have intervened to stop the use of excessive force or unlawful arrest; rather, he contends that her failure to intervene occurred in the context of her collecting and preserving evidence.  Specifically, Vann alleges that Mintz watched the security camera videotape but, after being ordered by Angelo to preserve only a specific portion of the videotape, Mintz "failed to intervene and copy, collect, and preserve" the portions that allegedly were favorable to Vann.  Since the City Defendants' argument for dismissing the failure to intervene claim does not address the Amended Complaint's actual allegations against Mintz,

the request to dismiss this claim is denied."). Accordingly, the Court grants the City Defendants' motion to dismiss Plaintiff's failure to intervene claim against defendants Ferrigno, Giancursio, Wiater, and Ciminelli. However, Plaintiff's failure to intervene claim may go forward against defendant Muscato at this stage of the litigation.

**V.        Plaintiff's *Monell* and Supervisory Liability Claims**

Plaintiff's eighth cause of action seeks to impose liability against the City of Rochester, for failing to implement policies, customs, and practices. Docket No. 10-1 at 58. Similarly, Plaintiff's ninth cause of action seeks to impose liability against the City of Rochester, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), otherwise known as "*Monell* liability." Docket No. 10-1 at 61. Plaintiff's ninth cause of action also seeks to impose liability against defendant Ciminelli, under a theory of supervisory liability. The Court addresses each of these claims in turn.

**A.    *Monell* Liability**

The City Defendants contend that Plaintiff's claims alleging municipal liability must be dismissed. Specifically, the City Defendants contend that Plaintiff fails to allege that he was injured by any City policy; rather, he simply alleges that he was injured by the City's deliberate indifference in its failure to train and discipline its officers and adequately investigate use of force allegations. Docket No. 22-2 at 4.

The Supreme Court's decision in *Monell* "extend[ed] liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "Thus, 'where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.'" *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 476 (E.D.N.Y. 2013) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)); *see also Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995) ("A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference.").

In this case, the Court finds that Plaintiff has adequately alleged that there was a pattern of City of Rochester police officers engaging in unlawful, excessive use of force, and that the City did not meaningfully respond to this misconduct, thus

demonstrating for the purpose of this motion, the requisite deliberate indifference to establish a municipal custom or policy. Indeed, Plaintiff has identified several instances between 2002 and 2016, during which Rochester police officers - including defendant Ferrigno - used excessive force during the course of an arrest, and/or filed charges based on false and fabricated information. *See* Docket No. 10-1 at ¶¶ 382-405. Further, Plaintiff affirmatively alleges that the City was aware of each of these instances, failed to perform a meaningful investigation into them, and failed to discipline the involved officers, including in cases where there was cell phone camera and video proof of an officer's use of excessive and unlawful force. *Id*. at ¶¶ 376, 377, 379, 380, 381, 386-391, 393, 394, 396, 402, 406, 407.[1]

In addition, Plaintiff alleges that the City fails to follow certain procedures in investigating excessive force/police misconduct cases. *Id*. at ¶¶ 364(d)-(f), 374(H), (I). Instead, Plaintiff alleges that the City's investigatory procedures are conducted, controlled, and influenced internally, with the purpose of justifying the use of excessive force and/or other

---

[1]

The City Defendants contend that the Court should not consider these other, "unsubstantiated" instances of excessive use of force. Docket No. 22-2 at 6-7. However, Plaintiff's amended complaint does not present these instances as untrue or unsubstantiated, and the Court must take as true the allegations contained in the amended complaint. The other instances of constitutional violations described by Plaintiff in the amended complaint - which include excessive use of force and fabrication of evidence - are similar to those involved in his case. The Court finds that these allegations are relevant to Plaintiff's claim for municipal liability.

