UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SILVON S. SIMMONS,

<em>Plaintiff,</em>

-vs-

JOSEPH M. FERRIGNO, II, SAMUEL
GIANCURSIO, MARK WIATER,
CHRISTOPHER MUSCATO, ROBERT WETZEL,
MICHAEL L. CIMINELLI, JOHN DOES 1-20,
CITY OF ROCHESTER, SHOTSPOTTER, INC.,
SST, INC., JOHN DOES 21-30, and PAUL C.
GREENE,

Civil No.: 6:17-cv-6176-FPG-MWP

<em>Defendants.</em>

## MEMORANDUM OF LAW IN SUPPORT OF
## THE SHOTSPOTTER DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BARCLAY DAMON LLP**
*Attorneys for Defendants ShotSpotter, Inc.,*
*SST, Inc., and Paul C. Greene*
Barclay Damon Tower
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone:  (585) 295-4426
Email:  psanders@barclaydamon.com

**PAUL A. SANDERS**
*of Counsel*

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.   ARGUMENT ............................................................................................................. 2

   A.   The Applicable Legal Standard .................................................................... 2

   B.   The Record Does Not Allow a Reasonable Trier of Fact to Find Fabrication ........ 2

      1.   Plaintiff's own sworn factual recitation establishes no fabrication. ........... 2

      2.   Undisputed expert testimony corroborates the lack of fabrication. ............ 6

      3.   Plaintiff cannot defeat a summary judgment motion on the asserted claims by offering mere speculation as to fabrication. ........................................... 6

      4.   Plaintiff cannot defeat summary judgment with contentions not based on personal knowledge. ................................................................................... 8

      5.   Plaintiff cannot defeat summary judgment by insinuating there were conspiratorial meetings to plan a fabrication of evidence. ......................... 8

      6.   Differences in evidence or factual accounts of the alleged crime cannot raise an issue of fact as to fabrication. ....................................................... 9

      7.   The ShotSpotter Defendants are entitled to summary judgment of no fabrication. ............................................................................................... 11

   C.   The ShotSpotter Defendants Are Entitled to Absolute or Qualified Immunity for Claims Predicated on Testimony Offered at Trial ................................................ 11

   D.   Summary Judgment is Proper on Count VI: Malicious Abuse of Process ............ 15

      1.   Plaintiff cannot satisfy the Collateral Objective element based upon the undisputed proof and law of the case. ...................................................... 15

      2.   Plaintiff cannot satisfy the Regularly Issued Service element. ................. 17

      3.   Plaintiff cannot satisfy the Intent to do Harm element. ........................... 17

   E.   Summary Judgment is Proper on Counts IV and VII for State and Federal Malicious Prosecution ................................................................................................ 17

      1.   Plaintiff cannot satisfy the Initiation element. ......................................... 18

      2.   Plaintiff cannot satisfy the No Probable Cause element. .......................... 20

   F.   Summary Judgment is Proper on Count V for Denial of a Fair Trial ................... 22

i

G.     Summary Judgment is Proper on Count III for Conspiracy ...................................24

III.     CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ........................................................................................................ 2

*Antes v. Bonura*,
2013 US Dist LEXIS 36255 (S.D.N.Y. Feb. 25, 2013) ........................................... 16

*Bailey v. City of New York*,
79 F.Supp. 3d 424 (E.D.N.Y. 2015) ........................................................................ 18

*Bennett v. Vidal*,
267 F.Supp. 3d 487 (S.D.N.Y. 2017) .................................................................. 9, 10

*Boyd v. City of N.Y.*,
336 F.3d 72 (2nd Cir. 2003) ...................................................................................... 18

*Brown v. Sears Roebuck & Co.*,
746 N.Y.S.2nd 141 (App. Div. 2002) ..................................................................... 19

*Bryson v. Macy*,
611 F.Supp.2nd 1234 (2009) ..................................................................................... 14

*Buie v. McAdory*,
341 F3d 623 (7th Cir. 2003) ...................................................................................... 12

*Cameron v. Cmty. Aid for Retarded Children, Inc.*,
335 F.3d 60 (2nd Cir. 2003) ........................................................................................ 7

*Carey v. Crescenzi*,
923 F.2nd 18 (2nd Cir. 1995) ...................................................................................... 2

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................................... 2

*Cook v. Sheldon*,
41 F.3d 73, 80 (2nd Cir. 1994) ................................................................................. 15

*Crawford v. City of New York*,
477 F.App'x. 777 (2nd Cir. 2012) .............................................................................. 7

*Creighton v. City of New York*,
2017 US Dist LEXIS 21194 (S.D.N.Y. Feb. 14, 2017) ............................................ 9

*Cunningham v. City of New York*,
   No. 17-CV-5124, 2018 U.S. Dist. LEXIS 148231, 2018 WL 4168964 (S.D.N.Y. Aug. 30,
   2018) .......................................................................................................................................... 24

*Demosthene v. City of New York*,
   831 F.App'x. 530 (2nd Cir. 2020) ............................................................................................ 7

*Douglas v. City of New York*,
   595 F. Supp.2nd 333 (S.D.N.Y. 2009) .................................................................................... 16

*Du Chateau v. Metro-North Commuter R.R. Co.*,
   688 N.Y.S.2nd 12 (App. Div. 1999) ........................................................................................ 19

*Duna v. City of New York*,
   2019 US Dist LEXIS 166865 (S.D.N.Y. Sep. 27, 2019) .................................................. 10, 22

*Espada v. Schneider*,
   522 F. Supp. 2nd 544 (S.D.N.Y. 2007) ................................................................................... 18

*Falls v. Pitt*,
   2021 US Dist LEXIS 58197 (S.D.N.Y. Mar. 26, 2021) ....................................................... 7, 8

*Fiedler v. Incandela*,
   222 F. Supp. 3d 141 (E.D.N.Y. 2016) ............................................................................... 24, 25

*Folk v. City of New York*,
   243 F.Supp. 3d 363 (E.D.N.Y. 2017) ................................................................................ 23, 24

*Gonzalez v. Delaware County*,
   2017 US Dist LEXIS 198496 (N.D.N.Y. Dec. 4, 2017) .......................................................... 19

*Greene v. City of New York*,
   2017 US Dist LEXIS 37243 (E.D.N.Y. Mar. 15, 2017) .......................................................... 11

*Harasz v. Katz*,
   239 F. Supp. 3d 461 (D. Conn. 2017) ...................................................................................... 24

*Hewitt v. City of New York*,
   2012 US Dist LEXIS 141067 (E.D.N.Y. Sep. 27, 2012) .......................................................... 10

*Hoyos v. City of New York*,
   999 F. Supp. 2nd 375 (E.D.N.Y. 2013) .............................................................................. 20, 21

*Hutchins v. Solomon*,
   2018 US Dist LEXIS 169421 (S.D.N.Y. Sep. 29, 2018) .......................................................... 23

*Jackson v. Seewald*,
   2012 US Dist LEXIS 62442 (S.D.N.Y. Mar. 14, 2012) ............................................... 18, 19, 24

*Jordan v. City of New York*,
  2017 US Dist LEXIS 112625 (S.D.N.Y. July 17, 2017) ........................................ 17

*Jovanovic v. City of New York*,
  486 F.App'x. 149 (2nd Cir. 2012) ......................................................................... 23

*Kinzer v. Jackson*,
  316 F.3d 139 (2nd Cir. 2003) ................................................................................ 18

*Lauderdale v. City of New York*,
  2018 US Dist LEXIS 45624 (S.D.N.Y. Mar. 19, 2018) .......................................... 10

*Levine v. City of New York*,
  2014 US Dist LEXIS 106257 (E.D.N.Y. July 15, 2014) .................................... 18, 19

