UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SILVON S. SIMMONS,

                                 Plaintiff,           Case # 17-CV-6176-FPG

v.                                                 DECISION AND ORDER

JOSEPH M. FERRIGNO, II, et al.

                                 Defendants.

## INTRODUCTION

Plaintiff Silvon S. Simmons brings claims under 42 U.S.C. § 1983 and New York tort law against the City of Rochester and its employees Joseph M. Ferrigno, II, Samuel Giancursio, Mark Wiater, Christopher Muscato, Robert Wetzel, and Michael L. Ciminelli (collectively, "Defendants"). Both parties have filed motions *in limine*, and Plaintiff has filed a request that the Court take judicial notice of certain documents recording the disposition of Plaintiff's state-court criminal proceedings. ECF Nos. 171, 173, 174. The Court heard from the parties at the March 13, 2024 pretrial conference and the motions are now ripe for decision.

## LEGAL STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The moving party bears the burden of establishing that the evidence is inadmissible for any purpose and is therefore properly excluded on a motion *in limine*. *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 44 (N.D.N.Y. 2022). A court considering a motion *in limine* may reserve decision until trial, "so that the motion is placed in the appropriate factual context." *Id.* (quoting *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011)). Further, the

court's ruling on a motion *in limine* is preliminary, and "subject to change" as the case unfolds. *Luce*, 469 U.S. at 41.

## DISCUSSION

### I.      Plaintiff's Motions

Plaintiff moves to exclude five categories of evidence: (1) "ShotSpotter" evidence, including an audio recording of five sounds later classified as gunshots, related reports, the testimony of ShotSpotter employee Paul C. Greene, and an expert declaration and report on the audio recording; (2) deposition transcripts; (3) evidence related to Ivory Golden, Jr., an individual wanted for menacing at the time of the shooting; (4) evidence of Plaintiff's prior acts; (5) and evidence recovered from the search of Plaintiff's residence and other locations.  ECF No. 173 at 1–2; ECF No. 173-1 at 1–9.  The Court considers each category in turn.

### a.   ShotSpotter Evidence

Plaintiff argues that the Court should preclude evidence regarding the ShotSpotter audio, as well as the audio recording itself, as unduly prejudicial under Federal Rule of Evidence 403. ECF No. 173-5 at 2.  He also argues that defense witness Paul Greene cannot provide a foundation for the admission of the ShotSpotter recording and should not be permitted to testify regarding "ShotSpotter mechanics."   *Id.* at 5–6.  He also challenges the report and declaration of the ShotSpotter Defendants' expert Robert Maher, Ph.D., P.E. (the "Maher Exhibits").  *Id.* at 7.  As explained below, this motion is granted in part and denied in part.

The audio recording, according to Defendants, reflects five gunshots.  ECF No. 169 at 3 ¶ 21.  Plaintiff contends that the ShotSpotter system captured only four rounds and that ShotSpotter modified the audio to include the fifth (first in time) shot.  ECF No. 163 at 8 ¶13.  Although the parties disagree as to whether the audio recording captured the sound of five gunshots, they agree

that Defendant Ferrigno fired his service weapon four times, and that the ShotSpotter system captured the sound of those shots.  See *Id.*; ECF No. 163 at 2 ¶ 10; ECF No. 169 at 3 ¶ 14.  However, Plaintiff contends, the audio recording is so unreliable as to have little or no probative value and is "highly likely to have an unwarranted effect on the jurors," and is therefore subject to exclusion under Rule 403.  The Court disagrees.

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action."  Fed. R. Evid. 401.  Relevant evidence is generally admissible.  *See* Fed. R. Evid. 402.  Rule 403 permits a court to exclude even relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Because Rule 403 excludes relevant evidence, it is "an extraordinary remedy that must be used sparingly."  *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990).

To begin, the audio recording is relevant because, if the first sound is in fact a gunshot, that would make the fact that Plaintiff fired at Defendant Ferrigno more probable than it would be in the absence of the audio recording.  *See* Fed. R. Evid. 401.  Plaintiff appears to contest the recording's relevance, stating that it "has no causal connection" to the underlying events because the police were not in the area because of any ShotSpotter alerts.  ECF No. 173-5 at 2.  While true, such a causal connection is not the only basis for relevance.  Instead, the audio recording here is relevant because it makes it more probable that (1) there was one shot fired before Defendant Ferrigno fired four shots at Plaintiff and (2) that Defendant Ferrigno heard that shot and saw a muzzle flash before he fired at Plaintiff.  This goes to, among other things, the officers' justification for the use of force against Plaintiff and their grounds for his arrest.

3

The recording therefore has at least some probative value.  As Plaintiff notes, the existence of the five sounds in the audio recording is not in dispute; rather, the source of at least the initial shot is.  *See* ECF No. 173-5 at 2–3.  Even so, the existence of the first shot on the recording is probative with respect to Defendants Ferrigno and Giancursio's assertion that they heard a gunshot before Defendant Ferrigno fired.  That is, it tends to corroborate their assertion that they heard a gunshot.  And because this case largely turns on the credibility of the witnesses, evidence that tends to corroborate a defense has probative value, even if the parties dispute the nature or source of the first sound.

