MANDATE

24-2204-cv
*Simmons v. Ferrigno*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of June, two thousand twenty-five.

PRESENT:
>> GERARD E. LYNCH,
>> JOSEPH F. BIANCO,
>> STEVEN J. MENASHI,
>>> *Circuit Judges*.

---

SILVON S. SIMMONS,

>> *Plaintiff-Appellant,*

>> v.     24-2204-cv

JOSEPH M. FERRIGNO II, SAMUEL GIANCURSIO, CITY OF ROCHESTER,

>> *Defendants-Appellees*,

MICHAEL L. CIMINELLI, MARK WIATER, CHRISTOPHER MUSCATO, ROBERT WETZEL, JOHN DOES 1-30, SHOTSPOTTER, INC., SST, INC., PAUL C. GREENE,

>> *Defendants.*

---

FOR PLAINTIFF-APPELLANT:     CHARLES F. BURKWIT, Burkwit Law Firm, PLLC, Rochester, New York.

1

MANDATE ISSUED ON 07/14/2025

FOR DEFENDANTS-APPELLEES:           JOHN M. CAMPOLIETO, Municipal Attorney,
                                    *for* Patrick Beath, Corporation Counsel, City
                                    of Rochester, Rochester, New York.

Appeal from a judgment and order of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court, entered on April 26, 2024 and July 23, 2024, respectively, are **AFFIRMED**.

Plaintiff-Appellant Silvon S. Simmons appeals from the judgment of the district court and its subsequent order denying his motion for a new trial, pursuant to Federal Rule of Civil Procedure 59, after a jury returned a verdict in favor of Defendants-Appellees Joseph M. Ferrigno II, Samuel Giancursio, and the City of Rochester (collectively, "Defendants") on his federal claims under 42 U.S.C. § 1983 for false arrest, excessive force, malicious prosecution, and denial of a fair trial, as well as his related state law claims, in connection with injuries he sustained when shot by a police officer on April 1, 2016 in Rochester, New York.[1]  We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

The trial took place from April 9 to April 25, 2024, and involved the testimony of over thirty witnesses and the introduction of over one hundred exhibits.  At trial, Defendants maintained that:  (1) on the night of April 1, 2016, Officers Ferrigno and Giancursio were in separate police cars following a Chevy Impala, in which Simmons was a passenger, that matched the description

---

[1]  Prior to trial, the district court dismissed, or granted summary judgment in favor of the defendants on, all other claims brought by Simmons.  On appeal, Simmons does not challenge the district court's determinations with respect to those other claims.

2

of one used by a suspect wanted in an unrelated investigation; (2) Officer Ferrigno parked his vehicle in front of the driveway at 9 Immel Street right after the Impala parked there; (3) as Officer Ferrigno approached the parked Impala on foot, Simmons got out of the Impala and, as Simmons ran towards the backyard with Officer Ferrigno chasing him, Simmons fired a gun at him; and (4) Officer Ferrigno returned fire four times (hitting Simmons with three shots), as Officer Giancursio approached, and Simmons was subsequently searched and placed under arrest by Officer Giancursio.[2]  Evidence was introduced at trial that a gun was found a few feet from where Simmons fell after the shooting, with a spent nine millimeter shell casing in the chamber. Simmons, on the other hand, asserted that:  (1) he ran away from the car because he had no idea that the person approaching him, while holding a gun, was a police officer; (2) he (Simmons) had no gun that evening and never even turned toward Officer Ferrigno as he ran away; and (3) Officer Ferrigno fired multiple shots at him without justification, seriously injuring him.  Following the jury verdict in Defendants' favor on all claims, Simmons filed a Rule 59 motion, arguing that the district court had made several erroneous evidentiary rulings that warranted a new trial.  The district court denied the motion.

On appeal, Simmons argues that the district court erred in denying his motion for a new trial because it improperly admitted:  (1) evidence related to audio sounds that had been collected by the ShotSpotter system operating in the vicinity of the shooting[3]; and (2) testimony regarding

---

[2]  Simmons was charged in state court with attempted aggravated murder, attempted aggravated assault of a police officer, and two counts of criminal possession of a weapon in the second degree.  In 2017, Simmons's criminal trial resulted in an acquittal on all but one count, namely, criminal possession of a weapon in the second degree.  On February 13, 2018, the trial court set aside the verdict, vacated the conviction, and ordered a new trial.  The indictment was subsequently dismissed.