constitutional violations committed by City of Rochester police officers. *Id.* at ¶¶ 364(e), (j), 374(H), (J). The Court finds that these allegations, which it is required to take as true at this stage of the proceedings, are sufficient to state a claim under *Monell* with respect to the City's alleged deliberate indifference to the excessive use of force by its police officers. *See, e.g., Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*"); *Collins v. City of N.Y.*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (claim that district attorney's failure to discipline subordinates who engaged in prosecutorial misconduct amounted to a custom or policy was facially plausible); *Guzman v. City of N.Y.*, No. 08-CV-2853 FB VVP, 2010 WL 4025563, at *4 (E.D.N.Y. Oct. 13, 2010) (allegation that municipality was deliberately indifferent to false arrests made by police officers was sufficient to plead that plaintiff "was injured because of the City's failure to supervise and/or discipline its employees"). Accordingly, the City Defendants' motion to dismiss Plaintiff's claim for *Monell* liability against the City of Rochester is denied.

### B.   **Supervisory Liability**

The City Defendants next argue that Plaintiff's supervisory liability claim against defendant Ciminelli must be dismissed. Specifically, the City Defendants contend that the amended

complaint does not include allegations that defendant Ciminelli was directly involved in the violation of Plaintiff's rights, was made aware of alleged violations, created a policy which resulted in an alleged violation, exhibited gross negligence in supervising any of the officers, or was deliberately indifferent to the possibility that Plaintiff would be harmed.   Docket No. 22-2 at 10.   The City Defendants further argue that Plaintiff has failed to allege facts supporting that defendant Ciminelli was personally involved in the constitutional deprivations caused to Plaintiff.   *Id.* at 11.

With regard to establishing supervisory liability, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (internal quotations and citations omitted). Rather, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).   Supervisor liability can be shown by: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citations omitted).

The amended complaint contains several allegations relevant to Plaintiff's claim for supervisory liability against defendant Ciminelli, which include both direct conspiratorial conduct against Plaintiff, as well as his failure to supervise subordinates and sanctioning unconstitutional conduct. *See* Docket No. 10-1 at ¶¶ 26, 34 (Defendant Ciminelli, as Chief for the City of Rochester Police Department, was responsible for the supervision, training, and retention of defendants Ferrigno, Giancursio, Wiater, Muscato, Wetzel, and John Does 1-20, and for making and implementing policies, customs and practices used by law enforcement officers); *id.* at ¶¶ 175, 176 (Ciminelli conspired with defendant Ferrigno and other police officers to "concoct a fabricated account of the events occurring the evening of April 1, 2016," including the reasons Ferrigno shot Plaintiff); *id.* at ¶ 263 (following the April 1, 2016 incident, the defendant officers were never reprimanded, suspended, or terminated from their employment by Ciminelli); *id.* at ¶ 303 (the defendant officers and Ciminelli concocted a story that "on the evening of April 1, 2016, Defendants Ferrigno and Giancursio were actively and aggressively pursuing a menacing subject named Ivory Golden, who drove a gray or tan Chevy Impala and that they thought Plaintiff was said suspect, to justify the pursuit, arrest and use of force against Plaintiff."); *id.* at ¶ 304 (the defendant officers and Ciminelli "conspired and agreed to falsely accuse Plaintiff of possessing and firing a gun at Defendant Ferrigno, by fabricating and falsifying evidence which they then forwarded to the Monroe County District Attorney's Office

to cause Plaintiff to be wrongfully imprisoned and prosecuted for felony crimes."); *id.* at ¶ 374 (Ciminelli has condoned a pattern of brutality and misconduct committed by City of Rochester police officers); *id.* at ¶ 395 (defendant Ciminelli recently promoted defendant Ferrigno to a position on the Professional Standards Section, the internal affairs review board for the Rochester Police Department).