*Longo v. Ortiz*,
  No. 15-CV-7716, 2016 U.S. Dist. LEXIS 131558, 2016 WL 5376212 (S.D.N.Y. Sept. 26,
  2016) ..................................................................................................................... 23

*Loria v. Butera*,
  2010 U.S. Dist. LEXIS 102947 (N.D.N.Y. 2010) ................................................... 24

*Maldonado v. City of New York*,
  No. 11 CIV. 3514 RA, 2014 U.S. Dist. LEXIS 26239, 2014 WL 787814 (S.D.N.Y. Feb. 26,
  2014) ..................................................................................................................... 21

*McDonough v. Smith*,
  2022 US Dist LEXIS 143055 (N.D.N.Y. Aug. 11, 2022) .................................... 7, 13

*Mills v. Barnard*,
  869 F3d 473 (6th Cir. 2017) .................................................................................. 13

*Mitchell v. County of Nassau*,
  786 F. Supp. 2nd 545 (E.D.N.Y. 2011) .................................................................. 25

*Moroughan v. Cnty. of Suffolk*,
  514 F. Supp. 3d 479, 2021 U.S. Dist. LEXIS 13138, 2021 WL 298714 (E.D.N.Y. Jan. 20,
  2021) ....................................................................................................................... 9

*Morse v. Spitzer*,
  2011 US Dist LEXIS 35014 (E.D.N.Y. Mar. 15, 2011) .......................................... 24

*Myers v. County of Nassau*,
  825 F. Supp. 2nd 359 (E.D.N.Y. 2011) .................................................................... 8

*Nieves v. Fahmy*,
  2017 U.S. Dist. LEXIS 16474 (E.D.N.Y. Feb. 6, 2017) ........................................... 6

v

*Pacicca v. Stead*,
2008 US Dist LEXIS 144923 (S.D.N.Y. Dec. 5, 2008) ........................................................ 19

*Peruta v. Town of Rocky Hill*,
640 F.Supp. 2nd 186 (D. Conn. 2009).................................................................................. 19

*San Filippo v. United States Trust Co. of N.Y.*,
737 F.2nd 246 (2nd Cir. 1984) ............................................................................................ 24

*Sandstrom v. New York*,
2020 US Dist LEXIS 30375 (WDNY Feb. 20) .................................................................... 17

*Savarese v. City of New York*,
547 F.Supp. 3d 305 (S.D.N.Y. 2021) ..................................................................................... 7

*Savino v. City of N.Y.*,
331 F.3d 63 (2nd Cir. 2003) ................................................................................................. 15

*Sherman v. City of New York*,
2019 US Dist LEXIS 83010 (E.D.N.Y. May 16, 2019) ...................................................... 25

*Simmons v. Ferrigno*,
2019 US Dist LEXIS 238423 (WDNY Aug. 5, 2019) .................................................. 15, 16

*Singer v. Fulton Cty. Sheriff*,
63 F.3d 110 (2nd Cir. 1995) ................................................................................................. 25

*Sipin v. King County*,
2009 US Dist LEXIS 52801 (WD Wash June 18, 2009, No. C08-247 RSM) ..................... 13

*Stansbury v. Wertman*,
721 F.3d 84 (2nd Cir. 2013) ................................................................................................. 20

*Starks v. City of Waukegan*,
123 F.Supp. 3d 1036 (ND Ill 2015) ............................................................................... 12, 13

*Stinson v. Gauger*,
799 F3d 833, 843 (7th Cir. 2015) ........................................................................................ 13

*Torres v. City of New York*,
2017 US Dist LEXIS 158883 (E.D.N.Y. Sep. 27, 2017)........................................... 20, 21, 22

*Waddlington v. City of N.Y.*,
971 F. Supp. 2nd 286 (E.D.N.Y. 2013) ............................................................................... 10

**Statutes**

42 U.S.C. § 1983 .............................................................................................................. passim

**Other Authorities**

Fed. R. Civ. P. 56(c) ............................................................................................................... 2

# I.    PRELIMINARY STATEMENT

After the conclusion of criminal proceedings against him, Plaintiff Silvon S. Simmons brought this action against, *inter alia*, Defendants ShotSpotter, Inc. ("ShotSpotter"), SST, Inc., and Paul C. Greene (collectively, the ShotSpotter Defendants). The causes of action interposed against the ShotSpotter Defendants are Count III (42 U.S.C. § 1983 conspiracy to violate civil rights); Count IV (42 U.S.C. § 1983 malicious prosecution); Count V (42 U.S.C. § 1983 denial of the right to a fair trial); Count VI (42 U.S.C. § 1983 malicious abuse of process); and XII (New York State Law malicious prosecution).

Each of these causes centers around Plaintiff's assertion that the ShotSpotter Defendants fabricated evidence. But this assertion is nothing more than conjecture and has no factual support. The testimony of all percipient witnesses contradicts it, and unrebutted expert testimony condemns it to fantasy. The allegations also suffer from other infirmities addressed in this Memorandum.

At the time of the shooting event central to the criminal proceedings against Mr. Simmons, the Rochester Police Department ("RPD") used a gunshot detection system provided by ShotSpotter. The system included sensors, distributed throughout Rochester, that continuously recorded audio. When an acoustic impulse characteristic of a gunshot was detected by multiple sensors, the ShotSpotter system created an incident and automatically saved audio clips associated with that incident. After the creation of the incident, it was possible for additional audio clips associated with the incident to be manually downloaded. Simmons acknowledges that the sensors recorded four gunshots from that shooting event, but generically insinuates that the ShotSpotter defendants manipulated or modified the audio clips from multiple sensors to fabricate an earlier fifth shot. Each cause of action arises from that core allegation.

Because there is simply no evidence supporting that core allegation—and the undisputed evidence otherwise establishes it is patently false—all causes of action fail. For this reason, and

1

for the additional reasons set forth below, the ShotSpotter Defendants respectfully request summary judgment on all causes of action against them.

## II.     ARGUMENT

### A.     The Applicable Legal Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-323 (quoting Fed. R. Civ. P. 56(c)). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A plaintiff's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Carey v. Crescenzi*, 923 F.2nd 18, 21 (2nd Cir. 1995).

### B.     The Record Does Not Allow a Reasonable Trier of Fact to Find Fabrication

#### 1.     Plaintiff's own sworn factual recitation establishes no fabrication.

Plaintiff alleges (albeit in a conclusory manner) that the ShotSpotter Defendants fabricated evidence by creating "additional gun shots on ShotSpotter audio and/or reports" (Amended

Complaint, ¶¶307, 316).[1] But Plaintiff's sworn factual recitation in response to Interrogatory 16 (requiring a detailed account of any fabrication by the ShotSpotter Defendants) establishes the absence of intentional fabrication. Setting aside immaterial facts and unsupported conclusions, Plaintiff swore to the following relevant facts:

- Mark Wiater was told by RPD that Plaintiff fired an initial round at defendant Ferrigno who fired four rounds back (Sanders Decl., Plaintiff's Objections and Responses to the ShotSpotter Defendants' Second Set of Rogs., No. 16, Exhibit F, ("Resp. to Rog. 16") p. 4).

- Wiater contacted ShotSpotter and found out that the ShotSpotter system had already generated a ShotSpotter incident (Incident 140660) that included audio clips of four shots (Resp. to Rog. 16, p. 5).

- On April 2, 2016, at 12:51 am EST, defendant Wiater had a chat session with Robert Bresler and stated, "Incident 140660 was an officer involved shooting. Can someone pull the audio and listen to a longer portion for additional shots?" Bresler said he would expedite a response to the request Resp. to Rog. 16, p. 6).

- After listening to the automatically saved audio clips associated with Incident 140660, Bresler reclassified the incident from helicopter to multiple gunshots because the auto-generated classification of helicopter was not correct. He also updated the record of that incident to reflect that there were four rounds of gunfire, not the three that the software system had reported Resp. to Rog. 16, p. 6-7).