Although Rule 403 permits the exclusion of even relevant evidence, Plaintiff has not demonstrated that preclusion of the ShotSpotter evidence is warranted under that rule.  Rule 403 is concerned not with mere "prejudice," but "unfair prejudice," which involves "some adverse effect . . . beyond tending to prove the fact or issue that justified" admission of the evidence. *Wright v. Snyder*, No. 21-CV-104, 2024 WL 811998, at *8 (D. Conn. Feb. 27, 2024) (quoting *United States v. Gelzer*, 50 F.3d 1113, 1139 (2d Cir. 1995)).  Plaintiff does not identify this kind of prejudice in his motion, much of which concerns the ShotSpotter system's unreliability, *see* ECF No. 173-5 at 3 ("The events of April 1, [2016], in fact, show that the reliability of the ShotSpotter evidence as a whole is doubtful.") or issues of authentication and foundation, *see id.* at 5 ("For [the recording] to be admitted into evidence there must be a witness who could listen to it and assure the factfinder that the recording fairly and accurately conveys the sound environment about which he gave an opinion.").  He has not shown that admitting the audio recording would produce any adverse effect beyond tending to prove that there were five gunshots.  *See Wright*, 2024 WL 811998, at *8.  Moreover, admitting the audio recording does not pose a danger of confusing the issues because whether Defendants Ferrigno and Giancursio heard a gunshot before

Ferrigno fired is relevant to the claims and defenses at issue.  And after hearing the recording, the members of the jury will be able to decide whether the first sound is a gunshot or not.

Similarly, the Court declines to preclude the testimony of Paul Greene and the Detailed Forensic Report ("DFR").  With respect to Greene's testimony, he may testify as to the facts of his involvement in preparing the DFR and Defendants may use his testimony to attempt to lay a foundation for the admission of the Detailed Forensic Report under Rule 803(6).  The Court notes, however, that Defendants have not identified Greene as an expert witness.  *See* ECF No. 170 at 6.  Accordingly, to the extent he intends to offer opinion testimony, that testimony will be limited to opinions that meet the requirements of Rule 701.  That is, he will not be permitted to give an opinion based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c).

Plaintiff also seeks to exclude the declaration and report of Robert Maher, Ph.D.  Dr. Maher has not been identified as a witness, expert or otherwise, by either party.  Plaintiff contends that the  declaration and report are both inadmissible hearsay.  *See* ECF No. 173-5 at 7.  Other than including the declaration and report on their exhibit list, Defendants have not stated whether they intend to introduce this evidence and, if so, for what purpose.  *See generally* ECF No. 179 at 4– 15.  In any event, Defendants may not submit Dr. Maher's technical report as a substitute for what would otherwise be his expert testimony.  *See California v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1199 (N.D. Cal. Feb. 2, 2016).   Defendants may not, therefore, introduce the opinions contained in these exhibits through a fact witness because the technical reports are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," and thus may not be presented by a fact witness.  *See* Fed. R. Evid. 701.  The Court will therefore preclude the Maher Exhibits.

As set out above, Plaintiff's motion to preclude the ShotSpotter evidence is granted in part and denied in part.

### b.  Deposition Transcripts

Plaintiff seeks to preclude the admission of the deposition transcripts included on Defendants' exhibit list because they have failed to comply with this Court's Pretrial Order, which requires them to submit an itemized list of deposition testimony to be used in their direct case, with page and line references.  ECF No. 173-1 ¶¶ 31, 35 (citing ECF No. 157 at 4 ¶ 7).  The Court will not admit the deposition transcripts in their entirety.  Because Defendants identify deposition transcripts of witnesses who are available to testify, the Court concludes that this deposition testimony is not admissible as former testimony under Rule 804(b)(1).  However, the Court may admit prior statements of witnesses or parties under Rule 801(d), so long as the statements meet the requirements of that rule.

### c.  Ivory Golden, Jr.

Plaintiff moves to preclude evidence related to Ivory Golden, Jr., an individual who was wanted for menacing around the time of the shooting.  ECF No. 173-1 ¶¶ 36–45.  Particularly, Plaintiff seeks to preclude "any facts concerning Golden's prior conduct or [Defendants'] beliefs about any possible danger he posed."  *Id.* ¶ 39.  Plaintiff does not seek to preclude the mention of Golden's name nor the charge for which he was wanted.  *Id.* ¶ 43.  The Court agrees with Plaintiff that Defendants' proposed exhibits related to Golden's conduct are irrelevant.  Whether Golden was, for example, involved in a fight with a non-party individual has no bearing on whether the officers had probable cause to arrest and prosecute Plaintiff.  This evidence is therefore inadmissible.  *See* Fed. R. Evid. 401, 402.  The Court will permit Defendants to testify (1) they were interested in a suspect named Ivory Golden, Jr.; (2) that Golden was wanted for menacing;

and (3) and that he was associated with a car similar to the one in which Plaintiff was riding on the night of the shooting.