[3]  "Shot Spotter is an acoustic gunshot detection and location system," consisting of a network of acoustic sensors, each of which records audio in a geographic region.  Supp. App'x at 6–7.  When a ShotSpotter sensor detects an acoustic impulse typical of gunfire, "it time stamps it from its internal clock, internal GPS clock and then sends that time stamp to a central location server software," which then "calculate[s] the

a separate incident involving gunfire near Simmons's home that occurred approximately one hour before the shooting at issue here, as well as testimony elicited from Simmons during cross-examination regarding his possession of various bullets in his residence.

"We review a denial of a Rule 59 motion for a new trial under an abuse of discretion standard," *Ortiz v. Stambach*, 137 F.4th 48, 71 (2d Cir. 2025), keeping in mind that "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice," *id.* at 72 (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)). Moreover, evidentiary rulings are subject to review only under a deferential abuse-of-discretion standard, requiring a showing that the challenged rulings are "arbitrary and irrational." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 256 (2d Cir. 2021) (internal quotation marks and citation omitted).

## I.   ShotSpotter Evidence

Simmons first challenges the district court's admission of several pieces of evidence related to the ShotSpotter audio recordings that collected sounds from the night in question in the vicinity of 9 Immel Street. In particular, the district court admitted ShotSpotter audio recordings, which captured five impulsive noises on April 1, 2016, in the vicinity of 9 Immel Street: one noise at 9:09:35 p.m., and then four more such noises in rapid succession starting a few seconds later beginning at 9:09:37 p.m. There was also uncontroverted evidence at trial that the call of "shots fired" was made by Officer Ferrigno to police dispatch at 9:10 p.m.

Prior to trial, Simmons filed a motion *in limine* seeking to preclude the ShotSpotter evidence in its entirety. The district court granted the motion to the extent that it precluded

---

geographic origin of where that impulsive noise came from" and then that information is reported to the law enforcement customer. *Id*. at 7.

Defendants from offering any expert testimony through ShotSpotter employees, including any opinion as to whether the noises on the audio recordings were gunshots. *See Simmons v. Ferrigno*, No. 17-cv-6176-FPG, 2024 WL 1229285, at *3 (W.D.N.Y. March 22, 2024). However, the district court denied the motion insofar as Simmons sought to preclude the audio recordings themselves or the testimony of ShotSpotter employee Paul Greene, as well as his Detailed Forensic Report ("DFR") documenting the sounds on the recording, which would lay the foundation for the admission of the recordings by explaining how they were made. *Id*. at *1–3.

Simmons contends that the district court abused its discretion by not excluding the ShotSpotter evidence in its entirety, arguing that the recordings were irrelevant, not properly authenticated, and, in any event, that any probative value was substantially outweighed by its prejudicial effect under Federal Rule of Evidence 403. We disagree.

Pursuant to Rule 401, "[e]vidence is relevant if: (a) it has *any tendency* to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). We have emphasized that this is "a low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019).

Here, the district court reasonably determined that the ShotSpotter audio recordings were relevant to the central question of whether Simmons had a gun and fired first at Officer Ferrigno, which then caused Officer Ferrigno to fire four shots at Simmons. In other words, because it was undisputed that Officer Ferrigno fired only four shots, evidence of a sound that a reasonable juror could conclude represented an additional gunshot (prior to the sound of four gunshots) would support Defendants' position. Indeed, Simmons concedes that the evidence was presented because it "would tend to persuade [the jury] that five shots had been fired that night at that location." Appellant's Br. at 33.