Further, in support of the allegations regarding defendant Ciminelli's failure to supervise subordinates and sanctioning unconstitutional conduct, Plaintiff identifies the aforementioned instances between 2002 and 2016, during which Rochester police officers used excessive force during the course of an arrest, and/or filed charges based on false and fabricated information. *See* Docket No. 10-1 at ¶¶ 382-405. Plaintiff alleges that Ciminelli - who was responsible for training, supervising, and disciplining these officers - therefore had knowledge of, and sanctioned, these incidents and unconstitutional practices. *Id.* at ¶¶ 373, 374, 376, 379, 380.

Accordingly, contrary to the City Defendants' argument, defendant Ciminelli is not named in the complaint solely by virtue of his position as Chief of Police. Rather, the specific allegations in the amended complaint, which the Court is required to take as true, allege that defendant Ciminelli was directly involved in conspiring with the defendant officers to violate Plaintiff's civil rights. *C.f. Shenko v. Federal Bureau of Investigation*, No. 6:14-CV-01595(LEK/TWD), 2016 WL 11477430, at *9

(N.D.N.Y. Feb. 29, 2016) ("Here, Plaintiff's Second Amended Complaint is devoid of factual allegations that Police Chief Inserra directly participated in any of the alleged constitutional violations, and Plaintiff has failed to plead any facts to establish supervisory liability under Colon."), *adopted*, 2016 WL 1558462 (N.D.N.Y. Apr. 18, 2016).  The amended complaint also alleges that, despite defendant Ciminelli's knowledge of specific, unconstitutional acts on the part of the defendant officers, he failed to properly supervise and discipline these officers, which resulted in injuries to Plaintiff.  *See Brantley v. Fischer*, No. 9:12-CV-1051(NAM/RFT), 2013 WL 5466790, at *11 (N.D.N.Y. Sept. 30, 2013) (construing all evidence in the plaintiff's favor, his allegations that supervisory defendant was responsible for the general oversight of the facility, its agents, and employees, and was aware that the plaintiff was denied medical treatment and failed to remedy the situation, were sufficient, "at this early stage" to plausibly allege a claim for supervisory liability).

In sum, the amended complaint contains sufficient, detailed allegations regarding how certain officers in the Rochester Police Department conspired to wrongfully arrest and prosecute Plaintiff, including mishandling and tampering with evidence (including the bullet casings from defendant Ferrigno's firearm and the Ruger firearm), and fabricating Shotspotter evidence supporting their version of events.  The amended complaint also affirmatively alleges that defendant Ciminelli took part in this conspiratorial conduct.  Further, the amended complaint includes specific examples

of excessive force used by City of Rochester Police Officers (including defendant Ferrigno), of which defendant Ciminelli was aware. Defendant Ciminelli, who was responsible for disciplining these officers, allegedly failed to do so, and he recently had promoted defendant Ferrigno. Taken together, the allegations in the amended complaint are sufficient to state a plausible claim under Section 1983 for supervisory liability. Whether Plaintiff will be able to substantiate his claims against defendant Ciminelli remains to be seen; however, at this stage of the litigation, Plaintiff's claim for supervisory liability against Ciminelli may go forward.

## **CONCLUSION**

For the reasons set forth above, the Court grants in part and denies in part the City Defendants' motion to dismiss, as follows.

The City Defendants' motion to dismiss Count Three of the amended complaint, for conspiracy, is denied.

The City Defendants' motion to dismiss Counts Four and Five of the amended complaint, for malicious prosecution and denial of the right to a fair trial, is denied.

The City Defendants' motion to dismiss Count Six of the amended complaint, for malicious abuse of process, is granted.

The City Defendants' motion to dismiss Count Seven of the amended complaint, for failure to intervene, is granted as to defendants Ferrigno, Giancursio, Wiater, and Ciminelli. However, the City Defendants' motion to dismiss Count Seven is denied as to defendant Muscato.

The City Defendants' motion to dismiss Counts Eight and Nine of the amended complaint, for *Monell* Liability against the City of Rochester and supervisory liability against defendant Ciminelli, is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          August 5, 2019