- In response to Wiater's request (to review a "longer portion" of audio), Bresler looked for audio in the database. Sensors 8, 10, and 11 were searched (Resp. to Rog. 16, p. 7).

- On April 1, 2016, at 10:58 pm PST, Bresler sent an email to ShotSpotter CEO Ralph Clark requesting permission to send the RPD and Wiater a longer audio clip that included a gunshot not in the automatically saved audio clips. Bresler explained:

  *Four shots were picked up as incident 140660. Search for additional shots revealed that one additional round was fired but was not picked up by the system. Additional shot occurred approximately 2 seconds before the four rounds picked up by the system. Audio file contains all five shots.* (Response to Interrogatory 16, p. 7).

---

[1] In response to Interrogatory No. 15, Plaintiff wrote that he "alleges that Shotspotter [sic] representatives Ralph Cark, Robert Bresler, Defendants Paul Greene [a ShotSpotter employee], Mark Wiater, Robert Wetzel, Michael L. Ciminelli, Joseph M. Ferrigno II, Samuel Giancursio and Christopher Muscato (RPD Defendants) created, or participated in the creations [sic] of 'additional gun shots on Shotspotter audio and/or reports' and/or engaged in conduct to 'fabricate and falsify evidence and secure false charges against Plaintiff' as alleged in ¶¶307 and 316 of the Amended Complaint" (Sanders Decl., Ex. F).

- Bresler acknowledged that Wiater did not provide him with the number of gunshots. Wiater never told ShotSpotter the number of gunshots that were fired. Bresler had no knowledge of anyone telling ShotSpotter how many gun shots were fired (Resp. to Rog. 16, p. 8).

- On April 2, 2016, at 3:52 am PST, Clark approved delivery of the longer audio clip to RPD and Wiater (Resp. to Rog. 16, p. 8).

- Clark's approval was necessary because the longer audio clip was not "a system generated audio clip." The shorter system-generated clips had four shots, and Clark approved a longer audio clip with five shots (Resp. to Rog. 16, p. 8).

- On April 2, 2016, at 4:13 am PST, Bresler emailed Wiater "attaching the full audio clip of incident 1040660 which included five rounds fired" (Resp. to Rog. 16, p. 9).

Plaintiff's own facts establish the absence of intentional fabrication. The audio of the fifth (first in time) gunshot always existed, but it was simply not included in the shorter audio clips automatically associated with Incident 140660. When Bresler listened to a longer audio clip, he heard the fifth gunshot. Clark then approved sending the longer audio clip to Wiater and the RPD.[2]

Notwithstanding the facts, Plaintiff asserts the following baseless, unsupported conclusions:

> *[All Defendants, Clark and Bresler] conspired to falsely create an additional gunshot on ShotSpotter audio and/or reports, to fabricate and falsify evidence which they forwarded to prosecutors and participated in the prosecution against Plaintiff and caused him to be wrongfully charged, imprisoned and prosecuted for crimes which he did not commit and to secure the exoneration of Defendant Ferrigno for using excessive and deadly force and Plaintiff*
>
> *[Bresler, Clark, Greene and the RPD Defendants] had knowledge that the Shotspotter system only detected four rounds fired and they requested and participated in creating audio and reports with an additional round to implicate Plaintiff as shooting an initial gunshot which would be used by [RPD, the RPD Defendants, and the District Attorney's Office] to incarcerate and prosecute Plaintiff for false criminal charges…*
>
> *[The ShotSpotter Defendants, Clark, and Bresler] knew the fabricated and false ShotSpotter audio and reports and Defendant Greene's trial testimony would be used for this purpose. All Defendants had knowledge that the ShotSpotter technology was questionable with an alleged accuracy rate of only 80%, the City Defendants requested an additional shot be added to ShotSpotter audio and reports, the[The ShotSpotter Defendants, Clark, and Bresler] agreed to add one*

---

[2] CEO Ralph Clark reviewed all audio not automatically captured by the system to mitigate the risk of disclosure of non-gunshot audio.

*additional round to ShotSpotter audio and reports and all Defendants participate in testifying against Plaintiff at his criminal trial knowing said Shotspotter technology was questionable and the audio/reports were not created by the system but rather, were false and fabricated by the ShotSpotter defendants, their representatives and the City Defendants* (*See* Resp. to Rog. 16, p. 11-13).

These conclusions are entirely speculative. The undisputed facts are straightforward. Plaintiff admits Wiater asked Bresler to review a larger time frame to see if there were additional shots. Plaintiff admits Bresler did so and observed that longer audio clips contained an additional shot two seconds prior to the four shots in the audio clips automatically saved by the system. Plaintiff admits Bresler then sent to Wiater a longer audio clip containing all five shots. Those facts are consistent with the documentary evidence and deposition testimony of all parties with personal knowledge of the audio data.

Plaintiff invents the conclusory allegation that the fifth shot was "fabricated". Plaintiff does not assert why ShotSpotter would fabricate an additional shot, allege how it was fabricated, explain how ShotSpotter knew where to place the fabricated shot relative to the other four shots, or identify who did it. Plaintiff insinuates that there was some communication or conspiracy among the ShotSpotter and RPD Defendants regarding fabrication of an additional shot. But despite Plaintiff having had a full opportunity to conduct discovery and depose all relevant witnesses, the record is devoid of evidence of any such communication; to the contrary, the undisputed testimony of all personally involved witnesses is that their only communications are reflected in ShotSpotter's customer service logs, which were fully explored during discovery.

There is no evidence even hinting at the creation of gunshot audio, and certainly none about the manner and method in which any alleged fabrication was accomplished. To the contrary, the undisputed expert testimony and factual evidence shows that the audio clips provided to RPD and used at the Simmons criminal trial were not fabricated or tampered with.

###### 2.   Undisputed expert testimony corroborates the lack of fabrication.

Dr. Robert Maher, a recognized expert in audio forensics, especially gunshot forensics, served an expert report in this matter (Sanders Decl. ¶28) and has prepared a substantially identical declaration supporting this motion. Plaintiff chose to not depose Dr. Maher and chose to not submit his own expert report regarding the audio files at issue (Sanders Decl. ¶27).

In his declaration, as in his report, Dr. Maher explains that he examined, *inter alia*, (1) the 4-shot audio clips automatically associated with Incident 140660, (2) the 5-shot audio clips covering an expanded window of time, and (3) the audio clips used at the Simmons criminal trial. Maher Decl. ¶¶ 9-16, 34-55. Dr. Maher found that there was no forensic evidence that any of the audio files had been doctored or modified, that the 5-shot audio clips from different sensors were consistent with each other and consistent with the 4-shot audio clips (to the extent they overlapped in time), and that the 5-shot audio clips used at the Simmons trial were consistent with the 5-shot audio clips otherwise associated with Incident 140660. *Id. See also id*. ¶¶ 57-58.

Dr. Maher's findings corroborate the testimony of percipient witnesses and preclude any reasonable fact finder from concluding that any ShotSpotter Defendant fabricated a gunshot.

###### 3.   Plaintiff cannot defeat a summary judgment motion on the asserted claims by offering mere speculation as to fabrication.

It is well settled that in the causes of action asserted against the ShotSpotter Defendants, a plaintiff cannot defeat a summary judgment motion by offering mere speculation that the defendants fabricated evidence. *See*:

- *Nieves v. Fahmy*, 2017 U.S. Dist. LEXIS 16474, at *3 (E.D.N.Y. Feb. 6, 2017) (dismissing right to fair trial claims where complaint was "simply a laundry list of legal conclusions" that failed to specify what the defendant "did to fabricate information, or how this information was conveyed to prosecutors.") (denial of right to fair trial).