Plaintiff's motion to preclude evidence related to Ivory Golden, Jr. is therefore granted as set out above.

### d.   Plaintiff's Prior Acts, Wrongs, or Crimes

Plaintiff moves to preclude evidence of the following incidents: (1) gunfire at 5 Immel Street about at 8:10 p.m. on April 1, 2016, about one hour before the underlying shooting (the "8:10 p.m. Incident"); (2) a 2015 accusation of harassment, in which Plaintiff was accused of brandishing a weapon (the "2015 Incident"); (3) a 2013 incident in Plaintiff was accused of second-degree assault, in which Plaintiff allegedly brandished a firearm (the "2013 Incident").  ECF No. 173-1 ¶¶ 46–53.  Following the 2013 Incident, Plaintiff pleaded guilty to third-degree assault and served a one-year term of imprisonment.  *Id.*  Plaintiff argues that this evidence is inadmissible under Federal Rule of Evidence 404(b) and that the evidence of Plaintiff's conviction may not be used for impeachment purposes under Rule 609.  The Court agrees with Plaintiff as to the 2013 and 2015 Incidents, but not the 8:10 p.m. Incident.

Federal Rule of Evidence 404(a) generally prohibits the admission of evidence of a person's character or character trait to "prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Similarly, under Rule 404(b), evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the persona acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  However, such evidence is admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).

The Second Circuit has instructed courts to take an "inclusionary approach" to Rule 404(b). *Gogol v. City of New York*, No. 15 Civ. 5703, 2018 WL 4616047, at *3 (S.D.N.Y. Sept. 26, 2018) (quoting *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002)). Under that approach, courts admit evidence of prior acts "if the evidence is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice." *Id.*

Defendants' purpose in introducing the 2013 and 2015 Incidents—to establish the "behavior of Plaintiff in and around his neighborhood" and to give "the jury an accurate look at the neighborhood where this incident occurred," ECF No. 174-4 at 6—is not an appropriate use of this evidence under Rule 404(b). It is simply another way of saying that they intend to use this evidence to show that on the night of the shooting, Plaintiff acted in accordance with his propensity for violence. *See* Fed. R. Evid. 404(b)(1). The Court will not permit Defendants to do so.

Nor will the Court permit cross-examination on the incidents unless Plaintiff "opens the door." A court may, on cross-examination, allow a party to inquire into "specific instances of a witness's conduct . . . if they are probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b)(1). "General acts of violence or threats are simply not probative of an individual's credibility." *Munafo v. Metropolitan Transp. Auth.*, Nos. 98-CV-4572, 00-CV-0134, 2003 WL 21799913, at *25 (E.D.N.Y. Jan. 22, 2003). Plaintiff's prior acts of harassment and assault are not, therefore, permissible material for cross-examination under Rule 608(b)(1). However, if Plaintiff testifies, for example, that he has never engaged in or been accused of engaging in violent conduct, inquiring into those specific circumstances will be warranted under Rule 608(b).

Finally, Plaintiff's 2013 conviction of third-degree assault is not admissible for impeachment purposes under Rule 609.  A court must admit evidence of a misdemeanor conviction if it "can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  This prong of Rule 609(a) is "restricted to convictions that bear directly on the likelihood that the [witness] will testify truthfully."  *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977).  It does not, therefore, encompass crimes of force, such as assault.  *Id.*

Plaintiff was convicted by guilty plea in 2013 of assault in the third degree under N.Y. Penal Law § 120.00 and was sentenced to a definite sentence of imprisonment of one year, the maximum permitted for a class A misdemeanor offense.  *See* N.Y. Penal Law §§ 60.01(3)(a), 70.15(1).  None of the elements of third-degree assault involve a "dishonest act" or "false statement."  *See* N.Y. Penal Law § 120.00.  Accordingly, Plaintiff did not need to admit to such an act or statement in pleading guilty to that offense.   It therefore does not come within the scope of Rule 609(a)(2).

The Court will not, however, preclude evidence of the 8:10 p.m. Incident.  That incident involved an altercation between Plaintiff's girlfriend's cousins, who apparently threatened Plaintiff and fired guns in the air in his presence.  ECF No. 179 at 2.  According to Defendants, "there is no allegation that Plaintiff fired a gun, only that guns were fired while he was present in front of his home."  *Id.*  Defendant argues that this evidence is relevant because it goes "directly to the police officers' and Plaintiff's state of mind and his actions or non-actions on April 1, 2016" and are relevant as "circumstances surrounding the arrest."  *Id.* at 3.  Plaintiff argues that evidence of this incident is inadmissible under Rule 404.  The Court disagrees.

Defendant's evidence related to the 8:10 p.m. Incident is not admissible to show that Plaintiff acted violently one hour later in accordance with his character for violence. *See* Fed. R. Evid. 404(b)(1). But, taking an inclusionary approach to Rule 404(b), such evidence of the earlier altercation is admissible to explain why Plaintiff may have had a gun at that time. *See* Fed. R. Evid. 404(b)(2).