5

Simmons nevertheless suggests that the recordings were irrelevant because they were "factually indistinguishable from blurry photographs which could mean different things to different people," *id*. at 30–31, and "[n]either the recording nor Greene's report and testimony could establish" that a total of five gunshots were fired, *id*. at 33.  However, we have emphasized that "[t]o be relevant, evidence need not be sufficient by itself to prove a fact in issue," *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010), and explained that "[n]onconclusive evidence should still be admitted if it makes a proposition more probable than not," *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) (internal quotation marks and citation omitted).  Here, the jury could consider the recordings in conjunction with the other trial evidence (including the uncontroverted evidence regarding the timing and location of the four shots fired by Officer Ferrigno), and rationally find that it was more probable than not that the sound on the recording at 9:09:35 p.m., which preceded by a few seconds the four sounds in rapid succession on the recording, was an additional gunshot.  Thus, the district court did not abuse its discretion in determining that the ShotSpotter evidence, including the audio recordings, was relevant to "the officers' justification for the use of force against [Simmons] and their grounds for his arrest." *Simmons*, 2024 WL 1229285, at *2.  That the recordings "could mean different things to different people," Appellant's Br. at 31, is precisely why they were properly presented to the jury, since they could mean "five gunshots" to a reasonable juror.

We are equally unpersuaded by Simmons's contention that Greene could not lay the foundation for the admission of the recordings.  We have emphasized that "[t]he bar for authentication of evidence [under Fed. R. Evid. 901(a)] is not particularly high," and "[g]enerally, [an item] is properly authenticated if a reasonable juror could find in favor of authenticity." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks and citation

6

omitted). The proponent of the evidence need not "rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks and citation omitted). Here, contrary to Simmons's suggestion, the fact that the recordings were manually downloaded from the computer system by another technician before Greene analyzed them does not render those recordings inadmissible.

Testifying as a fact witness, Greene explained to the jury how the ShotSpotter system automatically records and stores the audio in digital files, and how he then created his DFR in the regular course of ShotSpotter's business, using a computer software to display a timeline of the audio recordings and the location of the sounds. Greene testified that he analyzed the recordings six days after they were securely stored in the ShotSpotter computer system and that he could determine from the metadata in the downloaded digital files that the recordings were not altered or modified before he analyzed them. That testimony alone provided a more than sufficient basis to show that it was "improbable that the original item had been exchanged with another or otherwise tampered with." *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992) (internal quotation marks and citation omitted).

Moreover, during cross-examination of Greene, Simmons's counsel was "allowed to develop testimony related to . . . alleged tampering and to argue to the jury that the [recordings] may have been incomplete." *See United States v. Sovie*, 122 F.3d 122, 127–28 (2d Cir. 1997) (citation and footnote omitted). And his counsel was permitted to fully explore any issues with respect to the storage of the recordings, as well as the accuracy of the ShotSpotter system as a whole, which initially detected and reported only three (rather than five) impulsive noises at the relevant time and location and classified them as helicopter noises (rather than gunshots).

7

Accordingly, the district court did not abuse its discretion regarding these alleged issues with respect to the recordings, as well as Greene's testimony and DFR. Because it properly determined that those were issues "of weight rather than admissibility, the court properly left [them] to the jury."[4] *Id.*

Finally, with respect to the requisite balancing under Rule 403, the district court found, as noted above, that the ShotSpotter evidence was probative of the key issue of whether Simmons shot at Officer Ferrigno first, prompting him to return fire with four shots. With respect to its potential danger of prejudice, the district court noted that Simmons "[had] not shown that admitting the audio recording would produce any adverse effect beyond tending to prove that there were five gunshots." *Simmons*, 2024 WL 1229285, at *2. As this court has made clear, "unfair" prejudice must involve some adverse effect "beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (internal alteration, quotation marks, and citation omitted). Thus, the district court correctly concluded the evidence would not violate Rule 403.

The district court also determined that "admitting the audio recording d[id] not pose a danger of confusing the issues because whether Defendants Ferrigno and Giancursio heard a