- *Demosthene v City of New York*, 831 F.App'x. 530, 533-534 (2nd Cir. 2020) ("[The plaintiff] suggests that purported deficiencies in the paperwork suggest that Detective Haber fabricated the identification. These conclusory and speculative assertions of fabrication are insufficient to create a genuine issue of fact with respect to the fabrication of evidence.") (malicious prosecution).

- *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 66 (2nd Cir. 2003) ("[A]n inference that [the defendant] fabricated complaints would be based on nothing but speculation, lacking in the 'concrete particulars' required to defeat summary judgment.") (federal ADA discrimination claim);

- *Crawford v. City of New York*, 477 F.App'x. 777, 780 (2nd Cir. 2012) ("[The plaintiff] offers nothing beyond speculation to suggest that [the Detective] fabricated a story. Conclusory allegations are insufficient to withstand summary judgment.") (malicious prosecution claim).

- *Falls v Pitt*, 2021 US Dist LEXIS 58197, at *192 (S.D.N.Y. Mar. 26, 2021) ("Unsurprisingly, Plaintiff has produced no evidence to substantiate his fanciful tale that police and medical personnel orchestrated an elaborate scheme to fabricate and falsify records. Although his handwritten, single-spaced, 46-page Opposition brief is filled with conclusory allegations that such a conspiracy occurred, he offers only one remotely substantive argument in support.") (conspiracy to deprive plaintiff of rights to be free from unreasonable search and seizures);

- *Savarese v City of New York*, 547 F.Supp. 3d 305, 345 (S.D.N.Y. 2021) ("'Plaintiff has produced no evidence to substantiate his fanciful tale that police and [T.A. Islam] orchestrated an elaborate scheme to fabricate and falsify records' or to cause Plaintiff's arrest.") (false arrest/conspiracy).

- *McDonough v Smith*, 2022 US Dist LEXIS 143055, at *79 (N.D.N.Y. Aug. 11, 2022) ("At summary judgment, it was Plaintiff's burden to present evidence of the alleged fabrication, not Defendant's burden to disprove Plaintiff's speculation. Having failed to present admissible evidence that any evidence was fabricated in this case, Plaintiff's due process claim must be dismissed.") (denial of right to a fair trial).

**4.   Plaintiff cannot defeat summary judgment with contentions not based on personal knowledge.**

In addition to being speculative and conclusory, Plaintiff's contention that the audio data was fabricated is inadmissible as it is not based upon personal knowledge. Declarations, deposition testimony, and sworn interrogatory responses offered to defeat summary judgment "must be based upon the personal knowledge of the witness, . . . and the speaker must be shown competent to testify [to facts admissible in evidence]." See *Myers v. County of Nassau*, 825 F. Supp. 2nd 359, 366 (E.D.N.Y. 2011); *Falls v Pitt*, 2021 US Dist LEXIS 58197, at *194 (S.D.N.Y. Mar. 26, 2021) ("so far as Plaintiff purports to dispute Berberich's testimony regarding the functionality of the electronic medical records system, he has no personal knowledge of how the system actually operates… Relatedly, Plaintiff's argument—that the data fields above the banner show that a user can enter the system after the fact to cook the books—is pure speculation.").

Percipient witness testimony as to the origins of the five-shot audio clips is consistent and undisputed. Plaintiff's speculative and improper inference of fabrication is inadmissible and insufficient to raise an issue of fact.

**5.   Plaintiff cannot defeat summary judgment by insinuating there were conspiratorial meetings to plan a fabrication of evidence.**

Plaintiff insinuates (but does not state directly) that there may have been secret meetings involving ShotSpotter and RPD to plan a fabricated fifth shot. Plaintiff had ample opportunity to take discovery and deposed all individuals personally involved, but he uncovered no evidence of any such meetings. Plaintiff's insinuations are insufficient to raise an issue of fact.

"Participation in a conspiracy or the fabrication of evidence . . . cannot be based upon unsubstantiated speculation and conjecture about what could have been said at a certain meeting or in a particular discussion. More is necessary under the law to overcome a summary judgment motion and require a defendant to proceed to trial for a violation of a plaintiff's civil

rights." *Moroughan v. Cnty. of Suffolk*, 514 F. Supp. 3d 479, 2021 U.S. Dist. LEXIS 13138, 2021 WL 298714, at *2 (E.D.N.Y. Jan. 20, 2021); (*Creighton v. City of New York*, 2017 US Dist LEXIS 21194, at *86-87 (S.D.N.Y. Feb. 14, 2017) ("Although Plaintiff contends that the CI's account 'was fabricated with the assistance and blessing of [Defendant Godino]…' he has offered no evidence to support this allegation. Having deposed the CI, Detective Godino, and countless other witnesses over the past three years, Plaintiff must now come forward with evidence to support his claims of fabrication. That he has not done, and speculation and innuendo are not sufficient to defeat summary judgment.").

> **6.    Differences in evidence or factual accounts of the alleged crime cannot raise an issue of fact as to fabrication.**

The ShotSpotter Defendants anticipate Plaintiff may argue that in actual fact there were four, not five, gunshots fired in connection with the incident.[3] However, absent direct evidence of fabrication, testimony to that effect is insufficient as a matter of law to raise an issue of fact as to whether the ShotSpotter Defendants intentionally fabricated a fifth shot.

The mere difference in testimonial or other evidence does not, and cannot as a matter of law, establish an intentional fabrication. The Southern District of New York's reasoning in *Bennett v. Vidal*, 267 F.Supp. 3d 487, 498 (S.D.N.Y. 2017) applies here:

> The plaintiff contends that, rather than being mistaken, Officer Vidal intentionally lied to the assistant district attorney regarding his recollection about seeing the plaintiff participate in the knife chase. As evidence of fabrication, the plaintiff points only to the differences in the deposition testimony of Officer Vidal and his account of what he saw and the deposition testimony of the plaintiff and his mother regarding the plaintiff's whereabouts around the time of the incident. But a mere difference in testimony between the defendant, the plaintiff, and the plaintiff's mother of what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether Officer Vidal intentionally falsified information or fabricated evidence.

---

[3] There are multiple witness accounts of the shooting spanning between three and five shots discharged in connection with the incident.

*Id.* at 498. *See also*:

- *Waddlington v. City of N.Y.*, 971 F. Supp. 2nd 286, 297 (E.D.N.Y. 2013) ("Plaintiff's mere recitation of inconsistencies in certain officers' testimonies, without more, does not establish liability under section 1983 for providing false information to prosecutors.") (denial or right to a fair trial).

- *Lauderdale v. City of New York*, 2018 US Dist LEXIS 45624, at *23-24 (S.D.N.Y. Mar. 19, 2018) ("The plaintiff contends that, rather than being mistaken, UC 276 and Officer McCalla intentionally lied to the prosecutors when they stated that the plaintiff was the individual who participated with UC 276 in a drug transaction. As evidence of fabrication, the plaintiff points only to the fact that his version of events -- in which he alleges that he was not the individual who spoke with UC 276 -- differs from the account given by UC 276 and Officer McCalla to the prosecutor. But a mere difference in the testimony of the plaintiff and the officers about what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether UC 276 or Officer McCalla intentionally falsified information or fabricated evidence.") (denial of right to a fair trial).

- *Duna v. City of New York*, 2019 US Dist LEXIS 166865, at *15-16 (S.D.N.Y. Sep. 27, 2019) ("As evidence of fabrication, Plaintiff identifies disparities between his version of the events and Defendant Officers' versions and argues the disputed statements were contained in official documents, forwarded to the district attorney, and used to deprive Plaintiff of his liberty. Specifically, Plaintiff identifies factual disputes over the number of pedestrians who were forced to walk around him, the degree to which he obstructed their movement, whether he purposely wedged himself into the turnstile and whether he resisted being placed in handcuffs by pulling his hands away. These differences in the various accounts of Plaintiff's arrest are insufficient to create a genuine dispute as to whether Defendant Officers intentionally falsified information or fabricated evidence.") (denial of right to a fair trial).