The Court also concludes that this evidence satisfies Rule 403's "probative-prejudice balancing test." *Jean-Laurent*, 840 F. Supp. 2d at 555. In this case, the jury will need to determine whether Plaintiff or Defendants are telling the truth about what happened on the night of the shooting. One aspect of what happened is whether Plaintiff was armed when he exited his neighbor's vehicle. His involvement in an altercation in which someone fired a gun would give him reason to arm himself later, making it more likely that he had a gun when he exited his neighbor's vehicle about an hour later. The lack of allegations that Plaintiff fired the gun during the earlier altercation reduces the probative value of this evidence. But it still retains some probative force in explaining why Plaintiff would have a gun during an otherwise ordinary trip to a nearby store.

Moreover, while Plaintiff contends that this evidence is "highly prejudicial," ECF No. 173-5 at 11, he does not describe how it is *unfairly* prejudicial. "Among other things, evidence of other acts is generally not unfairly prejudicial when, as here, it is 'no more sensational or disturbing' than the conduct at issue in the case." *Boyce v. Weber*, 2021 WL 2821154, at *6 (S.D.N.Y. July 7, 2021). A central issue in this case is whether Plaintiff shot at Defendant Ferrigno. His limited involvement in the 8:10 p.m. Incident is far less sensational than that. Accordingly, even if the probative value of the 8:10 p.m. Incident is somewhat limited, Plaintiff has not demonstrated that

its probative value is substantially outweighed by the danger of unfair prejudice. His motion to preclude evidence of this incident is therefore denied.

Plaintiff's motion to preclude evidence related to the 2013 and 2015 Incidents, as well as Plaintiff's 2013 misdemeanor conviction, is granted. His motion to preclude evidence related to the 8:10 p.m. Incident is denied.

### e.  Evidence Recovered from Searches

Plaintiff has moved to preclude the introduction of evidence of the results of police searches of Plaintiff, his person, his home, and the car in which he was riding as irrelevant and potentially prejudicial. *See* ECF Nos. 173 at 2, 173-5 at 11. During the pretrial conference, Defendants disavowed any intention to introduce such evidence. The Court therefore denies Plaintiff's motion without prejudice to renewing the motion should Defendants seek to introduce such evidence at trial.

## II.   Defendants' Motions

Defendants move for the following: (1) dismissal of the § 1983 malicious prosecution, fair trial, and failure to intervene claims and New York law malicious prosecution claim against Defendants Ciminelli, Wetzel, and Wiater; (2) preclusion of unsubstantiated disciplinary complaints against Defendants or law enforcement witnesses; (3) permitting evidence related to the 2013, 2015, and 8:10 p.m. Incidents; (4) permitting ShotSpotter evidence; (5) precluding the testimony of prospective witness Elizabeth Riley; and (6) preclusion of Plaintiff's medical expert and report. ECF No. 174-4 at 1–2. The Court considers each motion in turn.

### a.  Dismissal of Claims against Defendants Ciminelli, Wetzel, and Wiater

Defendant moves to dismiss the remaining claims against Defendants Ciminelli, Wetzel, and Wiater.[1]  ECF No. 174-4 at 2–3.  Plaintiff argues that the Court should deny the motion because it is an improper second summary judgment motion.  ECF No. 178-2 at 1–3.  The Court agrees with Plaintiff in part.

The Court first notes that a motion *in limine* is "generally not the appropriate vehicle for effecting dismissal of entire claims." *Altruis Group, LLC v. ProSight Specialty Mgmt. Co., Inc.*, No. 21-CV-10757, 2023 WL 4784233, at *5 (S.D.N.Y. July 26, 2023); *see also Securitron Magnalock Corp. v. Schnabolk*, No. 89 Civ. 6731, 1994 WL 320708, at *1 ("[A] motion in limine is *not* the appropriate means to narrow, limit, or fix the issues for trial.").  Nevertheless, courts in this Circuit have occasionally converted motions *in limine* into motions to dismiss or motions for summary judgment, or simply addressed them on the merits.  *See Pavone v. Puglisi*, No. 08 C 2389, 2013 WL 245745, at *2 (S.D.N.Y. Jan. 23, 2013); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 335 (S.D.N.Y. 2003); *see e.g.*, *Pepe v. Maklansky*, 67 F. Supp. 2d 186, 186–89 (S.D.N.Y. 1999); (addressing merits of motion *in limine* seeking dismissal of certain claims) *Wright v. Kelley*, 1998 WL 912026, at *1–2 (W.D.N.Y. Oct. 16, 1998) (same).