---

[4] To the extent that Simmons relies on the state court decision in his criminal case, which vacated his conviction and ordered a new trial after concluding that Greene's testimony and the audio recordings should have been precluded, that reliance is misplaced. As an initial matter, several grounds for that decision—including that Greene was permitted to testify as an expert witness (that the noises on the recordings were gunshots) without a pre-trial hearing, that Simmons failed to receive subpoenaed records that would have allowed for effective cross-examination, and that the admission of a DVD of the recordings violated the best evidence rule—are inapposite here. Unlike in the criminal trial, the district court did not permit Greene to testify as an expert witness, and he was not permitted to render any expert opinion regarding the classification of the noises. Moreover, Simmons acknowledges, with respect to the recordings themselves, that he "is not raising any issues regarding the best evidence rule" in this appeal. Appellant's Br. at 29. In any event, the state court decision in the criminal case was not binding on the district court and, in our review, provides no basis to undermine the district court's proper exercise of its discretion with respect to the admissibility of the ShotSpotter evidence in this civil trial.

gunshot before Ferrigno fired is relevant to the claims and defenses at issue," and "after hearing the recording, the members of the jury will be able to decide whether the first sound is a gunshot or not." *Id.* That decision, too, fell within its discretion.

Nor is it persuasive that Greene occasionally referred to "shots" rather than "impulses" in his testimony. Simmons acknowledges that "when the recordings were played to the jury [Greene] was generally careful to describe them as containing only 'impulsive noises.'" Appellant's Br. at 29–30. Nevertheless, he argues that Greene referred to the noises as gunshots in other parts of his testimony and in his report, and that such references blurred the district court's ruling and potentially confused the jury. *Id.* However, during cross-examination of Greene, Simmons's counsel himself made explicit references to the fact that Greene testified both at the criminal trial against Simmons and at his deposition in the civil case that he had re-classified the noises on the recordings as gunshots. *See, e.g.*, App'x at 676 ("Q. And did you testify in [the criminal] case that there were five impulses, that there were five *gunshots*?" (emphasis added)); *id*. at 683 ("Q. [D]id you testify [at the deposition] that in fact there were three different sets of audio clips that all had five *shots* on them?" (emphasis added)). In addition, during cross-examination, Simmons's counsel repeatedly referred in his questions to the classification of the noises by Greene as "gunshots" or "rounds" in his DFR. At no time during or after Greene's testimony did Simmons object to Greene's language, request that the court redact any references to 'gunshots' from the DFR, or move to strike any references to 'gunshots' in Greene's testimony. Instead, he sought to exploit Greene's reclassification of the noises as gunshots to attack Greene's credibility and demonstrate the overall unreliability of his testimony and the ShotSpotter system.

Simmons cannot now complain of any purported jury confusion caused by his strategic decision to raise no objection to the references to gunshots during Greene's testimony or in the

DFR. Where no objection was made and "at times, [a party] actually welcomed the admission" of certain evidence to use it to his advantage, we will not on appeal assist his "attempt[s] to evade the consequences of an unsuccessful tactical decision." *See United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (rejecting defendant's claim of prejudice regarding the admission of certain evidence).

In sum, because the district court "conscientiously balanced the proffered evidence's probative value with the risk for prejudice" and jury confusion, and its conclusion was not "arbitrary or irrational," *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006), we discern no basis to disturb the district court's exercise of its discretion with respect to the admissibility of the ShotSpotter evidence.

## II.   Other Evidentiary Rulings

Simmons also argues that the district court erred in admitting, pursuant to Rule 404(b), testimony concerning: (1) a separate shooting incident involving other individuals which occurred near Simmons's residence at 5 Immel Street, roughly one hour prior to Simmons's encounter with Officer Ferrigno (the "Earlier Incident"); and (2) Simmons's possession of various rounds of ammunition in his home. Specifically, Simmons contends that this testimony should have been excluded on the grounds that it was impermissible propensity evidence, and, in any event, any probative value was substantially outweighed by potential prejudice. We disagree.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, under this Circuit's "inclusionary approach," "other-crimes evidence *is* admissible if offered for any purpose *other than* to show a defendant's criminal propensity," including motive, opportunity, knowledge, and intent. *United*

*States v. Williams*, 930 F.3d 44, 62-63 (2d Cir. 2019) (emphases in original) (internal quotation marks and citation omitted). Any relevant "other acts" evidence permissible under Rule 404(b) may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002).