- *Hewitt v. City of New York*, 2012 US Dist LEXIS 141067, at *22 (E.D.N.Y. Sep. 27, 2012) ("The Court, therefore, rejects plaintiff's submission that these foregoing proffered inconsistencies raise a genuine fact issue, let alone constitute 'undisputed evidence' that defendants fabricated evidence.") (false arrest).

- *Greene v. City of New York*, 2017 US Dist LEXIS 37243, at *71-72 (E.D.N.Y. Mar. 15, 2017) ("The plaintiff points to no evidence, however, that the discrepancy—assuming there is one—between Norrito's inclusion of Eric Tisdale in the DD5 and Tumbarello's inclusion of Lenny Best in his notebook is actually a deliberate 'falsification' of evidence.") (denial of right to a fair trial).

Thus, even if there were a direct factual inconsistency between Plaintiff's account of the number of gunshots and the audio evidence, absent direct evidence of fabrication, that inconsistency would be insufficient to establish intentional fabrication.

> **7.    The ShotSpotter Defendants are entitled to summary judgment of no fabrication.**

For all the reasons set forth above, no reasonable finder of fact could conclude that any of the ShotSpotter Defendants fabricated any of the audio clips at issue in this case.

### C.    The ShotSpotter Defendants Are Entitled to Absolute or Qualified Immunity for Claims Predicated on Testimony Offered at Trial

To the extent Plaintiff alleges errors, mistakes, or unreliable opinions offered by Paul Greene on his own or on behalf of ShotSpotter at the Simmons criminal trial, such is insufficient to establish a constitutional violation and the ShotSpotter Defendants are entitled to absolute or qualified immunity from suit.

In *Starks v. City of Waukegan*, 123 F.Supp. 3d 1036 (ND Ill 2015), dental experts were entitled to summary judgment on plaintiff's 42 U.S.C.S. § 1983 claims alleging due process violations and malicious prosecution arising out of their purportedly incorrect opinion that a bite mark on the victim came from the plaintiff/criminal defendant. The Court held that the fact that the dentist defendants may have given false or mistaken expert testimony, or overstated their conclusions, did not amount to a constitutional violation, particularly where plaintiff had a reasonable opportunity to cross-examine them at the criminal trial. Relying upon *Buie v. McAdory*, 341 F3d 623 (7th Cir. 2003), the Court reasoned as follows:

No decision of the Supreme Court "clearly establishes" that experts (or any other witnesses) must be right; the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies. That a witness may give false or mistaken testimony therefore is not an independent constitutional violation. What the Constitution provides is assurance that evidence may be tested by cross-examination and by contrary proofs. Whether a given expert witness overstated her conclusion is mete for cross-examination, and no one impaired Buie's ability to elicit from her just how likely (or unlikely) a "reasonable degree of scientific certainty" was in her vocabulary. *Buie,* 341 F.3d at 625 (citations omitted).

*Buie* added: "Informants may be lying, eyewitnesses may be tricked by their own memories, and experts may produce flawed analyses. The tools of the adversary process supply the means to expose these testimonial shortcomings." 341 F.3d at 625.

The Court stated, specifically with respect to the malicious prosecution claim, the following:

[The plaintiff] maintains that Dentist Defendants "did actively seek the continuation of the prosecution, meeting with Biang and urging him that [plaintiff], beyond any doubt, was the person who bit [the victim], and reporting to the prosecutor that Starks definitely made the bite mark."... But *Adams* holds that "[i]t is not enough that [a defendant] appears as a witness and thereby aids in the prosecution of the charges which he knows to be groundless."... Indeed, it is not even enough to "intentionally refrain[] from informing a public prosecutor... of subsequently discovered facts that clearly indicate the innocence of the accused." *Id.* at 946. [The plaintiff] has not presented evidence showing that Dentist Defendants played an active role in urging the prosecution; all he can point to is their flawed bite mark "analysis" and expert opinions. While Dentist Defendants' allegedly mistaken conclusion about [plaintiff] having bitten the victim may have influenced the prosecutor's decision to continue the proceedings against [plaintiff], it is not evidence that Dentist Defendants "actively encourag[ed]" or "insist[ed] upon" his continued prosecution. It follows that Dentist Defendants cannot be held liable for malicious prosecution for providing allegedly flawed expert opinions, and therefore that they are entitled to summary judgment on the malicious prosecution claim.

*Starks* at 1062. *See also*:

- *Stinson v. Gauger*, 799 F3d 833, 843 [7th Cir. 2015]) ("Arriving at an unreasonable expert opinion may suggest negligence, perhaps even gross negligence, but it does not amount to the intentional fabrication of evidence. A mistake in forensic analysis—even an egregious mistake—is grievous given the stakes in this context, but an expert who renders a mistaken opinion is protected by qualified immunity. Fabricated

opinion evidence, for which the expert might not have qualified immunity, must be both wrong and known to be wrong by the expert." (superseded/vacated by subsequent appellate history).

- *Sipin v. King County*, 2009 US Dist LEXIS 52801, at *11 [WD Wash June 18, 2009, No. C08-247 RSM] (in finding that experts were entitled to immunity from suit arising out of expert testimony, the Court held, "[t]here was nothing malicious about [the expert's] testimony, nor is there any indication outside of Plaintiff's conclusory statements that [the expert] engaged in any intentional misconduct in preparing or giving his testimony.")

- *McDonough v. Smith*, 2016 US Dist LEXIS 135380 (N.D.N.Y. Sep. 30, 2016) (Plaintiff failed to state a malicious prosecution/conspiracy claim against defendant forensic handwriting expert, who was entitled to immunity in a criminal trial alleging falsification of absentee ballots, where Plaintiff alleged the prosecutor conveyed to the expert the testimony/evidence against the plaintiff before the expert issued his report; that the expert testified that Plaintiff's handwriting was falsified without comparing the handwriting of other suspects; and that the expert was paid $100,000 and instructed to not conduct an ink analysis on several of the falsified documents. The Court found "the only alleged act undertaken by [the expert]… was testifying in his expert opinion that it was Plaintiff's handwriting on the falsified absentee ballots. Such testimony is clearly covered by absolute immunity and cannot form the basis for a 42 U.S.C.S. § 1983 claim.").

- *C.F., Mills v. Barnard*, 869 F3d 473, 477 (6th Cir. 2017) (Where the plaintiff's conviction for rape was overturned based on new DNA evidence that called into question the testimony of the minor victim at trial, the plaintiff adequately pleaded a 42 U.S.C.S. § 1983 malicious prosecution claim against an expert DNA analyst because the complaint alleged that the analyst intentionally falsified a report that was material to the prosecution.)

- *C.F., Bryson v. Macy*, 611 F.Supp.2nd 1234 (2009) (the Court found that there was an issue of fact as to qualified immunity/initiation in a malicious prosecution claim against the expert who allegedly withheld exculpatory evidence and fabricated inculpatory evidence resulting in inmate's wrongful incarceration.)

Even viewing the evidence in the light most favorable to Plaintiff, the laundry list of criticisms of the Greene testimony and ShotSpotter data (*see* Amended Complaint, ¶¶196-249)

does not and cannot support any of the causes of action plead against the ShotSpotter Defendants. Short of a *knowing* and *intentional* fabrication or falsification, even if the testimony or data was mistaken, flawed, deficient, unreliable, speculative, negligent (even grievously negligent) or just plain wrong, summary judgment is warranted based upon qualified or absolute immunity.