### i.  Ciminelli

After summary judgment, three claims remain against Defendant Ciminelli: § 1983 malicious prosecution, § 1983 denial of the right to a fair trial, and New York law malicious prosecution.  Defendants move to dismiss those claims against Defendant Ciminelli in light of the

---

[1] Defendants seek dismissal of Plaintiff's § 1983 failure to intervene claim against Defendants Ciminelli, Wetzel, and Wiater.  ECF No. 174-4 at 1.  The Court dismissed the failure to intervene claim against all Defendants except Christopher Muscato for failure to state a claim in 2019.  *See* ECF No. 39 at 30.  Plaintiff's failure to intervene claim remains only against Defendant Muscato.  *See* ECF No. 39 at 22; ECF No. 153 at 18–20.  This branch of Defendants' motion to dismiss Plaintiff's remaining claims against Defendants Ciminelli, Wetzel, and Wiater is therefore denied as moot.

Court's summary judgment analysis of Plaintiff's supervisory liability claim against him.  *See* ECF No. 174-4 at 2.  As explained below, the Court concludes that the remaining claims against Ciminelli should also be dismissed.

The Court analyzed Defendant Ciminelli's participation in the conduct underlying Plaintiff's malicious prosecution and fair trial claims in its decision on Defendants' motion for partial summary judgment.  In that decision, the Court concluded that even if Plaintiff's evidence showed that Ciminelli "responded to the scene, went to the Public Safety Building where the investigation was ongoing, and spoke with officers regarding information they obtained from ShotSpotter," that was not enough to support an inference that he "played an active role" in Plaintiff's prosecution or "had a hand in passing along fabricated information to the District Attorney." *Simmons v. Ferrigno*, 17-CV-6176, 2023 WL 5983797, at *14 (quoting *Taylor*, 2022 WL 744037, at *16) (W.D.N.Y. Sept. 14, 2023) ("*Simmons II*").  The Court further explained that even if the evidence showed that Ciminelli knew that his subordinates were engaged in unconstitutional behavior, that would not be enough to establish his liability for the constitutional violations.  *See id.*  (citing *Taylor*, 2022 WL 744037, at *11).  Accordingly, the Court granted summary judgment for Defendants on Plaintiff's supervisory liability claim to the extent that it arose out of the Defendants' alleged malicious prosecution and denial of Plaintiff's right to a fair trial under § 1983.  *Id.* at 15.

The Court views Defendants' motion, at least with respect to Ciminelli, as implicating the law of the case doctrine.  Under that doctrine, "[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, absent cogent and compelling reasons to the contrary." *JLM Couture, Inc. v. Gutman*, 91 F. 4th 91, 101 (2d Cir. 2024) (internal quotation marks omitted).  Here, the Court has already ruled that Defendant was

entitled to summary judgment on Ciminelli's personal involvement in the alleged malicious prosecution and denial of Plaintiff's right to a fair trial. *See Simmons II*, 2023 WL 5983797, at *14–15. Because the Court has therefore concluded that Plaintiff failed to "raise a genuine dispute as to whether '[Ciminelli], through [his] own individual actions," violated Plaintiff's constitutional rights, *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)), there is no basis for these claims against Ciminelli to go before the jury. The Court will adhere to its earlier conclusion that Plaintiff had failed to raise a genuine issue of material fact as to Ciminelli's personal involvement in the alleged constitutional violations, and therefore dismiss Plaintiff's § 1983 malicious prosecution and fair trial claims as to Defendant Ciminelli.

Finally, the Court notes that, unlike claims brought pursuant to § 1983, liability under a theory of *respondeat superior* is available for a New York law malicious prosecution claim. *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010). However, because Ciminelli was "subordinate to the City under the chain of *respondeat superior*," he has "no individual responsibility fastened on [him] in the circumstances." *Sankar v. City of New York*, 867 F. Supp. 2d 297, 313 n.13 (E.D.N.Y. 2012) (quoting *Marshon v. City of New York*, 88 A.D.2d 811, 812 (1st Dep't 1982)). Accordingly, because the Court has previously determined that Ciminelli was not personally involved in the conduct underlying the malicious prosecution claim and because he cannot be held liable under a theory of *respondeat superior*, Plaintiff's state law malicious prosecution claim against Ciminelli must also be dismissed.

### ii. Wetzel and Wiater

Unlike the claims against Ciminelli, Defendants did not move for summary judgment on the malicious prosecution and fair trial claims against Defendants Wetzel and Wiater. This branch of Defendants' motion does not, therefore, implicate the law of the case doctrine in the same way.

14

Instead, as to Wetzel and Wiater, this motion is a successive summary judgment motion disguised as a motion *in limine*. *See Young v. Kadien*, No. 09-CV-6639, 2013 WL 4495010, at *1 (W.D.N.Y. Aug. 20, 2013). Such a motion is "not [the] proper vehicle . . . to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense." *Id.* (quoting *Pavone*, 2013 WL 245745, at *1). That is the function of a summary judgment motion, "with its accompanying and crucial procedural safeguards." *Id.* The Court therefore denies Defendants' motion to dismiss Plaintiff's malicious prosecution and fair trial claims against Defendants Wetzel and Wiater.