Here, in denying Simmons's motion to preclude the evidence of the Earlier Incident on April 1, 2016, the district court noted that it "involved an altercation between Plaintiff's girlfriend's cousins, who apparently threatened Plaintiff and fired guns in the air in his presence" at 8:10 p.m. in front of his home at 5 Immel Street, and determined it was "admissible to explain why [Simmons] may have had a gun" when he was approached by Officer Ferrigno one hour later at 9 Immel Street. *Simmons*, 2024 WL 1229285, at *5; *see also id*. ("[Simmons's] involvement in an altercation in which someone fired a gun would give him reason to arm himself later, making it more likely that he had a gun when he exited his neighbor's vehicle about an hour later."). First, the testimony about the behavior of certain visitors to Simmons's house does not constitute evidence of any crime or bad act on the part of Simmons, so Rule 404(b) does not apply. But even if it did, given that the testimony regarding the Earlier Incident was relevant to Simmons's motive to possess a gun on the evening in question, such testimony was properly admitted under Rule 404(b). *See United States v. Wiggins*, 787 F. App'x 775, 779 (2d Cir. 2019) (summary order) ("[T]he evidence showing access to a firearm and his motive for possessing the loaded gun is highly probative on the disputed issue of whether [the defendant] possessed the firearm found near him at the time of his arrest." (internal quotation marks and citation omitted)). Simmons argues that such evidence "might have explained *why* he had one, if indeed he did, but it is not independent evidence that he did." Appellant's Reply Br. 12 (emphasis in original). However, the motive regarding the possession of a gun is admissible under Rule 404(b), even if other evidence is

necessary to establish that he, in fact, possessed the gun on April 1, 2016.[5]

With respect to the Rule 403 balancing, the district court reasonably determined that "[h]is limited involvement in the 8:10 p.m. Incident [was] far less sensational" than the allegation that he later shot a police officer. *Simmons*, 2024 WL 1229285, at *5. Under our precedents, "the probative value of prior bad-act evidence is not substantially outweighed by the risk of prejudice if the conduct is not 'any more sensational or disturbing' than the charged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019)). Simmons has not identified how or why such evidence was unfairly prejudicial—particularly where Defendants did not assert that Simmons fired a gun or acted violently during the Earlier Incident. Accordingly, the district court did not abuse its discretion in admitting the testimony regarding the Earlier Incident.

We reach the same conclusion with respect to the testimony regarding Simmons's possession of a collection of miscellaneous ammunition, including nine-millimeter rounds, at his home. In response to questioning on cross-examination, Simmons denied that he collected bullets but testified that he had the bullets in his home because he liked them. As we have noted, "[t]his Court has regularly affirmed the admission of [prior] firearms possession to establish that the defendant had the opportunity to access firearms." *United States v. Bailey*, 800 F. App'x 35, 37 (2d Cir. 2020) (summary order) (collecting cases). The D.C. Circuit has also perceptively observed that "in cases where a defendant is charged with unlawful possession of something, evidence that

---

[5] Simmons notes that, contrary to the evidence proffered to the district court in connection with its motion *in limine* ruling, the testimony at trial did not establish that he was involved or present during the Earlier Incident but established instead that he only became aware of the incident just prior to getting into the Chevy Impala to go to the liquor store. However, even if someone else had informed him about what occurred outside his residence a short time earlier, it was still permissible to allow Defendants to offer such evidence under Rule 404(b) to establish his motive to carry a gun in light of the incident that Simmons had learned just occurred outside his home.

he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

Consistent with that case authority, Simmons's prior possession of nine-millimeter rounds at his home is probative of his opportunity to access a nine-millimeter gun, as well as his knowledge and intent to possess such gun, especially where there was evidence that a nine-millimeter gun was found on the ground next to Simmons after he was alleged to have fired a shot at Officer Ferrigno. Although Simmons counters that "[o]wning bullets does not mean that one owns a gun," Appellant's Reply Br. at 14, it is sufficiently probative on that issue to be admissible under Rule 404(b).

Finally, as to the issue of potential prejudice under Rule 403, the questioning of Simmons regarding his possession of ammunition was limited and was unlikely to inflame the jury in a case where Simmons was accused of shooting at a police officer. Thus, we conclude that the district court did not abuse its discretion in allowing the admission of this evidence.

$$* \qquad * \qquad *$$

We have considered Simmons's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

13