Further, in addition to Plaintiff having had the opportunity to cross-examine Mr. Greene in depth during the criminal trial, including upon the criticisms alleged in the Amended Complaint (¶¶196-249),[4] Plaintiff formally challenged the Greene testimony and ShotSpotter data three times based upon the same arguments asserted in this lawsuit (*see* Sanders Decl. Ex. E, the February 13, 2018 Decision and Order of Hon Christopher S. Ciaccio, in *The People of the State of New York v. Silvon Simmons*).

Prior to trial, Plaintiff (criminal defendant) sought a *Frye* hearing and moved *in limine* to preclude the Greene testimony/ShotSpotter data as not accepted in the scientific community and unreliable (*see* Sanders Decl., Ex. C). Judge Valleriani denied the application as the criticisms of the ShotSpotter data went to weight, not admissibility (*see* Sanders Decl., Ex. D). Then, during the trial, Plaintiff (then the criminal defendant) renewed the motion to preclude before Judge Ciaccio, who denied it based upon the prior ruling (*see* Sanders Decl. Ex. E). After the trial conviction for Criminal Possession of a Weapon in the Second Degree (Count 4), Plaintiff moved to set aside the verdict on the ground that the Court abused its discretion when it received the Greene testimony and ShotSpotter data. Judge Ciaccio granted that motion, and vacated the conviction, necessarily finding that both he and Judge Valleriani abused their discretion in admitting the evidence (*see* Sanders Decl. Ex. E).

---

[4] Plaintiff does not allege any of his criticisms of the ShotSpotter data or Mr. Greene's testimony were concealed or unknown. To the contrary, Plaintiff acknowledges it was known during the criminal trial and disclosed to the jury as Plaintiff specifically alleges Greene admitted to "the unreliability of ShotSpotter technology *at Plaintiff's criminal trial*" (Amended Complaint, ¶¶325-326, emphasis added)

Thus, virtually every specific factual allegation in the Amended Complaint concerning the ShotSpotter evidence (¶¶ 196-249) could have been, or was, subject to cross-examination by Plaintiff or addressed by the Court in support of Plaintiff's three applications to preclude (*see* Sanders Decl. Ex. C, D, E). As a matter of law, such assertions cannot serve as a basis for any constitutional violation (or state malicious prosecution claim). Dispositive of this motion is Judge Ciaccio's judicial determination that he abused his discretion in not precluding the Greene testimony and ShotSpotter data in the first instance. If Judge Ciaccio abused his discretion and should have precluded the evidence before it was presented to the jury, Plaintiff would (theoretically) not have been convicted and the ShotSpotter Defendants would not be subject to this frivolous civil lawsuit. To subject the ShotSpotter Defendants to civil liability simply because Judge Ciaccio abused his discretion is absurd.

Summary judgment is warranted.

### D.   Summary Judgment is Proper on Count VI: Malicious Abuse of Process

"In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Simmons v. Ferrigno*, 2019 US Dist LEXIS 238423, at *18-19 (WDNY Aug. 5, 2019) (*citing Savino v. City of N.Y.*, 331 F.3d 63, 76 (2nd Cir. 2003) (*quoting Cook v. Sheldon*, 41 F.3d 73, 80 [2nd Cir. 1994]). The malicious abuse of process claim is properly dismissed based upon law of the case and because Plaintiff cannot meet any of the three elements required to establish the claim.

#### 1.   Plaintiff cannot satisfy the Collateral Objective element based upon the undisputed proof and law of the case.

Based upon law of the case, summary judgment is warranted for failure to satisfy the **third element**, collateral objective. Plaintiff asserts in the Amended Complaint that all "defendants" (lumped together) sought the collateral objective of avoiding discipline, to cover up acts of brutality, and to retaliate for injuries they caused to themselves. This Court, however, found the pleadings insufficient to establish a malicious abuse of process claim:

> The Court agrees with the City Defendants that Plaintiff has failed to state a claim for malicious abuse of process under New York law because he has not plausibly alleged the "collateral purpose" element of such a claim. Plaintiff alleges that the City Defendants caused him to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process; namely, to cover up and avoid discipline for their abuse of authority and acts of brutality, and to retaliate against him for the injuries they caused to themselves. These allegations support at most an improper motive - not an improper purpose.

*Simmons*, 2019 US Dist LEXIS 238423 at *18-19. Plaintiff does not allege (and produced no additional supporting proof of) an independent "motive" by the ShotSpotter Defendants, let alone the requisite "collateral objective" for the employment of legal process.

Even if the ShotSpotter Defendants did fabricate evidence (and it is beyond dispute they did not), the malicious abuse of process claim is still properly dismissed because fabrication of evidence, standing alone, is not a "collateral" objective as a matter of law. *Antes v. Bonura*, 2013 US Dist LEXIS 36255, at *16-17 [S.D.N.Y. Feb. 25, 2013]) ("However, fabrication of evidence is not, on its face, evidence of a collateral purpose because its objective is to achieve conviction."); *Douglas v. City of New York*, 595 F. Supp.2nd 333, 344 (S.D.N.Y. 2009) ("[T]ampering with evidence is not considered abuse of process because the goal—convicting the defendant—is a legitimate use of process.") (citation omitted); *Sandstrom v. New York*, 2020 US Dist LEXIS 30375, at *66 [WDNY Feb. 20] ("Toward this end, the use of fabricated evidence is not sufficient insofar as Plaintiff fails to allege how, assuming fabricated evidence was used by Defendants, it was used to achieve anything other than Plaintiff's conviction on the June 17, 2014 charges.")

### 2. Plaintiff cannot satisfy the Regularly Issued Service element.

Plaintiff cannot satisfy the **first element** by showing the ShotSpotter Defendants employed "regularly issued legal process" to compel performance or forbearance of an act. Plaintiff does not identify any legal process issued by the ShotSpotter Defendants, nor does he allege that it was done to compel or forbear a specific act. *See Jordan v. City of New York*, 2017 US Dist LEXIS 112625, at *7 (S.D.N.Y. July 17, 2017) ("Plaintiff has failed to plead even the first element of this claim. It is unclear what 'regularly issued legal process' Plaintiff relies on for the first element, and that is of no moment, because Plaintiff alleges no facts from which the Court could infer that Officer Defendants sought to employ any regularly issued legal process to compel performance or forbearance of some act by him."). Here, Plaintiff necessarily acknowledges in the pleadings that ShotSpotter Defendants were not even notified of the incident until after Plaintiff was taken into police custody at the April 1, 2016, shooting.

### 3. Plaintiff cannot satisfy the Intent to do Harm element.

Finally, Plaintiff cannot satisfy the **second element**, "intent to do harm without excuse of justification." As explained in detail above, it is undisputable that the ShotSpotter Defendants did not fabricate any evidence or convey false information. Rather, they provided audio clips that they believed, in good faith, included impulses that occurred around the time and location of the shooting event. Consequently, they did not act with intent to do harm.

### E. Summary Judgment is Proper on Counts IV and VII for State and Federal Malicious Prosecution

The elements of malicious prosecution under New York law are: "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 142 (2nd Cir.

2003). "The elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law; 'the analysis of the state and the federal claims is identical.'" *Bailey v. City of New York*, 79 F.Supp. 3d 424, 448 (E.D.N.Y. 2015) (*quoting Boyd v. City of N.Y.*, 336 F.3d 72, 75 (2nd Cir. 2003). Consequently, both Count IV (42 U.S.C.S. § 1983 malicious prosecution) and Count XII (New York State Law malicious prosecution) are analyzed together.