Moreover, whether Plaintiff's claims against Wetzel and Wiater should be dismissed was addressed by Judge Telesca in his October 5, 2019 Decision and Order granting in part and denying in part Defendants' motion to dismiss. *See Simmons v. Ferrigno*, No. 17-CV-6176, 2019 WL 12361880, at *7 (W.D.N.Y. Aug. 5, 2019) ("*Simmons I*"). That decision was entered over four years ago. Since then, the parties have engaged in extensive discovery, presumably "develop[ing] the record to determine whether or not sufficient facts exist" to support Plaintiff's claims against the many defendants in this case. Defendants were free to seek summary judgment on Plaintiff's claims against Wetzel and Wiater but chose not to. *See* ECF No. 132. Defendants have offered neither a good reason for their failure to do so, nor new facts that would warrant consideration of a successive summary judgment motion. *See Campers' World Int'l, Inc. v. Perry Ellis Int'l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004) ("[I]t is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion.").

Defendant devotes only two sentences to describing Wetzel's and Wiater's personal involvement, and points to no case law supporting the proposition that their involvement was sufficiently limited to warrant dismissal. *See* ECF No. 174-4 at 3. Considering the sparse

treatment of this issue in Defendants' briefing, the Court declines to grant what is in effect a second motion for partial summary judgment in the guise of a motion *in limine*. *See Pac. Controls Inc. v. Cummins Inc.*, No. 19-cv-3428, 2023 WL 5022728, at *1 n.1 (S.D.N.Y. July 7, 2023); *Young*, 2013 WL 4495010, at *2. Defendants' motion to dismiss Plaintiff's malicious prosecution and fair trial claims against Wetzel and Wiater is therefore denied.

### b. Unsubstantiated Complaints Against City Defendants or Other Law Enforcement Witnesses

Defendants move to preclude the introduction of unsubstantiated complaints against the City Defendants or other law enforcement witnesses. ECF No. 174-4 at 4. Plaintiff concedes that the case law appears to preclude introduction of this evidence. ECF No. 178-2 at 3. As explained below, the Court will preclude the unsubstantiated complaints against Defendants or other law enforcement witnesses.

Under Rule 608, the court may, on cross-examination, allow a party to inquire into specific instances of conduct to attack a witness's character for truthfulness if they are probative of the witness's character for untruthfulness. *See* Fed. R. Evid. 608(b)(1). Extrinsic evidence is not admissible to prove those specific instances of conduct, however. Fed. R. Evid. 608(b). And, "as a general matter, complaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bermudez v. City of New York*, No. 15-CV-3240, 2019 WL 136633, at *6 (E.D.N.Y. Jan. 8, 2019) (internal quotation marks and brackets omitted). Accordingly, Plaintiff may not introduce the unsubstantiated complaints to attack a witness officer's character for truthfulness. *Id.* However, he may inquire into the underlying conduct if he can establish that it relates to the witness's truthfulness or lack thereof. *See* Fed R. Evid. 608(b); *Bermudez*, 2019 WL 136633, at *6.

To the extent that Plaintiff seeks to introduce unsubstantiated complaints of excessive force to prove that Defendants Ferrigno and Giancursio used excessive force against him, the Court will not permit him to do so.  Evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But it may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  Under the Second Circuit's "inclusionary rule," evidence of prior crimes, wrongs, or acts is admissible "for any purpose other than to show [a person's] . . . propensity, as long as the evidence is relevant and satisfies" the balancing test of Rule 403.  *Bermudez*, 2019 WL 136633, at *6 (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

Accordingly, evidence of complaints against police officers may be admissible under Rule 404(b) when the complaints share "unusual characteristics" with the conduct at issue so as to represent a "unique scheme."  *Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991)).  However, courts in this circuit have been "highly reluctant" to admit unsubstantiated complaints "on the ground that such evidence's probative value is substantially outweighed by the danger of unfair prejudice" under Rule 403.  *Gogol*, 2018 WL 4616047, at *3 (citing *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011)).

The unsubstantiated complaints and reports here are insufficient to show that Defendants engaged in a pattern of unlawful uses of force.  In many cases, the factual basis for the complaints cannot be discerned from Plaintiff's proposed exhibits, setting out only that the complained-of incident involved the use of force.  This is not enough to warrant admission under Rule 404(b).

Moreover, even if the underlying allegations were sufficiently similar, the Court would still preclude the unsubstantiated complaints under Rule 403. *Gogol*, 2018 WL 4616047, at *3.

The Court will therefore grant Defendants' motion to preclude the unsubstantiated complaints.

### c. Plaintiff's Prior Acts

As explained above, evidence of the 2013 and 2015 Incidents, including Plaintiff's 2013 conviction, are not admissible. Evidence of the 8:10 p.m. Incident is admissible. *See* Section I.d., *supra*.

### d. ShotSpotter Evidence

As explained above, other than the Maher Exhibits, the ShotSpotter evidence is relevant and admissible, subject to Defendants' ability to lay a proper foundation. *See* Section I.b., *supra*. Moreover, Defendants have failed to demonstrate that the depositions of other ShotSpotter witnesses or the correspondence between Defendants and ShotSpotter are inadmissible for any purpose. *See Starmel*, 634 F. Supp. 3d at 44. Accordingly, the Court denies their motion to preclude those exhibits.