### 1.    Plaintiff cannot satisfy the Initiation element.

"'Initiation' in the context of a malicious prosecution claim 'is a term of art'." *Jackson v. Seewald*, 2012 US Dist LEXIS 62442, at *48-49 (S.D.N.Y. Mar. 14, 2012) (citations omitted). Although there is "a presumption that a prosecutor exercises independent judgment in deciding whether to initiate . . . a criminal proceeding, a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* citing *Espada v. Schneider*, 522 F. Supp. 2nd 544, 553 (S.D.N.Y. 2007) (internal quotation marks and citations omitted). Merely reporting a suspected crime to law enforcement officials, cooperating in a prosecution, and giving testimony does not constitute initiation. *Id.*

A private defendant can commence or continue a prosecution "if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." *Levine v. City of New York*, 2014 US Dist LEXIS 106257, at *11-13 (E.D.N.Y. July 15, 2014) (collecting cases). Plaintiff must prove, however, that the private defendant "*knowingly* and *intentionally* gave the authorities false information for the purpose of inducing them to prosecute." *Id.* (emphasis added). Plaintiff must also prove that "the police did not have an independent basis for the arrest." *Pacicca v. Stead*, 2008 US Dist LEXIS 144923, at *26-27 (S.D.N.Y. Dec. 5, 2008)

Where, as here, a malicious prosecution defendant's conduct is "analogous to a civilian who reports a crime and cooperates in its prosecution," and the defendant did not knowingly or intentionally provide false or fabricated evidence, the malicious prosecution claim is properly dismissed. *Jackson v. Seewald*, 2012 US Dist LEXIS 62442, at *47-50 (S.D.N.Y. Mar. 14, 2012) ("Because the Complaint here does not sufficiently allege that the Private Defendants did any more than report and cooperate, it fails to meet the requirements of the first element of a malicious prosecution claim."), 2008 US Dist LEXIS 144923, at *26-27; *See also*:

- *Gonzalez v. Delaware County*, 2017 US Dist LEXIS 198496, at *28 (N.D.N.Y. Dec. 4, 2017) (granting summary judgment to malicious prosecution defendants where "Plaintiff has not presented any additional allegations that [defendants] encouraged Plaintiff's prosecution or knowingly provided Hubbard with false information.")
- *Du Chateau v. Metro-North Commuter R.R. Co.*, 688 N.Y.S.2nd 12, 15 (App. Div. 1999) (defendant held not to have initiated plaintiff's prosecution where plaintiff offered no evidence that the private defendant gave false information or withheld information from the police).
- *Peruta v. Town of Rocky Hill*, 640 F.Supp. 2nd 186, 197 (D. Conn. 2009) ("In the present case, the Plaintiffs' malicious prosecution claim against Noble fails as a matter of law. There is no evidence showing that Noble did not give what he reasonably believed to be truthful information, nor is there evidence that he placed any pressure on the RHPD to arrest Peruta.")
- *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2nd 141, 146-47 (App. Div. 2002) (private party held not liable for malicious prosecution where alleged false information provided by the private party did not contribute to plaintiff's arrest, inferring that police initiated the arrest on their own information).

Here, no evidence suggests the ShotSpotter Defendants played an active role in the prosecution, such as by giving advice and encouragement or importuning the authorities to act. Nor, as explained in detail above, is there evidence the ShotSpotter Defendants knowingly and intentionally provided false or fabricated information for the purpose of inducing them to

prosecute Plaintiff. Rather, it is undisputed the ShotSpotter Defendants provided audio data believed to depict impulses that occurred at the location of the incident *upon request by the RPD*. It is also undisputed that the ShotSpotter defendants merely reported information to law enforcement, cooperated in the prosecution, and gave testimony regarding the nature of the data provided. This is insufficient as a matter of law to establish "initiation".

### 2. Plaintiff cannot satisfy the No Probable Cause element.

Even if the ShotSpotter Defendants had fabricated evidence (which they did not), summary judgment is warranted on the malicious prosecution claim based upon the existence of probable cause. Where, as here, there are grounds for probable cause independent of alleged fabricated evidence, a malicious prosecution claim is properly dismissed. Because the Felony Complaint against Plaintiff (Sanders Decl., Ex. A) was based upon separate and independent eye-witness evidence, summary judgment is warranted.

"The existence of probable cause is a complete defense to a claim of malicious prosecution." *Torres v. City of New York*, 2017 US Dist LEXIS 158883, at *10-13 (E.D.N.Y. Sep. 27, 2017) (citing *Stansbury v. Wertman*, 721 F.3d 84, 94-95 [2nd Cir. 2013]).

 "[I]t is well-settled that 'even where plaintiff alleges . . . that the malicious prosecution is based on fabricated evidence, the existence of probable cause independent of the fabricated evidence is a defense to that claim.'" *Id*. (citing *Hoyos v. City of New York*, 999 F. Supp. 2nd 375, 390 (E.D.N.Y. 2013); *Maldonado v. City of New York*, No. 11 CIV. 3514 RA, 2014 U.S. Dist. LEXIS 26239, 2014 WL 787814, at *8 (S.D.N.Y. Feb. 26, 2014) ("[T]he existence of probable cause independent of the allegedly falsified evidence is a defense to a malicious prosecution claim.") (other citations omitted).

Here, the Felony Complaint that initiated the prosecution against Plaintiff was based solely on the eye-witness accounts of police officers, particularly defendant Ferrigno, who testified he

personally witnessed Plaintiff discharge a firearm in his direction. Plaintiff acknowledges same (*see* Amended Complaint, ¶¶171-272). The Felony Complaint does not reference any evidence provided to RPD by the ShotSpotter Defendants (*see* Sanders Decl. Ex. B, reproduced below)

THE FACTUAL BASIS FOR THE ABOVE BEING UPON PERSONAL KNOWLEDGE AND INVESTIGATION AS FOLLOWS:

*That your complainant is a police investigator for the City of Rochester New York police department and on the above date, time and location, the said defendant did; 1. With intent to use the same unlawfully against another, possess a loaded firearm; and 2. With intent to commit a crime, engage in conduct which tended to effect the commission of such crime; with intent to cause the death of another person, he attempted to cause the death of such person, and the intended victim was a police officer as defined in subdivision thirty-four of section 1.20 of the criminal procedure law who was at the time of the attempted killing engaged in the course of performing his or her official duties, and the defendant knew or reasonably should have known that the victim was a police officer; and the defendant was more than eighteen years old at the time of the commission of the crime.*

*That on April 1, 2016, at approximately 9:10 p.m., at or near 9 Immel St., in the City of Rochester, defendant, Silvon Silva Simmons, date of birth June 1, 1981, did, with intent to use the same unlawfully against another, possess a loaded Ruger 9 mm semiautomatic pistol; and with intent to cause the death of Officer Joseph Ferrigno, did fire the same at Officer Joseph Ferrigno, who was in uniform and on duty and engaged in the course of performing his official duties, narrowly missing him. Further, defendant does not possess a N.Y. State Pistol Permit. The Ruger 9 mm semiautomatic pistol's operability was evidenced by defendant's actions and specifically the fact that the weapon successfully discharged ammunition when fired at Officer Joseph Ferrigno.*

The Supporting Affidavit of Ferrigno is predicated upon his personal knowledge of Plaintiff discharging a firearm, not on ShotSpotter data (Sanders Decl., Ex. B). At the criminal trial, Officer Ferrigno testified that Plaintiff discharged a firearm in his direction, testimony that was independent of any data provided by the ShotSpotter Defendants. Statement of Undisptued Facts, No. 6.