However, as Defendants correctly point out, the Court has found that Plaintiff failed to raise a triable issue of fact as to whether ShotSpotter fabricated evidence of the initial gunshot. *See Simmons*, 2023 WL 5983797 at *15–20. So, while Plaintiff may make his case that the ShotSpotter evidence supporting his prosecution was unreliable, he may not argue that ShotSpotter or its employees fabricated the evidence or altered the audio recording.

### e. Testimony of Elizabeth Riley

Defendants argue that the Court should preclude the testimony of Plaintiff's former criminal defense attorney, Elizabeth A. Riley, Esq., because it would amount to "bolstering," and

it would be "prejudicial" for an experienced criminal defense attorney to testify on Plaintiff's behalf.  ECF No. 174-4 at 16.  Plaintiff has proposed that Ms. Riley testify about "all aspects of the [underlying state-court] criminal case," including procedural history, her subpoena of "Track Star AVLS reports and data," plea offers, motions, rulings, the verdict, and post-trial proceedings.  ECF No. 163 at 12.  In response to Defendants' motion, Plaintiff now states that he intends to call Ms. Riley for "very limited purposes," namely, (1) "to testify that she subpoenaed the AVLS GPS data for [Ferrigno's and Giancursio's] police vehicles" and her purpose in doing so and (2) to testify concerning Plaintiff's post-arraignment bail and plea offers extended to Plaintiff before and during trial."  ECF No. 178-2 at 10.

The Court will permit Ms. Riley to testify as to her efforts to obtain the GPS data, which, if it existed, would have either supported or undermined the assertion that Defendant Giancursio arrived in time to exit his vehicle before the shooting.  The Court will not permit Riley to testify as to bail amounts or plea offers because they are irrelevant.  *See Session v. Rodriguez*, 626 F. App'x 329, 332 (2d Cir. 2015) (summary order) (affirming exclusion of plea offers as irrelevant under Rule 401 in malicious prosecution and false arrest case).  The issue here is whether Defendants had probable cause to arrest Plaintiff and to institute criminal proceedings against him.  Neither the bail nor plea offers make it "more or less probable" that Defendants acted without probable cause before those offers were made.  *See id.*

Moreover, even if they were relevant, the probative value of bail and plea offers is minimal relative to the tendency of this testimony to confuse the issues or mislead the jury in light of, among other things, the difference in the parties' burdens in criminal and civil proceedings and the many factors that contribute to a prosecutor's decision to make a plea offer.  Therefore, even if this evidence were relevant, the Court would exclude it under Rule 403 because the danger of confusing

the issues or misleading the jury would substantially outweigh the probative value of this testimony. Accordingly, the Court will limit Ms. Riley's testimony to her efforts to obtain the AVLS GPS data and her purpose in doing so.

Defendants' motion to preclude Ms. Riley's testimony is therefore granted in part and denied in part.

### f.   Plaintiff's Medical Expert and Report

Defendants seek to exclude the report of Plaintiff's medical expert, Romanth Waghmarae, M.D. because he is "not qualified" and his expert report is "completely deficient." ECF No. 174-4 at 16. They identify four reasons to conclude that his report is inadmissible: (1) Dr. Waghmarae has no medical qualifications by which to forecast the need for future treatment or diagnose past or current conditions; (2) Dr. Waghmarae did not consult any treatment providers referenced in Plaintiff's medical records; (3) Dr. Waghmarae is a pain management doctor and therefore not qualified to give an opinion on current conditions and future treatments; (4) most of Dr. Waghmarae's projections relate to treatment required "for life," ranging from physical therapy, mental health counseling, to neurological and orthopedic therapy. *Id.* at 17. None of these reasons warrant preclusion.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This Rule obligates the court to serve as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.,*

*Inc.*, 509 U.S. 579, 597 (1993).  The proponent bears the burden of establishing by a preponderance of the evidence that the testimony complies with Rule 702's requirements.  *See id.*  at 593 n.10. Whether a witness is qualified by his knowledge, skill, experience, training, or education is a "threshold question" that a court must resolve before determining whether his opinion is admissible.  *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005).

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  A medical expert "need not be a specialist in the exact area of medicine implicated by the plaintiff's injury," but "he must have relevant experience and qualifications such that whatever opinion he will ultimately express would not be speculative." *Loyd v. United States*, No. 08 Civ. 9016, 2011 WL 1327043, *5 (S.D.N.Y. Mar. 31, 2011) (internal citations and quotation marks omitted).  Where an expert witness's "expertise is too general or too deficient[,]" the court "may properly conclude that witnesses are insufficiently qualified despite the relevance of their testimony[.]" *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997).

The Court is satisfied that Dr. Waghmarae's experience as an anesthesiologist and pain management physician qualifies him to opine about the expected severity and duration of Plaintiff's pain, as well as any treatment for that pain.  Given these qualifications and his experience in the area of neuromodulation, he may also testify as to evidence of nerve damage in Plaintiff's left lower extremity.  *See Loyd*, 2011 WL 1327043, *5.  Dr. Waghmarae does not appear to have any training or experience in psychiatry or psychology, however, so the Court agrees with Defendants that he should not be permitted to testify as to whether Plaintiff suffers from post-traumatic stress disorder.