This case is analogous to *Torres v. City of New York, supra*. There, the plaintiff alleged malicious prosecution based upon an allegedly false statement made by defendant Officer Siokas that he personally witnessed the alleged crime (an assault). However, as here, the criminal complaint was not based upon the allegedly false statement, but rather on different testimony (in *Torres*, the victim's account of what transpired), thereby warranting dismissal of the malicious prosecution claim. The *Torres* Court reasoned as follows:

21

On this point, it is also useful to consider the documents the parties have tendered because they also show that the facts as they existed on the evening of March 11, 2015, were one and the same as the facts that existed on the afternoon of March 12, 2015, when plaintiffs were charged in a criminal complaint. A close review of the criminal complaint shows no mention whatsoever of the plaintiffs' contention that Officer Siokas said he viewed the assault. To the contrary, the criminal complaint is based solely on the victim's identification, confirming that the basis for plaintiffs' arrest the night before and their charge that afternoon was the same.

Thus, whether or not Officer Siokas provided false information to the KCDA with respect to observing plaintiffs assault Vasquez is irrelevant as to plaintiffs' malicious prosecution claim because, as discussed, there was independent probable cause to prosecute plaintiffs based solely on the complaining victim. And there was no change in information between the time of plaintiffs' arrests and the criminal complaint to vitiate the existence of probable cause. Thus, defendants' motion for summary judgment as to this claim is also granted.

*Torres v. City of New York*, 2017 US Dist LEXIS 158883, at \*10-13 (E.D.N.Y. Sep. 27, 2017)

(internal citations omitted).

Logically following, regardless of whether the ShotSpotter data was fabricated (it was not), the existence of independent probable cause for the arrest, which persisted through the trial, warrants dismissal of the malicious prosecution claim. The existence of prior, independent grounds for probable cause is a complete defense to a malicious prosecution claim. *See Duna v. City of New York*, 2019 US Dist LEXIS 166865, at \*18-19 (S.D.N.Y. Sep. 27, 2019) (Dismissing the malicious prosecution claim where "Defendant Officers had probable cause and, in the alternative, arguable probable cause to arrest Plaintiff. That probable cause was continuing as nothing in the record suggests that, after Plaintiff's arrest, Defendant Officers came upon new information to change their reasonable belief that he had committed the obstruction crime.").

### F.    Summary Judgment is Proper on Count V for Denial of a Fair Trial

"A person is deprived of her constitutional right to a fair trial when 'an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that

information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Folk v. City of New York*, 243 F.Supp. 3d 363, 374 (E.D.N.Y. 2017) (citing *Jovanovic v. City of New York*, 486 F.App'x. 149, 152 (2nd Cir. 2012).

Plaintiff does not state a cognizable fair trial claim in the Amended Complaint in the first instance. He includes a formulaic recitation of the elements, lumping "all defendants" together:

> By deliberately manufacturing false evidence against Plaintiff, including but not limited to Shotspotter audio, Shotspotter reports, police reports containing the Defendant Police Officers' own fabricated and falsified accounts that Plaintiff possessed and fired a loaded firearm and had committed crimes and by forwarding that fabricated and false evidence to the prosecutors, the Defendants caused Plaintiff to be arrested, detained, imprisoned, charged and prosecuted in violation of Plaintiff's rights pursuant to the Fifth, Sixth and Fourteenth Amendments to the US Constitution, to due process of law and to a fair trial and are liable to Plaintiff under 42 USC 1983 for compensatory and punitive damages. (Complaint 340).

As explained above, Plaintiff admits undisputed facts establishing no fabrication, but then asserts it anyway—based solely on speculation and without alleging who did it, why, or how.

It is well settled that conclusory statements concerning fabricated evidence cannot state a claim for the denial of a fair trial. *Hutchins v. Solomon*, 2018 US Dist LEXIS 169421, at *49-50 (S.D.N.Y. Sep. 29, 2018)

- *Longo v. Ortiz*, No. 15-CV-7716, 2016 U.S. Dist. LEXIS 131558, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (holding that the plaintiff failed to state denial of fair trial claim where he alleged "he was denied the right to a fair trial . . . when the defendants fabricated evidence, gave false testimony, and made false extrajudicial statements . . . to be used against [the plaintiff] at trial as well as to a Supreme Court judge in an effort to secure a search warrant, indictment and conviction");

- *Harasz v. Katz*, 239 F. Supp. 3d 461, 493 (D. Conn. 2017) (holding that the plaintiff failed to state a denial of fair trial claim where he merely alleged that officers "did in fact participate in fabrication of evidence, ignored the truth when presented and chose what to bring as the truth . . . [and] did not want the truth to interfere with their witch hunt.);

- *Cunningham v. City of New York*, No. 17-CV-5124, 2018 U.S. Dist. LEXIS 148231, 2018 WL 4168964, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing fair trial claim where the complaint failed to assert that arresting report contained a fabrication).

- *Folk v. City of New York*, 243 F.Supp. 3d 363, 374 (E.D.N.Y. 2017) ("Plaintiff's allegations are largely a reiteration of [fair trial claim] elements, as she states the Individual Defendants 'created false evidence' against her, 'forwarded [that] evidence to prosecutors,' and 'knew that the prosecutors would rely upon [that] information.'").

Further, as also explained above, it is undisputed that the ShotSpotter Defendants did not fabricate evidence. Consequently, summary judgment on the fair trial claim is warranted. *Morse v. Spitzer*, 2011 US Dist LEXIS 35014, at *47 (E.D.N.Y. Mar. 15, 2011) (recommending granting summary judgment on fair trial claim where the Court found "no evidence from which a jury could conclude that defendants themselves falsified the Design Dental invoices.").

### G.    Summary Judgment is Proper on Count III for Conspiracy

To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Loria v. Butera*, 2010 U.S. Dist. LEXIS 102947 (N.D.N.Y. 2010); *Jackson v. Seewald*, 2012 US Dist LEXIS 62442, at *34 [S.D.N.Y. Mar. 14, 2012). The mere allegation that a party "conspired with" a state actor is insufficient to support a cause of action under 42 U.S.C.S. § 1983. S*an Filippo v. United States Trust Co. of N.Y.*, 737 F.2nd 246 (2nd Cir. 1984).

It is well established that "a § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 165 [E.D.N.Y. 2016] ("Having determined that neither Incandela nor the Individual Suffolk Defendants violated Plaintiff's constitutional rights, Plaintiff's claims of conspiracy arising under Section 1983 against the Individual Defendants fails as a matter of law.") (citing *Mitchell v. County*

*of Nassau*, 786 F. Supp. 2nd 545, 564 [E.D.N.Y. 2011]; *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2nd Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").

Plaintiff cannot meet any element of a conspiracy claim. The undisputed facts establish there was no constitutional violation in the first instance. Again, it is undisputed that the ShotSpotter Defendants did not fabricate any evidence. For the same reasons, it is undisputed there was no agreement between the RPD defendants and the ShotSpotter Defendants to fabricate evidence and violate the constitution. It logically follows that there was no "overt act" in furtherance of the agreement as a matter of law.

Even if the ShotSpotter Defendants had fabricated evidence (which they did not), the absence of an agreement warrants summary judgment. *See Sherman v. City of New York,* 2019 US Dist LEXIS 83010, at *22-23 (E.D.N.Y. May 16, 2019) (Plaintiff's allegations simply amount to the assertion that Eilenberg provided the officers with false information and the officers inappropriately accepted Eilenberg's version of events despite evidence to the contrary. This is patently insufficient to state a claim of joint action, and therefore, all of the § 1983 claims against Eilenberg that are premised on joint state action must fail.")

## III.   CONCLUSION

For the reasons set forth above, Defendants ShotSpotter, Inc., SST, Inc., and Paul Greene each respectfully request that the Court grant summary judgment on all claims against them.

**DATED:**     December 22, 2022        **BARCLAY DAMON LLP**

By:     *s/ Paul A. Sanders*
         Paul A. Sanders, Esq.

*Attorneys for Defendants*
*ShotSpotter, Inc., SST, Inc., and Paul C. Greene*
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone:  (585) 295-4426
Email:  psanders@barclaydamon.com