21

The Court also concludes that Dr. Waghmarae's opinion regarding Plaintiff's pain and nerve damage is "based on sufficient facts or data," Fed. R. Evid. 702. In his report, Dr. Waghmarae states that he relied on information Plaintiff provided during his evaluation on November 13, 2020, as well as a review of his medical records from his admission to Strong Memorial Hospital from April 1, 2016 to April 11, 2016 and from Monroe County Jail. Defendants point to prior deposition testimony in which Dr. Waghmarae stated that he did not review Plaintiff's medical records "up to . . . October 14, 2022," ECF No. 174-4 at 16. The Court will not preclude Dr. Waghmarae's testimony or his report on this basis. But Defendants may explore the apparent inconsistency between Dr. Waghmarae's statement in his December 2020 report and his deposition testimony on cross-examination.

For these reasons, Defendants' motion to preclude Dr. Waghmarae's testimony and expert report is denied as set out above.

### III.    Plaintiff's Request for Judicial Notice

Plaintiff has also filed a letter requesting that the Court take judicial notice of two documents: (1) County Court Judge Christopher S. Ciaccio's February 13, 2018 Decision and Order setting aside the jury verdict finding Plaintiff guilty of Criminal Possession of a Weapon in the Second Degree under Penal Law § 265.03(3) (the "County Court Order") and (2) the Certificate of Disposition recording that the jury acquitted Plaintiff of three of the four felony charges and that County Court granted Plaintiff's motion to dismiss the fourth charge, Criminal Possession of a Weapon in the Second Degree under Penal Law § 265.03(3) (the "Certificate of Disposition"). ECF No. 171 at 1. Plaintiff asks the Court to take judicial notice, pursuant to Rule 201, "of the acts which [the documents] record," that is that he was found not guilty on three of the four charges,

that the court set aside the jury's guilty verdict on the fourth, and that the indictment was subsequently dismissed on motion. *Id.*

Under Rule 201, a court may judicially notice a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). On timely request, a party is entitled to be heard "on the propriety of taking judicial notice and the nature of the fact to be noticed." Fed. R. Evid. 201(e). If the court takes judicial notice before notifying a party, that party is still entitled to be heard on request. *Id.* In a civil case, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

Courts routinely take judicial notice of documents filed in other courts, "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." See *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Courts may likewise take judicial notice of "public records, including 'arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition.'" *Henry v. Brzeski*, No. 21-CV-5682, 2023 WL 2024171, at *4 (E.D.N.Y. Jan. 26, 2023) (quoting *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017); *see e.g.*, *id.* at *4–5 (taking judicial notice of state court decisions in criminal proceedings); *Livingston v. Henderson*, No. 15-CV-631, 2019 WL 1427689, at *5 & n.8 (N.D.N.Y. Mar. 29, 2019) (taking judicial notice of certificate of disposition indicating that plaintiff's state criminal charges were covered by disposition in another case).

Having given Defendants an opportunity to be heard during the pretrial conference, the Court grants Plaintiff's request. Pursuant to Rule 201, the Court will take judicial notice of the following: (1) that the jury acquitted Plaintiff as set out in the Certificate of Disposition; (2) that County Court set aside the jury verdict finding Plaintiff guilty of second-degree criminal possession of a weapon; and (3) that that charge was dismissed as set out in the Certificate of Disposition. However, the County Court Order itself will not be admissible.

## CONCLUSION

As set out above, Plaintiff's (1) motion to preclude ShotSpotter evidence is GRANTED in part and DENIED in part; (2) motion to preclude deposition transcripts is GRANTED; (3) motion to preclude evidence related to Ivory Golden, Jr. is GRANTED; (4) motion to preclude evidence of Plaintiff's prior acts, wrongs, crimes, or convictions is GRANTED in part and DENIED in part; (5) motion to preclude evidence of items recovered from the search of Plaintiff, his person, his home, or the vehicle in which he was riding is DENIED without prejudice.

Defendants' (1) motion to dismiss claims against Defendants Ciminelli, Wetzel, and Wiater is GRANTED in part and DENIED in part; (2) motion to preclude unsubstantiated complaints against Defendants or other law enforcement witnesses is GRANTED; (3) motion to permit the introduction of Plaintiff's prior acts, wrongs, crimes, or convictions is GRANTED in part and DENIED in part; (4) motion to permit the introduction of ShotSpotter evidence is GRANTED; (5) motion to preclude the testimony of Elizabeth Riley, Esq. is GRANTED in part and DENIED in part; (6) motion to preclude Plaintiff's medical expert and his report is DENIED.

Plaintiff's request for judicial notice, ECF No. 171, is GRANTED as set out above.

IT IS SO ORDERED.

Dated: March 22, 2024
      Rochester, New York

_____

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York